IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANNA GUTIERREZ and PATSY FLORES,

      Plaintiffs,

      vs.                              Civ. No. 2:12-cv-980 JH/GBW

LUNA COUNTY SHERIFF RAYMOND COBOS,
in his individual and official capacity; LUNA COUNTY
SHERIFF DEPUTY GABRIEL MAYNES, DEPUTY
MIKE EBY, DEPUTY TRINI GARCIA, DEPUTY
JOSE OJEDA, DEPUTY ISRAEL SAENZ, Jr., in
their individual and official capacities; LUNA
COUNTY CENTRAL DISPATCH DIRECTOR
MIRNA GRADO and DISPATCH EMPLOYEE
LUHANA VILLALBA, in their individual and
official capacities; LUNA COUNTY MANAGER
JOHN SUTHERLAND, in his individual and official capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the following motions:  *Defendants' Motion To Strike* [Doc. 73]; Defendant Deputy Eby's *Motion To Dismiss* [Doc. 60]; *Motion To Dismiss* filed by Defendants Garcia, Ojeda, and Saenz [Doc. 62]; and Defendant Sheriff Cobos's *Motion To Dismiss* [Doc. 64].  Plaintiffs filed a Response [Doc. 71].  Defendants filed Replies.  [Docs. 76, 77, 78]  The Court has reviewed the First Amended Complaint [Doc. 52], the briefs, and the relevant law.

The Court concludes that *Defendants' Motion To Strike* [Doc. 73] should be denied.  The Court concludes that the three motions to dismiss on the basis of qualified immunity should be granted [Docs. 60, 62, 64].

## BACKGROUND

A complaint was originally filed in the Sixth Judicial District Court for the State of New Mexico, including claims against the Board of County Commissioners of Luna County.  [Docs. 1 & 1-1]  The case was removed to the United States District Court for the State of New Mexico.  [Doc. 1]  The Court granted a stipulated order dismissing all claims against Defendant Board of County Commissioners of Luna County.  [Doc. 41]

On March 6, 2013, Plaintiffs filed the First Amended Complaint ("Complaint") against Defendants Cobos, Maynes, Eby, Garcia, Ojeda, Saenz, Grado, Villalba, and Sutherland—all in both their individual and official capacities.[1]  [Doc. 52]  Defendants Cobos, Maynes, Eby, Garcia, Ojeda, Saenz, Villalba, and Sutherland filed their Answer on March 20, 2013.  [Doc. 54]  On April 5, 2013—after filing their Answer—Defendants Cobos, Eby, Garcia, Ojeda, and Saenz filed motions to dismiss under Rule 12(b)(6).  [Docs. 60-65]

A motion to dismiss under Rule 12(b)(6) "should be made before filing the answer or in the answer itself."  *Jacobsen v. Desert Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002); *see* Fed. R. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").  If the motion to dismiss is made after filing the answer, the motion should be treated as a motion for judgment on the pleadings under Rule 12(c).  *Jacobsen*, 287 F.3d at 941 n.2.  The same standard applies to a Rule 12(b)(6) motion or a Rule 12(c) motion, however.  *Id.*; *Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000).  Because the analysis and result is "the same regardless of the finer procedural

---

[1] The First Amended Complaint includes a statement that the Defendants are sued in their individual capacities, but the Complaint was filed against Defendants in both their official and individual capacities.  [Doc. 52, ¶ 11]  The motions to dismiss addressed in this Memorandum Opinion and Order are based on qualified immunity, which is applicable only to a defendant's individual capacity.  Since these motions do not address the issue of claims against Defendants in their official capacities, the Court therefore does not address any such claims at this time.

distinctions," for ease of reference the Court will "keep the designations used by the parties" and refer to the motions as motions to dismiss.  *See Borde v. Board of County Comm'rs*, 514 Fed. Appx. 795, 799 n.5 (10th Cir. 2013) (unpublished).

## I.  DEFENDANTS' MOTION TO STRIKE [Doc. 73]

Defendants Sutherland, Eby, Garcia, Ojeda, Saenz, and Cobos filed a *Motion To Strike* [Doc. 73], asking the Court to strike two of Plaintiffs' Responses as untimely:  *Plaintiffs' Response to Defendant Police Officers' Motions To Dismiss Based on Qualified Immunity* [Doc. 71 (a combined response to the Motions To Dismiss by Eby [Doc. 60]; Garcia, Ojeda, and Saenz [Doc. 62]; and Cobos [Doc. 64])], and *Plaintiffs' Response to Defendant Villalba and Sutherland's Motions To Dismiss Based on Qualified Immunity* [Doc. 72].

On April 5, 2013, the Defendants named above filed four motions to dismiss on the basis of qualified immunity.  [Docs. 58-59 (Defendant Sutherland); Docs. 60-61 (Defendant Eby); Docs. 62-63 (Defendants Garcia, Ojeda, Saenz); Docs. 64-65 (Defendant Cobos)]  Under Local Rule 7.4(a), Defendants agreed to an extension until May 3, 2013, for Plaintiffs' responses. [Doc. 66]  Without further extension, Plaintiffs filed their responses on May 17, 2013—two weeks after the deadline.

Defendants cite Local Rule 7.1(b):  "The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ. 7.1(b).  Defendants argue that Plaintiffs' failure to file timely responses constitutes consent to Defendants' motions to dismiss and also that Plaintiffs' untimely responses constitute insufficient defenses under Federal Rule 12(f) and should be stricken; Defendants ask the Court to grant their motions to dismiss on these bases.  Defendants also raise

this issue in their replies regarding their motions to dismiss. [Doc. 76, pp. 2-4; Doc. 77, pp. 2-4; Doc. 78, pp. 2-4]

Even if the Court were to strike Plaintiffs' untimely responses, however, the Court could not grant the motions to dismiss based on the theory that Plaintiffs have consented under Local Rule 7.1(b). The Tenth Circuit has held that, even if a plaintiff files no response at all, the district court "must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003). Alternatively, the district court must explicitly analyze the *Meade* factors before dismissing the complaint as a sanction—a course of action not requested by Defendants. *Id.*; *Meade v. Grubbs*, 841 F.2d 1512, 1519-22 (10th Cir. 1988), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The Court concludes that it will deny *Defendants' Motion To Strike* [Doc. 73]. The Court will rule on the motions to dismiss on the merits, and will consider Plaintiffs' untimely responses. The Court concludes that striking Plaintiffs' untimely responses is not warranted; however, Plaintiffs are cautioned to follow the rules in future.

In addition to arguing that Plaintiffs' Responses are untimely, Defendants point out that the responses are 25 pages long while Local Rule 7.5 limits response briefs to 24 pages. The Court again cautions Plaintiffs to follow the rules.

## II. DEFENDANTS' MOTIONS TO DISMISS [Docs. 60-65]

Defendant Deputy Eby filed a motion to dismiss Counts I, II, and III on the basis of qualified immunity. [Docs. 60-61] Defendant Deputies Garcia, Ojeda, and Saenz filed a joint motion to dismiss Counts I, II, and III on the basis of qualified immunity. [Docs. 62-63]

Defendant Sheriff Cobos filed a motion to dismiss Count III on the basis of qualified immunity. [Docs. 64-65]

## LEGAL STANDARDS

The Court reviews a motion to dismiss on the basis of qualified immunity under the same standard as for dismissals in general.  *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).  Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  All well-pleaded facts must be accepted as true; these facts must be viewed in the light most favorable to the plaintiff, and all reasonable inferences must be allowed in favor of the plaintiff.  *Archuleta*, 523 F.3d at 1283; *Atlantic Richfield Co.*, 226 F.3d at 1160 (motion under Rule 12(c) "is treated as a motion to dismiss under Rule 12(b)(6)" and same standard applies).  These standards apply only to well-pleaded facts, however; legal conclusions and conclusory allegations do not merit this deference.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Archuleta*, 523 F.3d at 1283.

The complaint "does not need detailed factual allegations," but the factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  Conclusory statements not supported by factual allegations are not sufficient.  *Hall v. Bellmon*, 935 F.2d  1106, 1110 (10th Cir. 1991); *see Iqbal*, 556 U.S. at 678 (stating that "'naked assertion[s]' devoid of 'further factual enhancement'" are not sufficient (quoting *Twombly*, 550 U.S. at 557)).  The Tenth Circuit stated that the *Twombly* Court sought to "find a middle ground between 'heightened fact pleading,' which is expressly rejected," and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" which are

insufficient.[2]  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570, 555).

The allegations of fact must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Looking within the four corners of the complaint, the Court determines whether there are "sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *Archuleta*, 523 F.3d at 1281, 1283 (quoting *Twombly*, 550 U.S. at 556).  The Tenth Circuit observed that "plausible" cannot mean "likely to be true," but "must refer to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Id.* Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  In addition to weeding out claims lacking a reasonable prospect of success, the requirement of plausibility serves to inform the defendant of the actual grounds of the claim.  *Robbins*, 519 F.3d at 1248.

"Qualified immunity is designed to shield public officials from liability and ensure 'that erroneous suits do not even go to trial.'"  *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).  In addition, qualified immunity is designed to prevent government officials from facing

---

[2] The Court notes that Defendants cite superseded caselaw stating that a "heightened pleading standard" is required when a qualified immunity defense is asserted in a Rule 12(b)(6) motion to dismiss.  [Doc. 61, p. 3; Doc. 63, p. 3; Doc. 65, p. 2]  The Tenth Circuit for a time followed this approach, but later concluded that Supreme Court precedent required abandonment of this approach; the Tenth Circuit concluded that the same standard applies for motions to dismiss in qualified immunity cases and for motions to dismiss in general.  *Moya v. Schollenbarger*, 465 F.3d 444, 454-55 (10th Cir. 2006).  A "heightened pleading standard" does not apply in the case before this Court.

the other burdens of litigation.   *Iqbal*, 556 U.S. at 672.  The Supreme Court "has directed the lower federal courts to apply qualified immunity broadly, to protect from civil liability for damages all officers except 'the plainly incompetent or those who knowingly violate the law,'" so that officers "might not be unduly 'inhibit[ed] . . . in performing their official duties.'"  *Wilson v. City of Lafayette*, 510 Fed. Appx. 775, 780 (10th Cir. 2013) (unpublished) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001)).

To survive a motion to dismiss based on a claim of qualified immunity, the plaintiff bears a "heavy two-part burden." *Archuleta*, 523 F.3d at 1283.  "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right." *Id.*  "Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id.*  The "'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Albright*, 51 F.3d at 1535 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  A plaintiff can carry his burden of showing that a right is clearly established by citing Supreme Court or Tenth Circuit cases on point, or by demonstrating that the weight of authority from other circuits shows the right to be clearly established.  *Archuleta*, 523 F.3d at 1283; *Albright*, 51 F.3d at 1535.  If the plaintiff fails to carry either part of this two-part burden, the defendant is entitled to qualified immunity.  *Archuleta*, 523 F.3d at 1283.  If the complaint fails to properly allege a violation of a constitutional or statutory right, the court need not reach the question of whether the law was "clearly established." *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003).

## <u>ALLEGATIONS IN THE COMPLAINT</u>

The following statement is taken from the allegations in the Complaint, viewed under the applicable standards for a motion to dismiss under Rule 12(b)(6) or Rule 12(c).

In the late evening of July 4, 2009, Plaintiff Anna Gutierrez was driving on a dark street in Deming.  There were no other cars on the streets, and Gutierrez did not notice any pedestrians around.   Gutierrez noticed a vehicle following her; because this made her nervous she may not have come to a complete stop at a stop sign.  Defendant Deputy Gabriel Maynes, in the car behind her, activated his lights; before this Gutierrez had not realized that the car following her was a law enforcement vehicle.  Out of fear, Gutierrez continued driving toward her mother's home a few blocks away instead of immediately stopping.  Gutierrez pulled into the parking lot of her mother's apartment.  She ran toward her mother's apartment as she got out of her car and saw Deputy Maynes get out of his car behind her and reach for his gun.

Deputy Maynes ran after Gutierrez and, without warning, discharged his taser; a taser dart stuck into Gutierrez's back and caused excruciating pain.  At the door of her mother's apartment, Gutierrez desperately banged on the door, yelling in an effort to get to safety inside.  Deputy Maynes immediately caught up to her and began beating her, hitting and kicking her and tasing her numerous times at the apartment door.

When Gutierrez's mother, Plaintiff Patsy Flores, opened the door to the screams of her daughter, Deputy Maynes pushed through the door and threw Gutierrez to the floor inside the dark home.  Deputy Maynes angrily pushed and threw furniture around before getting on top of Gutierrez and continuing to beat, kick, and tase her repeatedly while she was face up on the ground; he was shouting at Gutierrez "tell me the truth, tell me the truth" over and over again.

Gutierrez was stunned by the effects of the taser and the beating as she tried to defend herself, with the taser dart puncturing further into her back as he was on top of her.  Plaintiff Flores begged and pleaded with Deputy Maynes to stop beating and tasing Gutierrez, and to allow Gutierrez to get up and comply, noting that Gutierrez was obviously incapacitated from the taser and the beating.  In his rage, Deputy Maynes viciously tased Plaintiff Flores on her leg, and threatened to arrest Flores as he continued to abuse Gutierrez on the floor.

Plaintiff Flores's companion, present in the apartment that night, asked Deputy Maynes whether he had a warrant to enter Plaintiff Flores's home.  Deputy Maynes said that he did and the warrant was outside.  The deputy then ordered Plaintiff Flores's companion to go to the bedroom, threatening to arrest him if he came back out.

During the struggle, Gutierrez was crying and begging for help, trying to explain that she could not lift her other arm to be handcuffed as Deputy Maynes was demanding because her arm was immobilized from the taser.

Soon thereafter, Deputy Eby and possibly another deputy walked into the apartment and observed Gutierrez on the floor as Deputy Maynes completed handcuffing her.  Deputy Maynes then escorted Gutierrez to a police vehicle outside, with her hands cuffed behind her and the taser dart still in her back.

Contrary to Deputy Maynes's statement, a warrant for Gutierrez's arrest or for "the entry and/or search into the home" was never requested or obtained.  Plaintiffs never gave consent to Deputy Maynes or any other officer to enter the home.

According to the taser records, Deputy Maynes discharged his taser upon Gutierrez nine or ten times that night.  Gutierrez was not armed with any type of weapon that night, nor did she say or imply she was, nor did she reasonably appear to be in possession of any type of weapon.

Gutierrez never directed any threatening action toward any officer that night, nor did she exhibit any violent conduct at all.  The only actions she took were in self defense.

During the short chase, and during the seizure and arrest of Gutierrez, Deputy Maynes communicated with Luna County Central Dispatch to request assistance, as well as with others as the events were unfolding.  Defendant Deputies Eby, Garcia, Ojeda, and Saenz all responded to Maynes's request for assistance from Dispatch, and all appeared at the apartment in response to the calls.  The response to Maynes's request for assistance by Deputies Eby, Garcia, Ojeda, and Saenz was in violation of the Safe Pursuit Act, as the requisite permission was never obtained and too many deputies responded.

While Gutierrez was being led out of the home, one of the Hispanic deputies stated to Plaintiff Flores's companion, Francisco Porras, that "she (Plaintiff Gutierrez) likes women," or "did you know she likes women?"

Gutierrez was never told what she was arrested for, nor was she given Miranda warnings. While Gutierrez was in custody, Deputy Maynes continued to question her without the benefit of Miranda warnings; he continued to question her after she asserted her right to remain silent, in violation of her constitutional rights.

One or more of the Defendant Deputies searched Gutierrez's truck after she was arrested, without a search warrant, without her consent, and after she no longer had access to the truck.

After her arrest, Gutierrez was taken by Fire Department personnel to Mimbres Memorial Hospital in Deming, where Dr. Homsi performed a surgical procedure to remove the taser dart from her back.  Dr. Homsi noted that Gutierrez was suffering extreme pain from the taser dart. Neither the Fire Department personnel nor Dr. Homsi observed any signs that Gutierrez was

intoxicated.  Gutierrez's injuries included two fractured ribs and other physical and mental injuries, which required subsequent medical treatment.

After being treated at the hospital, Gutierrez was taken to the Luna County Sheriff's Department.  She was again interrogated as one or more of the Defendant Deputies discussed what to charge her with.  She continued to assert her constitutional right to remain silent and, because of this, was told that more charges would be added due to her lack of cooperation.

Gutierrez was charged with the misdemeanor offenses of Failure to maintain traffic lane, Careless driving, Concealing identity, and DWI.  She was charged with the felony offenses of Battery on a peace officer and Aggravated fleeing.

## DISCUSSION

### A.  Deputy Eby's Motion To Dismiss [Docs. 60-61]

#### 1.  Count I

Under Count I, Plaintiffs allege that Defendants Maynes and Eby (and possibly another unspecified deputy), acting under color of state law and in their official law enforcement capacities, violated the Fourth Amendment by entering the "home of Plaintiffs Flores and Gutierrez"[3] late at night, without a warrant, and without consent.  [Doc. 52, p. 7, ¶¶ 52-53] Plaintiffs allege that Deputy Maynes was chasing Gutierrez for a minor traffic violation, there were no exigent circumstances, and "no officer reasonably believed that Ms. Gutierrez was armed and dangerous."  [Doc. 52, p. 8, ¶¶ 54-55]  Plaintiffs acknowledge, however, that Gutierrez was also charged with the felony of Aggravated fleeing.  Plaintiffs further allege that reasonably well-trained officers would know they needed a warrant to enter a home under these

---

[3] Paragraph 53 of the Complaint  implies that the apartment was the home of both Plaintiffs; however, ¶¶ 19-21 & 23 of the Complaint appear to characterize the apartment as the home of only Plaintiff Flores. For purposes of this Memorandum Opinion and Order, the Court assumes that the Complaint sufficiently alleges that the apartment was the home of Plaintiff Gutierrez.

circumstances and such officers could not have reasonably believed the entry into the home was justified.

Whether Deputy Maynes unlawfully entered the apartment is not the issue currently before the Court. The question is whether the Complaint sufficiently alleges that Deputy Eby made an illegal entry into the home.

The Complaint alleges that Deputy Maynes beat and tased Plaintiff Gutierrez, tased Plaintiff Flores, threw Gutierrez to the floor inside the apartment, and demanded that Gutierrez lift her other arm so he could handcuff her. [Doc. 52, ¶¶ 22-31] The Complaint alleges that "[s]oon thereafter," Deputy Eby and possibly another deputy "walked into the Plaintiffs' home and observed Ms. Gutierrez on the floor as Deputy Maynes completed handcuffing her." [Doc. 52, p. 5, ¶ 32] The chronology set forth in the Complaint—together with the use of the words "[s]oon thereafter"—shows that Plaintiffs allege Deputy Eby did not arrive and walk into the apartment until after Deputy Maynes had beaten and tased Gutierrez; the Complaint alleges that Deputy Eby only saw Deputy Maynes complete the handcuffing. The Complaint does not allege that Deputy Eby knew why Deputy Maynes was handcuffing Gutierrez, whether or why Maynes had pursued Gutierrez, or what offenses Maynes suspected Gutierrez of having committed. The Complaint does allege that Deputy Maynes had "communicated with Luna County Central Dispatch to request assistance, as well as with others as the events were unfolding," and that Deputy Eby and other deputies "responded to Deputy Maynes' request for assistance from Dispatch, and all appeared at the Plaintiffs' home in response to the calls." [Doc. 52, ¶¶ 38-39] The Complaint contains no allegation, however, that Deputy Eby was informed—by radio or otherwise—of the offenses of which Deputy Maynes suspected Gutierrez, or that Deputy Eby was informed of any of the circumstances preceding Eby's appearance at the apartment. Instead,

the Complaint merely alleges that Deputy Eby "observed Ms. Gutierrez on the floor as Deputy Maynes completed handcuffing her."  [Doc. 52, ¶ 32]  The Complaint makes no allegation that Deputy Eby had information indicating that Deputy Maynes himself might have made an illegal entry.

Regardless of the legality of Deputy Maynes's entry into the apartment, Deputy Eby was entitled to rely on Deputy Maynes's determination that Maynes had justification to be in the apartment and to arrest Gutierrez.  Police officers are entitled to act on directions and information from another officer; officers are entitled to rely on another officer's determination that a course of action is justified.  *Oliver v. Woods*, 209 F.3d 1179, 1190-91 (10th Cir. 2000).  Effective law enforcement requires that such reliance be allowed; officers, who often must act swiftly, cannot be expected to cross-examine a fellow officer about the foundation for his directions or information before acting.  *Id.*; *see United States v. Hensley*, 469 U.S. 221, 231 (1985).

In an analogous situation, the Tenth Circuit held that an officer is entitled to act in reasonable reliance on another officer's determination of probable cause.  In *Baptiste*, Officer Hernholm had detained the plaintiff for shoplifting and then summoned a female officer, Officer Martin, to perform a pat-down search.  *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998).  When Officer Martin arrived at the store, Officer Hernholm told her that he was investigating shoplifting and needed her to conduct a pat-down search; Martin performed the pat-down.  *Id.* at 1255.  The Tenth Circuit determined that Officer Hernholm did not have probable cause for a warrantless arrest;  Hernholm was therefore not entitled to qualified immunity on the claim of an illegal seizure.  *Id.* at 1256-60.  Because there was no probable cause for the warrantless arrest, the pat-down search incident to arrest, conducted by Officer Martin, was also

unlawful. *Id.* at 1256 n.7.   But Officer Martin could nevertheless be entitled to qualified immunity; she arrived after the plaintiff had been detained by Officer Hernholm and at his request for a female officer to perform a pat-down search. *Id.* at 1260.   "An officer who is called to the scene to conduct a search incident to arrest is not required to reevaluate the arresting officer's probable cause determination in order to protect herself from personal liability." *Id.* at 1260.   If Officer Martin relied on Officer Hernholm's determination that there was probable cause for a search and that reliance was objectively reasonable, Officer Martin would be entitled to qualified immunity.   Even if Officer Hernholm's conclusion that there was probable cause was flawed, Officer Martin would still be entitled to qualified immunity under these circumstances. *Id.*

In *Howards*, the Tenth Circuit held that Agents Daniels and McLaughlin were entitled to qualified immunity when the plaintiff had provided no evidence that they "did anything but follow the directions of fellow Secret Service Agents." *Howards v. McLaughlin*, 634 F.3d 1131, 1149 (10th Cir. 2011) (deciding motion for summary judgment and holding that same principles applied for Secret Service Agents as for police officers), *rev'd on other grounds sub nom. Reichle v. Howards*, ___ U.S. ___, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012).   Agents Daniels and McLaughlin did not participate in the decision to arrest the plaintiff and had no contact with the plaintiff until after Agent Reichle ordered the arrest. *Id.* at 1150.   There was no suggestion that Agents Daniels and McLaughlin "did anything but assist their fellow agents." *Id.*   Under these circumstances, Daniels and McLaughlin were entitled to rely on Reichle's determination that there was probable cause for the arrest. *Id.*   "'When one officer requests that another officer assist in executing an arrest, the assisting officer is not required to second-guess the requesting officer's probable cause determination, nor is he required to independently determine that

probable cause exists.'"  *Id.* (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1286 (10th Cir. 2010)). Agents Daniels and McLaughlin were not carrying radios and knew they had less information than Agent Reichle.   There was no showing that their reliance was objectively unreasonable; therefore, Agents Daniels and McLaughlin were entitled to qualified immunity—even if Reichle's probable cause determination was incorrect.  *Id.*

According to the Complaint, Deputy Eby appeared at the apartment in response to Deputy Maynes's call for assistance.  When Eby arrived, he saw Gutierrez on the apartment floor as Deputy Maynes completed handcuffing her.  Deputy Eby was entitled to rely on Deputy Maynes's conclusions and conduct without first cross-examining Maynes about why and how he had entered the apartment, about why Gutierrez was on the floor, about why Maynes was arresting Gutierrez, and about why Maynes was handcuffing Gutierrez.  Deputy Eby was entitled to enter the apartment to assist Deputy Maynes, without first inquiring on what charges Gutierrez was being arrested and what had happened before Eby arrived on the scene.  As in *Baptiste*, Deputy Eby arrived at the scene after the plaintiff had already been detained and after Maynes had entered the apartment.  As in *Baptiste* and *Howards*, Deputy Eby was not required to reevaluate Deputy Maynes's prior conduct and was not required to cross-examine Maynes about the justifications for Maynes's actions.  As in *Howards*, Deputy Eby knew that he had incomplete information about what had happened before he arrived.  The Complaint alleges that Deputy Maynes had communicated with Luna County Central Dispatch and with others as the events were unfolding.  [Doc. 52, ¶¶ 38-39]  The Complaint does not allege, however, that Eby had received any additional information about the circumstances that would make it objectively unreasonable for Eby to rely on Deputy Maynes's determinations.  *See Howards*, 634 F.3d at 1150.  According to the Complaint, Deputy Eby was merely informed that an officer needed

assistance.  As in *Howards*, the Complaint does not allege that Eby "did anything but follow the directions of" a fellow officer or "did anything but assist" his fellow officer.  *Id.* at 1149-50.

According to the Complaint's allegations, even when viewed in the light most favorable to Plaintiffs, Deputy Eby could reasonably conclude that Deputy Maynes needed assistance with a lawful entry and arrest to which Gutierrez was not peacefully submitting.  Even if Deputy Maynes's conclusions were flawed and Maynes did not have justification to enter the apartment or to arrest Gutierrez, Deputy Eby is independently entitled to qualified immunity because he was entitled to rely on Deputy Maynes's conclusions and because the Complaint makes no allegations showing that such reliance was not objectively reasonable.

The Court will conclude that Count I fails to properly allege that Deputy Eby violated Plaintiff's Fourth Amendment rights.  The Court need not reach the second issue, whether the right was "clearly established."  *See Butler*, 341 F.3d at 1200.  The Court concludes that Deputy Eby is entitled to qualified immunity on Count I.

### 2.  Deputy Eby's Motion To Dismiss Count II

Under Count II, Plaintiffs allege that there was an illegal search and seizure and false arrest—apparently including the warrantless arrest of Gutierrez and the search of her truck. Plaintiffs admit in the Complaint that Gutierrez "may not have come to a complete stop at the stop sign as she was driving on Buckeye Street," and that Deputy Maynes turned on his lights but that Gutierrez continued driving instead of stopping.  [Doc. 52, ¶¶ 17, 19-21]  Plaintiffs also acknowledge that Maynes "may have had reasonable suspicion to stop Ms. Gutierrez for the traffic violation of Failure to Maintain Lane," but allege that Deputy Maynes was still not justified in arresting Gutierrez.  [Doc. 52, ¶¶ 65-68]  *See Howards*, 634 F.3d at 1141 (recognizing that officer is entitled to qualified immunity on § 1983 claim of warrantless arrest if

facts and circumstances within officer's knowledge would lead prudent person to believe arrestee committed an offense, and standard is objective so does not even matter if arrestee was later charged with a different crime, or any crime); *Courtney v. Oklahoma ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222-23 (10th Cir. 2013) (recognizing that officer does not violate Fourth Amendment when officer makes warrantless arrest even for a very minor traffic offense committed in officer's presence, e.g. failure to wear seatbelt, regardless of state restrictions).

Most of Plaintiffs' allegations under Count II challenge actions by Deputy Maynes. The issues presented by Deputy Eby's motion are whether Plaintiffs have sufficiently alleged that Deputy Eby violated Plaintiffs' constitutional rights and whether those rights were clearly established. Under the same analysis as for Count I above, the Complaint does not allege that Deputy Eby did more than arrive to assist a fellow officer, after Maynes had already decided to arrest Gutierrez and when Maynes was already in the process of completing the arrest by handcuffing Gutierrez. *See Baptiste*, 147 F.3d at 1260 (discussing liability of officer who arrived later). As in *Howards*, Plaintiffs do not allege that Eby participated in the decision to seize or arrest Gutierrez. *See Howards*, 634 F.3d at 1150. As in *Howards*, the Complaint does not allege that Deputy Eby "did anything but assist" his fellow officer in executing the arrest. *Id.* As in *Howards*, Deputy Eby was entitled to rely on Maynes's determination that there was probable cause for the arrest; Deputy Eby was not required to second-guess Maynes's probable cause determination or to independently determine that probable cause existed. *See id.*; *Stearns*, 615 F.3d at 1286; *Baptiste*, 147 F.3d at 1260. The Complaint makes no allegations showing that it was not objectively reasonable for Eby to rely on Maynes's probable cause determination. Under these circumstances, Deputy Eby is entitled to qualified immunity with respect to the seizure and arrest of Plaintiff Gutierrez.

Similarly, Deputy Eby is entitled to qualified immunity with respect to the search of Gutierrez's truck.  The Complaint alleges:  "Ms. Gutierrez' truck was searched by one or more of the Defendant deputies after her arrest, without a warrant and without her consent, after she no longer had access to it."  [Doc. 52, ¶ 44]  The Complaint makes a conclusory allegation that "Defendants' search of Ms. Gutierrez' truck after her arrest, without a warrant, without her consent, and in the absence of exigent circumstances, was a violation of her constitutional rights."  [Doc. 52, ¶ 74]  These are conclusory statements, or legal conclusions, that are not entitled to be accepted as true.  *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283.  These conclusory allegations, without factual allegations in support, are not sufficient to survive a motion to dismiss.  *See Hall*, 935 F.2d at 1110.

The Complaint merely makes a general allegation that "one or more of the Defendant deputies" searched her truck.  The Complaint does not allege that Deputy Eby searched the truck.  From the Complaint, it may have been Deputy Maynes who searched the truck, or some other deputy.  This general allegation, unsupported by factual allegations showing how Deputy Eby violated Gutierrez's constitutional rights, is insufficient.  "Where, as here, the plaintiff names several individuals as defendants, 'the complaint [must] make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her.'"  *Schell v. Evans*, ___ Fed. Appx. ___, 2013 WL 6570860, *3 (10th Cir. 2013) (unpublished) (quoting *Robbins*, 519 F.3d at 1250).   "The complaint must also demonstrate personal involvement on the part of each individual."  *Id.*  The Complaint, however, does not support the conclusory allegation with facts about who made the decision to search the truck, who actually searched the truck, or on what basis the truck was searched.

Plaintiffs appear to assume that the search was performed as an incident to arrest, but the Complaint fails to make factual allegations to support that assumption; it may be, for instance, that there was an inventory search or some other justification.  In addition, from the conclusory allegations in the Complaint it may be that Deputy Maynes directed some other deputy to search the truck and that it was objectively reasonable for that deputy to rely on Maynes's determination that there was a lawful justification for the search, even though the details and basis for the search were not known to the deputy.  *See Howards*, 634 F.3d at 1150.  Plaintiffs have not made specific allegations, supported by factual allegations, to show that any deputy who searched the truck was doing anything other than acting at the direction of Deputy Maynes and assisting Deputy Maynes, in reasonable reliance on Maynes's determination that the search was justified. *See id.*

The Court recognizes that it would not be objectively reasonable after the Supreme Court decided *Gant* for a deputy to believe that search of Gutierrez's truck was justified solely as incident to her arrest for a traffic offense, when—according to the Complaint—Gutierrez had already been arrested and no longer had access to her truck.  *Arizona v. Gant*, 556 U.S. 332 (2009); *see United States v. McCane*, 573 F.3d 1037, 1040 (10th Cir. 2009).[4]  The Court emphasizes, however, that the Complaint does not show that the search was in fact performed as a search incident to an arrest for a traffic violation—rather than on some other basis, or with relation to some other offense on which Gutierrez was not charged, or at the direction of Deputy

---

[4] The Court notes that the incident which is the subject of this Complaint occurred on July 4, 2009, [Doc. 52, ¶ 16] just two-and-one-half months after *Gant* was decided, on April 21, 2009.  Tenth Circuit precedent before *Gant* justified the search of the passenger compartment of an arrestee's vehicle incident to arrest even when the arrestee was handcuffed and seated in the back of a patrol car and it was not reasonable to believe the vehicle contained evidence of the offense of an arrest.  *See McCane*, 573 F.3d at 1038-42; *United States v. Madden*, 582 F.3d 920, 926 (10th Cir. 2012).  The Tenth Circuit held that the good-faith exception would apply for a search conducted before *Gant* abrogated this Tenth Circuit precedent.  *McCane*, 573 F.3d at 1045.  This Court need not decide whether an officer would be entitled to a "grace period" after *Gant* was decided, or until the Tenth Circuit decided *McCane* (on July 28, 2009), however, because of the other deficiencies in the Complaint; the Court assumes arguendo that an officer would not be entitled to the good-faith exception after April 21, 2009.

Maynes by a deputy who did not know on what charges Gutierrez was arrested and who was just assisting by following Deputy Maynes's instructions.  *See Howards*, 634 F.3d at 1150 (holding that officers are entitled to qualified immunity when they merely assist a fellow officer in reasonable reliance on that officer's determinations of what actions are justified).

Plaintiffs also allege, as part of their § 1983 claim, that Deputy Maynes was not allowed to arrest Gutierrez for the traffic violation of Failure to maintain lane, NMSA 1978, § 66-7-317—a penalty assessment misdemeanor.  [Doc. 52, ¶¶ 67-68]  Plaintiffs further allege, still as part of their § 1983 claim, that Gutierrez's arrest by Deputy Maynes was pretextual and a violation of her rights under New Mexico law.  [Doc. 52, ¶ 75]  These allegations do not undermine Deputy Eby's claim of qualified immunity, for a number of reasons.  First, under § 1983, only violations of the Federal Constitution are cognizable.  *See* 42 U.S.C. § 1983 ("deprivation of any rights, privileges, or immunities secured by the Constitution and laws"); *Tanner v. San Juan County Sheriff's Office*, 864 F. Supp. 2d 1090, 1123 & n.23 (D.N.M. 2012).  Second, Plaintiffs erroneously assume that only the misdemeanor offense of Failure to maintain lane is relevant.  Even if Deputy Maynes had subjectively believed that the search and seizure at issue were based solely on this offense, it is the facts and circumstances within his knowledge—not his subjective reasons—that are relevant.  *See Howards*, 634 F.3d at 1141-42 (stating that probable cause is determined on an objective standard and an officer's subjective reason is irrelevant).  By the time of the seizure of Gutierrez and search of her truck, another offense was relevant, Aggravated fleeing, a fourth-degree felony under NMSA 1978, § 30-22-1.1 (2003).  Third, the Complaint again fails to sufficiently allege any personal involvement in any cognizable constitutional violation by Deputy Eby.  *See Schell*, 2013 WL 6570860, *3 (stating that complaint must make clear which of several defendants is alleged to have done *what* to

20

*whom*).  As discussed above, the Complaint does not specifically allege that other deputies who arrived to assist Deputy Maynes—including Deputy Eby—did anything other than assist by following and reasonably relying on Deputy Maynes's instructions.  *See Howards*, 634 F.3d at 1150.

The Court concludes that Count II fails to sufficiently a violation of the Fourth Amendment by Deputy Eby.  The Court need not reach the second issue, whether the right was clearly established.  *See Butler*, 341 F.3d at 1200.  For all of the reasons discussed above, the Court concludes that Deputy Eby is entitled to qualified immunity on Count II.

### 3.  Deputy Eby's Motion To Dismiss Count III

Under Count III, the Complaint alleges that Deputy Maynes viciously tased Gutierrez nine or ten times, beat and kicked her, threw her to the apartment floor, got on top of her and continued the beating and tasing; the Complaint alleges that these actions were contrary to Sheriffs' Department policy and safety protocols, and that this use of the taser was punitive. Plaintiffs allege that Deputy Maynes thus violated the Fourth Amendment by using excessive force.  [Doc. 52, p. 11]  The Complaint also alleges that Deputy Maynes applied excessive force to Plaintiff Flores, tasing her in response to her reasonable lawful pleas that Maynes stop tasing Gutierrez.  The Complaint's only allegation against deputies other than Deputy Maynes is:  "To the extent that one or more of the other defendant deputies were present during Deputy Maynes' abusive conduct described herein, then such deputy(s) is also liable for the excessive use of force imposed upon one or both Plaintiffs by Deputy Maynes, if such deputy failed to take reasonable steps to protect the victim from Deputy Maynes' use of excessive force."  [Doc. 52, ¶ 86]

An officer may be liable for failure to intervene to prevent the use of excessive force by another officer if the officer observes or has reason to know that excessive force is being used

and there was "a realistic opportunity to intervene to prevent the harm from occurring." *Hall v. Burke*, 12 Fed. Appx. 856, 861 (10th Cir. 2001) (unpublished); *see Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008). The complaint must contain sufficient factual allegations to show that the officer was present, had reason to know that excessive force was being used, and had an opportunity to prevent the use of excessive force. *See Fogarty*, 523 F.3d at 1164-65.

The Complaint is insufficient because Paragraph 86, quoted above, at most suggests that Deputy Eby may have been present during Maynes's use of excessive force. To withstand a motion to dismiss, the Complaint "does not need detailed factual allegations," but the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Conclusory statements not supported by factual allegations are not sufficient. *Hall*, 935 F.2d at 1110. The Complaint alleges, at best, that it is possible that Deputy Eby was present and could have seen Maynes employing excessive force. But a complaint must show a plausible claim for relief—not merely a conceivable claim. *Robbins*, 519 F.3d at 1247; *see Twombly*, 550 U.S. at 570.

As discussed above, the chronology set forth in the Complaint states that the beating and tasing by Deputy Maynes occurred before the other deputies arrived. [Doc. 52, ¶¶ 22-32] The Complaint alleges that Maynes beat and tased Plaintiffs and then alleges: "Soon thereafter Deputy Eby and possibly another Deputy walked into the Plaintiffs' home and observed Ms. Gutierrez on the floor as Deputy Maynes completed handcuffing her." [Doc. 52, ¶ 32 (emphasis added)] The Complaint does not allege that Deputy Eby, or any other deputy, arrived at the apartment until after the beating and tasing had occurred and ceased. The Complaint therefore does not allege personal involvement by Deputy Eby. *See Schell*, 2013 WL 6570860, *3 (stating that complaint must show personal involvement by defendant, and make clear which of several

defendants is alleged to have done *what* to *whom*).  The Complaint does not allege that Deputy Eby did anything other than arrive to assist Deputy Maynes, after any excessive force had ceased.  *See Baptiste*, 147 F.3d at 1260; *Howards*, 634 F.3d at 1150.  The Complaint does not contain factual allegations to show that Deputy Eby was present at the time of any beating or tasing, that Eby had reason to know the force used was excessive, or that Eby had a realistic opportunity to prevent any use of excessive force.

The Complaint therefore fails to sufficiently allege that Deputy Eby was liable for failing to prevent any use of excessive force by Deputy Maynes.  According to the Complaint, any excessive force by Maynes occurred before Deputy Eby arrived.

Defendants correctly observe and object that Plaintiff's Response attempts to add or change the factual allegations in the Complaint, arguing that Plaintiffs cannot do so without amending the Complaint.  Contrary to the Complaint—which alleges that Deputy Eby and other deputies arrived after ("Soon thereafter") Deputy Maynes beat and tased Plaintiffs—Plaintiffs' Response recites additional facts inconsistent with the Complaint.  After allegations that Deputy Maynes was beating, wrestling with, and tasing Gutierrez on the apartment floor, the Response states:

> Significantly, the other officers who came to the door and left, Deputies Garcia and Eby at a minimum, observed this and walked away.  Granted, either Deputy Garcia or Eby may have been disgusted by Deputy Maynes' deplorable actions, and walked away not wanting to condone such violence.  But the Fourth Amendment required them to take action in light of such outrageous behavior and assist the victim.

[Doc. 71, p. 13]  The Response also states:  "In this case, numerous taser shots were fired at Plaintiff Gutierrez, even after she was down on the ground, and even after other deputies had appeared and were available to assist Deputy Maynes."  [Doc. 71, pp. 15-16]  The Response further states:  "Deputy Maynes discharged his taser upon Plaintiff Gutierrez nine or ten times

that night (A ¶ 35) despite the fact that he had alternative means to subdue Plaintiff Gutierrez, with the four other deputies at the scene."  [Doc. 71, p. 17]  The Response states:  "Upon information and belief, witnesses testified under oath that Deputies Eby and Garcia initially entered the home and observed the struggle between Deputy Maynes and Plaintiff Gutierrez on the floor, yet left and failed to render aid."  [Doc. 71, pp. 22-23]

"The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations <u>within the four corners of the complaint</u> after taking those allegations to be true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (emphasis added); *Rocha v. CCCF Admin.*, 408 Fed. Appx. 141, 144 & n.4 (10th Cir. 2011) (unpublished) (stating that correct standard for Rule 12(b)(6) motion is whether the complaint alone, within its four corners, contains sufficient factual allegations to state a plausible claim for relief).  "Generally, the sufficiency of a complaint must rest on its contents alone."  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (recognizing a few "quite limited" exceptions—e.g., documents incorporated into the complaint by reference, critical documents that are referred to in the complaint whose accuracy is not disputed, matters of judicial notice).  A plaintiff "may not rely on the allegations in his reply brief to supplement his complaint."  *Issa*, 354 F.3d at 1179.  Although the Tenth Circuit has occasionally suggested that, under some circumstances, "it might be appropriate to consider additional facts or legal theories asserted in a response brief if they were consistent with the facts and theories advanced in the complaint, a court may not consider allegations or theories that are inconsistent with those pleaded in the complaint."  *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001).

The Court concludes that the additional factual allegations related in Plaintiffs' Response are inconsistent with the factual allegations of the Complaint, because they present a different chronology than the Complaint.  The Court will not consider the Response's additional factual

24

allegations.  To the extent that the Response may be considered to present matters outside the pleadings, the Court explictly excludes such matters.  *See* Rule 12(d) (if court ruling on Rule 12(b)(6) or 12(c) motion does not exclude matters presented outside the pleadings, motion must be treated as one for summary judgment under Rule 56).

Plaintiffs' Response also sets forth new factual allegations along with a new claim that Deputy Eby and Deputy Ojeda provided training and were supervisors of Deputy Maynes, and were liable for constitutional violations by Deputy Maynes "in their supervisory capacity over Deputy Maynes."  [Doc. 71, p. 23]  The Response states that Deputy Eby provided training regarding the obtaining of warrants for the Sheriff's Department, and that Deputy Ojeda provided training regarding the use of force.  [Doc. 71, p. 23]  On the same reasoning discussed above, in ruling on Rule 12(b)(6) motion to test the sufficiency of the Complaint, the Court will not consider a new theory of liability, and new factual allegations, not set forth in the Complaint. The Complaint gave Defendants no notice of these allegations and this theory.  The Court again specifically excludes these new matters.

The Court concludes that Count III of the Complaint does not contain sufficient factual allegations to state a plausible claim that Deputy Eby violated the Fourth Amendment.  The Court need not reach the second issue, whether the right was clearly established.  *See Butler*, 341 F.3d at 1200.  The Court concludes that Deputy Eby is entitled to qualified immunity on Count III.

As discussed above, the Court concludes that Deputy Eby is entitled to qualified immunity on Counts I, II, and III.  The Court will grant Deputy Eby's motion to dismiss.  [Doc. 60]

**B.  Motion To Dismiss by Deputies Garcia, Ojeda, and Saenz [Docs. 62-63]**

### 1. **Count I**

Under Count I, Plaintiffs allege that Defendants Maynes and Eby (and possibly another unspecified deputy), acting under color of state law and in their official law enforcement capacities, violated the Fourth Amendment by entering the "home of Plaintiffs Flores and Gutierrez" late at night, without a warrant and without consent.  [Doc. 52, p. 7, ¶¶ 52-53]  As previously discussed with reference to Deputy Eby's motion to dismiss, whether Deputy Maynes unlawfully entered the apartment is not the issue currently before the Court.  The question is whether the Complaint sufficiently alleges that Deputy Garcia, Deputy Ojeda, or Deputy Saenz made an illegal entry into the home.

The Complaint fails to make any specific allegation that Garcia, Ojeda, or Saenz entered the home.  "Where, as here, the plaintiff names several individuals as defendants, 'the complaint [must] make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her.'"  *Schell*, 2013 WL 6570860, *3 (quoting *Robbins*., 519 F.3d at 1250).   "The complaint must also demonstrate personal involvement on the part of each individual."  *Id.*  The Complaint, however, does not support the conclusory allegation that some other deputy entered the home.

Plaintiffs' Response does not remedy this deficiency.  The Response states, in a footnote: "Plaintiffs will be requesting leave to amend their complaint to identify the 'other deputy' in the home as Deputy Garcia."  [Doc. 71, p. 5 n.1]  Such motion to amend, however, has neither been made nor granted.  The Court will not consider the Response's additional factual allegations; to the extent that the Response may be considered to present matters outside the pleadings, the Court explictly excludes such matters.  *See* Rule 12(d) (if court ruling on Rule 12(b)(6) or 12(c) motion does not exclude matters presented outside the pleadings, motion must be treated as one

for summary judgment under Rule 56).   As discussed above, a motion to dismiss tests the sufficiency of the allegations in the complaint; the Court considers only the "four corners" of the complaint.  *See Mobley*, 40 F.3d at 340; *Issa*, 354 F.3d at 1179 (stating that plaintiff "may not rely on the allegations in his reply brief to supplement his complaint").   And even if the Complaint had properly alleged that Deputy Garcia entered the home along with Deputy Eby, Deputy Garcia would still be entitled to qualified immunity on the same basis as Deputy Eby, as discussed above.

The Court concludes that Count I does not contain sufficient factual allegations to state a plausible claim that Deputies Garcia, Ojeda, and Saenz violated the Fourth Amendment.  The Court need not reach the second issue, whether the right was clearly established.  *See Butler*, 341 F.3d at 1200.   The Court concludes that Deputies Garcia, Ojeda, and Saenz are entitled to qualified immunity on Count I.

### 2.  Motion To Dismiss Count II by Deputies Garcia, Ojeda, and Saenz

For the same reasons as discussed above with regard to Defendant Eby's motion to dismiss Count II, the Court concludes that the Complaint fails to set forth sufficient factual allegations to state a plausible claim that Deputies Garcia, Ojeda, and Saenz violated Plaintiff Gutierrez's constitutional rights through a warrantless arrest or search of the truck.

The Court concludes that Count II fails to contain sufficient factual allegations and fails to state a plausible claim that Deputies Garcia, Ojeda, and Saenz violated the Fourth Amendment.   The Court need not reach the second issue, whether the right was clearly established.  *See Butler*, 341 F.3d at 1200.  The Court concludes that Deputies Garcia, Ojeda, and Saenz are entitled to qualified immunity on Count II.

### 3.  Motion To Dismiss Count III by Deputies Garcia, Ojeda, and Saenz

For the same reasons as discussed above with regard to Defendant Eby's motion to dismiss Count III, the Court concludes that the Complaint fails to set forth sufficient factual allegations or to state a plausible claim that Deputies Garcia, Ojeda, and Saenz are liable for failure to intervene to prevent the use of excessive force by Deputy Maynes.  *See Hall*, 12 Fed. Appx. at 861; *Fogarty*, 523 F.3d at 1164.  The complaint does not contain sufficient factual allegations to show that these deputies were present, had reason to know that excessive force was being used, and had an opportunity to prevent the use of excessive force.  *See Fogarty*, 523 F.3d at 1164-65.

As discussed above with reference to Deputy Eby's motion to dismiss Count III, Plaintiffs' Response recites additional facts inconsistent with the Complaint—asserting that Deputy Garcia and other deputies arrived earlier than alleged in the Complaint.  [Doc. 71, pp. 13, 15-16, 17, 23]  The Court again concludes that it will not consider the facts asserted in the Response because they are inconsistent with the chronology set forth in the Complaint, and because on a Rule 12(b)(6) motion the Court must limit itself to the four corners of the Complaint.  *See Mobley*, 40 F.3d at 340; *Issa*, 354 F.3d at 1179.  To the extent that the Response may be considered to present matters outside the pleadings, the Court explictly excludes such matters.  *See* Rule 12(d) (if court ruling on Rule 12(b)(6) or 12(c) motion does not exclude matters presented outside the pleadings, motion must be treated as one for summary judgment under Rule 56).

Nor will the Court consider the new factual allegations and new claim that Deputy Ojeda, along with Deputy Eby, was liable for constitutional violations by Deputy Maynes because Ojeda acted in a supervisory capacity over Maynes.  [Doc. 71, p. 23]  The Court explicitly

excludes these matters.  On the same reasoning discussed above, in ruling on a Rule 12(b)(6) motion to test the sufficiency of the Complaint, the Court will not consider a new theory of liability, and new factual allegations, not set forth in the Complaint.  The Complaint gave Defendant Ojeda no notice of these allegations and this new theory.

The Court concludes that Count III fails to properly allege that Deputies Garcia, Ojeda, and Saenz violated the Fourth Amendment.  The Court need not reach the second issue, whether the right was clearly established.  *See Butler*, 341 F.3d at 1200.  The Court concludes that Deputies Garcia, Ojeda, and Saenz are entitled to qualified immunity on Count III.

As discussed above, the Court concludes that Deputy Garcia, Deputy Ojeda, and Deputy Saenz are entitled to qualified immunity on Counts I, II, and III.  The Court will grant the Deputies' motion to dismiss.  [Doc. 62]

**C.  Sheriff Cobos's Motion To Dismiss [Docs. 64-65]**

Count III of the Complaint alleges that Deputy Maynes used excessive force, contrary to Department policy and safety protocols, by beating and tasing Plaintiffs.  Count III also alleges: "Sheriff Cobos had a duty to supervise, discipline and control Luna County deputies, and to provide sufficient training for them, including Deputy Maynes, and his failure in these areas with respect to Deputy Maynes, and Deputy Maynes' excessive use of force, and other acts of misconduct, lead to liability on the part of Sheriff Cobos."  [Doc. 52, ¶ 88]  The Complaint alleges:  "At all times material hereto, Defendants Sheriff Raymond Cobos and County Manager John Sutherland acted with deliberate, reckless and callous indifference to the constitutional rights of plaintiffs in their policies, practices and customs, including their failure to properly hire, train, screen, discipline, control and supervise the Defendants."  [Doc. 52, ¶ 14]

Sheriff Cobos filed a motion to dismiss Count III against him on the ground of qualified immunity.  [Docs. 64-65]  Sheriff Cobos argues that Plaintiffs make no factual allegations beyond stating that he was the Luna County Sheriff and make a merely conclusory allegation that he failed to supervise or train.  [Doc. 65, p. 3]

Sheriff Cobos may not be held liable under § 1983 on a theory of respondeat superior. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).  "As a general matter, § 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).  Individual liability of Sheriff Cobos must be based on his personal involvement in a constitutional violation. *Id.*; *Estate of Booker v. Gomez*, ___ F.3d ___, 2014 WL 929157, *25 (10th Cir. 2014) (observing that the contours of personal involvement for supervisory liability are still unclear after *Iqbal*). Plaintiffs must show "an 'affirmative link' between the supervisor and the constitutional violation."  *Estate of Booker*, 2014 WL 929157, *24 (quoting *Schneider*, 717 F.3d at 767).  A § 1983 claim against Sheriff Cobos in his supervisory capacity must show three elements:  "(1) personal involvement; (2) causation, and (3) state of mind."  Schneider, 717 F.3d at 767.

The second element, causation, "'requires the plaintiff to show that the defendant's alleged action[s] caused the constitutional violation' by setting 'in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.'"  *Estate of Booker*, 2014 WL 929157, *25 (quoting *Schneider*, 717 F.3d at 768).  The third element requires the plaintiff to show that Sheriff Cobos took the alleged actions with the requisite state of mind.  *Id.*

The Complaint was not required to set forth "detailed factual allegations," but the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   Although the Court is required to accept the well-pleaded allegations of the Complaint as true, the Court does not accept as true conclusory allegations or legal conclusions. *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283.

The Court concludes that the Complaint fails to make factual allegations sufficient to meet these standards.   The Complaint merely makes a conclusory allegation that Sheriff Cobos failed to properly train and supervise Deputy Maynes.   But the Court does not accept such conclusory allegations as true. *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283.   "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556).   The Complaint contains no factual allegations regarding any failure to train or supervise.   And even if the conclusory allegation of failure to train were sufficient, the Complaint fails to show an affirmative link with the alleged excessive force employed by Deputy Maynes; the Complaint contains no factual allegations to show causation, or to show Sheriff Cobos's state of mind.

The Complaint does not contain factual allegations sufficient to permit the Court to "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.   The Complaint thus fails to allege facts sufficient to state a claim which is plausible—rather than merely conceivable—on its face. *See Robbins*, 519 F.3d at 1247.   The Complaint is insufficient to survive the motion to dismiss because it fails to go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.   Because the Complaint is "sufficiently devoid of facts necessary to

establish liability," Plaintiffs "'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

The Court concludes that Count III of the Complaint does not sufficiently allege that Sheriff Cobos violated Plaintiffs' constitutional rights.  The Court need not reach the second issue, whether the rights were "clearly established."  *See Butler*, 341 F.3d at 1200.  On the basis of qualified immunity, the Court will grant Sheriff Cobos's motion to dismiss Count III against him on the basis of qualified immunity.

## CONCLUSION

The Court will deny Defendants' Motion To Strike.  [Doc. 73]

The Court will grant three motions to dismiss on the basis of qualified immunity, as discussed above.  [Docs. 60, 62, 64]  The granting of these three motions results in dismissing Counts I, II, and III against Defendants Eby, Garcia, Ojeda, and Saenz in their individual capacities, and results in dismissing Count III against Sheriff Cobos in his individual capacity.  Because Defendants' motions to dismiss were based on qualified immunity, they were limited to requests for dismissal of claims against Defendants in their individual capacities only; these motions do not address issues of official capacity.  Because the First Amended Complaint was filed against Defendants in both their individual and official capacities, this Memorandum Opinion and Order does not dismiss Counts I, II, and III to the extent these counts make claims against these Defendants in their official capacities.


**IT IS THEREFORE ORDERED** that *Defendants' Motion To Strike* [Doc. 73] is **DENIED**.

**IT IS THEREFORE ORDERED** that:  Defendant Deputy Eby's *Motion To Dismiss* [Doc. 60] is **GRANTED**; the *Motion To Dismiss* filed by Defendants Garcia, Ojeda, and Saenz [Doc. 62] is **GRANTED**; and Defendant Sheriff Cobos's *Motion To Dismiss* [Doc. 64] is **GRANTED**.

_____

Judith C. Herrera
United States District Court Judge