IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANNA GUTIERREZ and PATSY FLORES,

      Plaintiffs,

    vs.                                        Civ. No. 12-980 JH/GBW

LUNA COUNTY SHERIFF RAYMOND COBOS,
in his individual and official capacity; LUNA COUNTY
SHERIFF DEPUTY GABRIEL MAYNES, DEPUTY
MIKE EBY, DEPUTY TRINI GARCIA, DEPUTY
JOSE OJEDA, DEPUTY ISRAEL SAENZ, Jr., in
their individual and official capacities; LUNA
COUNTY CENTRAL DISPATCH DIRECTOR
MIRNA GRADO and DISPATCH EMPLOYEE
LUHANA VILLALBA, in their individual and
official capacities; LUNA COUNTY MANAGER
JOHN SUTHERLAND, in his individual and official capacity,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

     This matter is before the Court on the following motions:  (I) Plaintiffs' *Motion for Leave To Amend Complaint*, attaching a "Second Amended Complaint" [Doc. 126]; (II) Defendant Sutherland's *Motion To Dismiss Count IV* [Doc. 58]; (III) *Defendant Mirna Grado's Motion To Dismiss or for Summary Judgment* [Doc. 56]; (IV) Defendant Villalba's *Amended Motion To Dismiss for Failure To State a Claim* [Doc. 91]; (V) *Defendants' Motion for Summary Judgment on Counts I, II, IV, V, VI, and VII of Plaintiffs' Amended Complaint* [Doc. 85]; and *Defendant Mirna Grado's Second Motion for Summary Judgment* [Doc. 95]; (VI) *Defendants' Motion To Strike* [Doc. 99]; *Plaintiffs' Motion To Amend Response to Defendants' Motion for Summary Judgment on Counts I, II, IV, V, VI and VII* [Doc. 103]; *Defendants' Motion To Strike Plaintiffs'*

1

*Motion To Amend Response (Doc. 103)* [Doc. 105]; *Plaintiffs' Motion To Exceed Page Limit for Exhibits and for Plaintiffs' Response to Defendants' Motions for Summary Judgment* [Doc. 104]; and *Defendants' Motion To Strike Plaintiffs' Motion To Exceed Page Limit (Doc. 104)* [Doc. 107]; and (VII) *Plaintiffs' Motion and Memorandum in Support of Counsel's Affidavit To Allow Discovery Pursuant to Rule 56(d)* [Doc. 80]; and *Plaintiffs' Third Motion and Memorandum in Support of Counsel's Affidavit To Allow Discovery Pursuant to Rule 56(d)* [Doc. 113].

## BACKGROUND

The incident giving rise to this case occurred on July 4, 2009. Plaintiff Gutierrez was charged in state court with two felonies and four misdemeanors: Aggravated fleeing, Battery on a peace officer, Failure to maintain traffic lane, Careless driving, Concealing identity, and DWI. [Doc. 52, ¶ 48] The DWI charge was dismissed at a preliminary hearing by a State of New Mexico Magistrate Court Judge for lack of probable cause. [Doc. 52, ¶ 107] On March 31, 2011, the state filed a nolle prosequi dismissing the remaining charges. [Doc. 52, ¶ 105]

Almost three years after the incident, Plaintiffs filed a complaint in the Sixth Judicial District Court for the State of New Mexico. [Doc. 1-1] The case was removed to this Court on September 19, 2012. [Doc. 1]

The Court gave Plaintiffs leave to file an amended complaint five and one-half months after removal to federal court. [Doc. 51] *See* Fed. R. Civ. P. 15(a). Plaintiffs filed the First Amended Complaint [hereinafter "FAC"] on March 6, 2013. [Doc. 52]

2

## LEGAL STANDARDS

"The correct standard for reviewing a motion to dismiss in a qualified-immunity case is the same as for dismissals generally." *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). The court assesses the legal sufficiency of the allegations contained within the four corners of the complaint. *Id*. Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). All well-pleaded facts must be accepted as true; these facts must be viewed in the light most favorable to the plaintiff, and all reasonable inferences must be allowed in favor of the plaintiff. *Archuleta*, 523 F.3d at 1283; *Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000) (motion under Rule 12(c) "is treated as a motion to dismiss under Rule 12(b)(6)" and same standard applies). These standards apply only to well-pleaded facts, however; legal conclusions and conclusory allegations do not merit any deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Archuleta*, 523 F.3d at 1283. The court does not accept as true a legal conclusion couched as a factual allegation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint "does not need detailed factual allegations," but the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint must go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory statements unsupported by factual allegations are not sufficient. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Iqbal*, 556 U.S. at 678 (stating that "'naked assertion[s]' devoid of 'further factual enhancement'" are not sufficient (quoting *Twombly*, 550 U.S. at 557)). The Tenth Circuit stated that the *Twombly* Court sought to "find a middle ground between 'heightened fact pleading,' which is expressly rejected," and

"allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" which are insufficient.[1]   *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570, 555).

The allegations of fact must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.   Looking within the four corners of the complaint, the Court determines whether there are "sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Archuleta*, 523 F.3d at 1281, 1283 (quoting *Twombly*, 550 U.S. at 556).   The Tenth Circuit observed that "plausible" cannot mean "likely to be true," but "must refer to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"   *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).   "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.   In addition to weeding out claims lacking a reasonable prospect of success, the requirement of plausibility serves to inform the defendant of the actual grounds of the claim. *Robbins*, 519 F.3d at 1248.

"Qualified immunity is designed to shield public officials from liability and ensure 'that erroneous suits do not even go to trial.'" *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.

---

[1] The Court notes that one Defendant cites superseded caselaw stating that a "heightened pleading standard" is required when a qualified immunity defense is asserted in a Rule 12(b)(6) motion to dismiss.  [Doc. 91, p. 4]  The Tenth Circuit for a time followed this approach, but later concluded that Supreme Court precedent required abandonment of this approach; the Tenth Circuit concluded that the same standard applies for motions to dismiss in qualified immunity cases and for motions to dismiss in general. *Moya v. Schollenbarger*, 465 F.3d 444, 454-55 (10th Cir. 2006).  A "heightened pleading standard" does not apply in the case before this Court.

1995).  In addition, qualified immunity is designed to prevent government officials from facing the other burdens of litigation.   *Iqbal*, 556 U.S. at 672.  The Supreme Court "has directed the lower federal courts to apply qualified immunity broadly, to protect from civil liability for damages all officers except 'the plainly incompetent or those who knowingly violate the law,'" so that officers "might not be unduly 'inhibit[ed] . . . in performing their official duties.'"  *Wilson v. City of Lafayette*, 510 Fed. Appx. 775, 780 (10th Cir. 2013) (unpublished)[2] (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001)).  "The *Twombly* standard may have greater bite in [qualified immunity cases], appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation.'"  *Robbins*, 519 F.3d at 1249 (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987)).

To survive a motion to dismiss based on a claim of qualified immunity, the plaintiff bears a "heavy two-part burden."  *Archuleta*, 523 F.3d at 1283.  "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right."  *Id.*  § 1983 creates no substantive rights, but "merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  The validity of a claimed constitutional violation is judged "by reference to the specific constitutional standard which governs that right."  *Id.* at 394.  The second part of the plaintiff's burden is to "show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue."  *Archuleta*, 523 F.3d at 1283.  The "'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Albright*, 51 F.3d at 1535 (quoting *Anderson*, 483 U.S. at 640).  A plaintiff can carry his burden of showing that a

---

[2] The Court cites this and other unpublished opinions for their persuasive value.  *See* 10th Cir. R. 32.1(A).

right is clearly established by citing Supreme Court or Tenth Circuit cases on point, or by demonstrating that the weight of authority from other circuits shows the right to be clearly established. *Archuleta*, 523 F.3d at 1283; *Albright*, 51 F.3d at 1535. If the plaintiff fails to carry either part of this two-part burden, the defendant is entitled to qualified immunity. *Archuleta*, 523 F.3d at 1283. If the complaint fails to properly allege a violation of a constitutional or statutory right, the court need not reach the question of whether the law was "clearly established." *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003).


## I.  Plaintiffs' *Motion for Leave To Amend Complaint* [Doc. 126]

The Court first considers Plaintiffs' *Motion for Leave To Amend Complaint*. [Doc. 126] Plaintiffs attached a "Second Amended Complaint" [hereinafter "SAC"]. [Doc. 126-1] Defendants filed a response, arguing that the motion should be denied as untimely, dilatory, and prejudicial. [Doc. 127] Plaintiffs have filed no reply, and the time permitted has passed. The Court has reviewed the motion, briefs, and relevant law. The Court concludes that the motion should be denied.

It was almost three years after the incident that Plaintiffs filed a complaint in state court. [Doc. 1-1] More than five months after the case was removed to this Court, the Court gave Plaintiffs leave to file an amended complaint. [Docs. 1, 51] *See* Fed. R. Civ. P. 15(a). Plaintiffs filed the First Amended Complaint [hereinafter "FAC"] on March 6, 2013—one day later than the Court allowed. [Doc. 52]

By April 5, 2013, eight Defendants had filed a total of six motions to dismiss, with three Defendants combining to file one of those motions. [Doc. 56 (Grado); Doc. 58 (Sutherland);

Doc. 60 (Eby); Doc. 62 (Garcia, Ojeda, Saenz); Doc. 64 (Cobos); Doc. 42 (Villalba)]  In May 2013, Plaintiffs filed a total of three responses, two of which addressed several motions to dismiss.  [Docs. 69, 71, 72]  In every one of the three responses, Plaintiffs included new factual allegations and stated that they would be requesting leave to amend the FAC.  [Doc. 69, p. 15; Doc. 71, p. 5 n.1, p. 17 n.2, p. 23 nn.3-4; Doc. 72, p. 15]

On March 26, 2014, the Court granted three of those motions to dismiss.  [Doc. 120 (granting motions in Docs. 60, 62, 64)]  It was not until after this ruling that Plaintiffs finally made a motion to amend the complaint for a second time.  [Doc. 126]  It was more than a year after Plaintiffs had said they would file a motion to amend.

On June 1, 2014, Plaintiffs filed the motion for leave to amend.  [Doc. 126]  Plaintiffs state that they "seek leave to amend their complaint to incorporate facts which have inadvertently been left out of their complaint."  [Doc. 126, ¶ 6]  Plaintiffs state:  "Such amendment will hopefully clarify the course of events alleged by Plaintiffs, and clear up any confusion which may have been caused by leaving out specific details in Plaintiffs' First Amended Complaint." [Doc. 126, ¶ 6]

The SAC would make critical changes in factual allegations and raise new theories of liability.  Some of these changes would resurrect charges already dismissed by the Court's March 26, 2014 Memorandum Opinion and Order.  [Doc. 120]  Many of the changes add new facts of which Plaintiffs were previously aware, and constitute an effort to avoid rulings in that March 26, 2014 Order.

Paragraphs 32-38 of the SAC would make critical changes in when Eby and Garcia arrived at the apartment and what they knew.  The FAC alleged that they arrived after Maynes allegedly beat and tased Gutierrez and Flores, and alleged that Eby only "observed Ms. Gutierrez

on the floor as Deputy Maynes completed handcuffing her."  [Doc. 52, ¶ 32]  Therefore, the Court's March 26, 2014 Memorandum Opinion and Order dismissed Counts I, II, and III against Eby, primarily on the ground that the facts alleged did not show that Eby did anything other than assist Maynes and act at Maynes's direction.  The Court also determined that the FAC was insufficient because it alleged actions by "one or more deputies," failing to allege personal involvement by Eby in any constitutional violation and failing to "make clear exactly *who* is alleged to have done *what* to *whom*."  [Doc. 120, p. 18]  These conclusions were based on the factual allegations of the FAC, which did not allege that Eby:  saw any beating or tasing, knew the offense for which Maynes pursued Gutierrez, knew whether Gutierrez had resisted arrest before Eby arrived, or knew why Maynes had entered the apartment.  In addition, the FAC did not contain allegations showing that Eby had reason to know that any force used was excessive, or that Eby had a realistic opportunity to prevent any use of excessive force.  Although Plaintiffs' response included additional, inconsistent allegations relevant to some of these points, the Court observed that Plaintiffs could not alter the FAC's factual allegations without amending the FAC and that the Rule 12(b)(6) motion must be decided on the contents of the FAC.  [Doc. 120, pp. 23-24]  The Court declined to consider new theories of liability, supported by new factual allegations, in Plaintiffs' response that were not included in the FAC.  [Doc. 120, p. 25]  On similar grounds the Court dismissed Counts I, II, and III against Garcia, Ojeda, and Saenz.  The Court dismissed Count III against Cobos, because the FAC did not allege personal involvement in a constitutional violation but made conclusory allegations unsupported by factual allegations.

More than a month after the Court issued that Order, Plaintiffs filed their motion to amend the FAC.  Plaintiffs seek to avoid the Court's rulings by adding in the SAC new factual allegations—some of which are inconsistent with previous allegations—and new theories of

liability.  New facts alleged in the SAC include:  that Eby and Garcia entered the apartment and saw Maynes kicking, beating, and tasing Gutierrez; that Eby and Garcia knew Maynes pursued Gutierrez only for a traffic violation; that Gutierrez had not resisted Maynes, and Eby and Garcia knew Gutierrez had no weapon; and that Eby and Garcia failed to intervene upon observing Maynes kick, beat, and tase Gutierrez (thus implying a realistic opportunity to prevent use of excessive force).  [Doc. 126-1, ¶¶ 32-38, 102]  For the FAC's allegations that "one of more deputies" performed some actions, which the Court found insufficient, the SAC substitutes the name of a specific deputy (e.g., the new allegation that it was Garcia who entered the apartment [Doc. 52, ¶ 32; Doc. 126-1, ¶ 33], and that it was Garcia who searched Gutierrez's truck [Doc. 52, ¶ 44; Doc. 126-1, ¶ 53]).  Alleging new facts and asserting new theories of liability, the SAC alleges that Eby was Maynes's supervisor and provided deficient training regarding warrants and home entry.  [Doc. 126-1, ¶¶ 39, 69-75]  Similar allegations of new facts and new theories of liability in the SAC include allegations that Ojeda was Maynes's supervisor and provided deficient training regarding use of tasers and other force.  [Doc. 126-1, ¶¶ 103-107]  The SAC also alleges that Eby and Ojeda as supervisors tacitly endorsed Maynes's excessive force and improper taser use.  [Doc. 126-1, ¶ 108]

The court should grant leave to amend a complaint "freely … when justice so requires." Fed. R. Civ. P. 15(a)(2).  In *Minter*, the Tenth Circuit discussed the principles and factors relevant to deciding whether to grant a motion to amend.  *Minter v. Prime Equip. Co.*, 451 F.3d 1196 (10th Cir. 2006).  The Tenth Circuit recognized that some circuits focus on prejudice, bad faith, futility, or a substantial burden on the court.  *Id.* at 1205.  In contrast, the Tenth Circuit "focuses primarily on the reasons for the delay," holding that denial of a motion to amend "is

appropriate 'when the party filing the motion has no adequate explanation for the delay.'"  *Id*. at 1206 (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365-55 (10th Cir. 1993)).

Although the lateness of the motion is not by itself a sufficient reason to deny amendment, "undue delay" is; the "[e]mphasis is on the adjective."  *Id*. at 1205.  The Tenth Circuit explained that a plaintiff who delays is acting contrary to the spirit of Rule 15(a).  *Id*. "The longer the delay, 'the more likely the motion to amend will be denied, as <u>protracted delay</u>, with its attendant burdens on the opponent and the court, <u>is itself a sufficient reason for the court to withhold permission to amend</u>.'"  *Id*. (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

The Court concludes that Plaintiffs were dilatory, delaying for more than one year after acknowledging the need to amend and for more than one and one-half years after the case was brought to this Court.  The Tenth Circuit upheld on the ground of untimeliness alone a district court's denial of amendment, when the motion to amend was filed eight months after commencement of the action.  *United States v. Burbage*, 280 Fed. Appx. 777, 783 (10th Cir. 2008) (unpublished); *see Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010) (acknowledging affirmance of denial to amend when delays were fourteen or seventeen months after filing of the original complaint).

Defendants' motions to dismiss, arguing that the factual allegations of the FAC were insufficient, were filed by April 5, 2013.  Plaintiffs' responses were filed weeks late, and alleged new facts and new theories of liability; acknowledging this transgression, Plaintiffs stated that a motion to amend the complaint would be filed.  [Docs. 69, 71, 72]  Yet Plaintiffs waited more than a year to file a motion to amend.  They waited until more than a month after the Court

issued its Memorandum Opinion and Order.  The new facts in the SAC were known to Plaintiffs more than a year earlier, as many were improperly included in Plaintiffs' responses.

The Court's prior decision not to grant Defendants' motion to strike Plaintiffs' responses as untimely and overlong was not a statement that Plaintiffs had *carte blanche*.  [Doc. 120, pp. 3-4 (denying Defendants' *Motion To Strike* [Doc. 73])]   In that decision the Court cautioned Plaintiffs to follow the rules.  [Doc. 120, p. 4]  The Court's rulings that it would not consider new factual allegations and new theories raised in Plaintiffs' responses without amendment of the complaint did not constitute license for Plaintiffs to file a motion to amend, or to file such a motion unreasonably late.  [Doc. 120, pp. 23-29]

In *Wopsock*, the Tenth Circuit affirmed the district court's denial of a motion to file a second amended complaint.  *Wopsock v. Natchees*, 279 Fed. Appx. 679 (10th Cir. 2008) (unpublished).  The motion to amend was filed about eight months after the first two complaints.  *Id*. at 688.  The district court determined that the plaintiffs knew the facts supporting the amended claims at the time of filing the first two complaints, and that the plaintiffs were attempting "to avoid the court's prior rulings" and the defendants' arguments.  *Id*.  In addition, the plaintiffs had failed to explain their eight-month delay in moving to amend.  *Id*.  The district court found the motion untimely and denied amendment.  *Id*.  The Tenth Circuit affirmed, stating:  "Untimeliness alone constitutes a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay."  *Id*. at 689.  The Tenth Circuit also held:  "It is not necessary to show prejudice to the opposing party."  *Id*.

*Wopsock* acknowledged Rule 15's exhortation to "freely give leave when justice so requires."  The Tenth Circuit observed that denial of a motion to amend is justified when the plaintiff is making the complaint into a "moving target" or attempting to salvage a lost case:

> Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay[ ] raising [an] issue until the eve of trial.

*Minter*, 451 F.3d at 1206 (citations and internal quotation marks omitted); *see Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998) (stating Tenth Circuit does not favor permitting party to attempt "to salvage a lost case" by untimely amendment, especially after trial judge has ruled adversely); *United States v. Burbage*, 280 Fed. Appx. 777, 783 (10th Cir. 2008) (unpublished) (same).

As in *Wopsock*, Plaintiffs are attempting to amend the FAC in response to rulings already issued by this Court, changing factual allegations to avoid rulings made in the March 26, 2014 Memorandum Opinion and Order. The SAC not only adds facts, but actually changes facts and chronology alleged in the FAC. Plaintiffs' case would become a "moving target" not only for Defendants—but also for the Court. As one court aptly put it, "The liberal amendment policy of Fed. R. Civ. P. 15(a) does not envision a new amendment each time the Court dismisses a party or claim." *Nichols v. Kansas Dep't of Corr.*, 2012 WL 1435290, *4 (D. Kan. 2012) (unpublished). For instance, the Court's March 26, 2014 Order dismissed Counts I-III against Eby, Garcia, Ojeda, and Saenz; the SAC changes and adds factual allegations in an attempt to resurrect these claims.

Plaintiffs provide no explanation for the delay, stating in their motion to amend:

> 5. This Court ruled, in part, on Defendants' Motions to Dismiss on the basis of qualified immunity in its Order entered on March 26, 2014. The Court also noted various deficiencies in Plaintiffs' First Amended Complaint, some of which had to do with Plaintiffs' reference to facts in their responses that were not alleged in their Amended Complaint.

> 6. Plaintiffs seek leave to amend their complaint to incorporate facts which have <u>inadvertently</u> been left out of their complaint. Such amendment will

hopefully clarify the course of events alleged by Plaintiffs, and clear up any confusion which may have been caused by leaving out specific details in Plaintiffs' First Amended Complaint.

[Doc. 126, ¶ 6 (emphasis added)]   The protracted delay before Plaintiffs filed their motion to amend is not justified by Paragraph 5 above.   Nor is it justifiable to claim that critical facts were "inadvertently" omitted from the complaint.   Plaintiffs themselves recognized the need to file a motion to amend, back in May 2013, when they filed their responses.   [Docs. 69, 71, 72] Inadvertence is not an explanation for delay.   *See Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (observing that even a pro se plaintiff is not relieved of alleging sufficient facts in complaint, as no special legal training is necessary to recount relevant facts).

The Court concludes that the motion to amend should be denied as untimely because Plaintiffs fail to provide an adequate explanation for the protracted delay.   *See Minter*, 451 F.3d at 1206; *Birmingham v. Experian Info. Solutions, Inc.*, 633 F.3d 1006, 1020-21 (10th Cir. 2011) (affirming denial of amendment when counsel's explanation was press of business).

As discussed more fully below (in Section VI), Plaintiffs have engaged in a pattern of late filings.   Inadvertence and the press of running a solo business do not relieve counsel of familiarizing herself with, and complying with, court rules, including time restrictions.

Plaintiffs contend that "Defendants will not be prejudiced since discovery has not yet proceeded in this matter," and because Defendants were "aware of such additional facts, for the most part, through prior testimony under oath by the parties and/or witnesses which occurred prior to the filing of this lawsuit."   [Doc. 126, ¶¶ 8-9]  But the doctrine of qualified immunity is intended to spare defendants the burdens of discovery and other preparations for trial, not just trial itself.   *Iqbal*, 556 U.S. at 672; *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Plaintiffs blithely assert that Defendants were aware of the additional facts.  But Plaintiffs were aware of

the facts also, and it was Plaintiffs' burden to allege sufficient facts in their complaint.  At any event, denial of leave to amend does not require a showing of prejudice to Defendants.  *See Wopsock*, 279 Fed. Appx. at 689.  The Court does note, however, that as a general matter it becomes more difficult for parties to defend a case as time goes by; the SAC—if allowed— would be alleging new facts and new theories of liability five years after the incident.  [*See* Doc. 127, pp. 3-4]

The Court concludes that there has been "undue delay" in filing the motion to amend and that Plaintiffs had knowledge of the facts long before the motion was filed.  *See Minter*, 451 F.3d at 1206.  Plaintiffs have provided no adequate explanation for the long delay.  *See id.* (holding that the focus in the Tenth Circuit is "primarily on the reasons for the delay").  The SAC would resurrect charges already dismissed, making the complaint a "moving target" for both Defendants and the Court.  *See Viernow*, 157 F.3d at 800.  For all of these reasons, the Court concludes that Plaintiffs' motion to amend should be denied.

## II.  Defendant Sutherland's Motion To Dismiss Count IV [Doc. 58]

Sutherland filed a *Motion To Dismiss*.[3]  [Doc. 58]  Plaintiffs filed a response [Doc. 72], and Sutherland filed a reply [Doc. 79].  Having reviewed the pleadings, briefs, and relevant law, the Court concludes that the motion should be granted.

---

[3]  The Court notes that Sutherland filed his motion to dismiss after he filed his answer to the FAC.  Grado and Villalba also filed motions to dismiss after filing answers to the FAC.  A motion to dismiss filed after the answer is treated as a motion for judgment on the pleadings.  *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002).  The answers did generally assert, however, that Plaintiffs fail to state a claim and that Defendants are entitled to qualified immunity; at any event, the same standard applies to a Rule 12(b)(6) motion and a Rule 12(c) motion.  *Id.*; *Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000).  Because the analysis and result is "the same regardless of the finer procedural distinctions," for ease of reference the Court will "keep the designations used by the parties" and refer to these motions as motions to dismiss.  *See Borde v. Bd. of Cnty. Comm'rs*, 514 Fed. Appx. 795, 799 n.5 (10th Cir. 2013) (unpublished).

Sutherland argues that Count IV should be dismissed because the FAC is insufficient to state a claim under *Iqbal* and he is entitled to qualified immunity.  [Docs. 59, 79]  The FAC alleges that Sutherland, as the Luna County Manager:  was "responsible for the policies, practices and customs of the Luna County Central Dispatch"; was "responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of Luna County Central Dispatch employees under his command"; "acted with deliberate, reckless and callous indifference to the constitutional rights of plaintiffs in [his] policies, practices and customs, including [his] failure to properly hire, train, screen, discipline, control and supervise the Defendants"; "continually resisted" Plaintiffs' efforts to review the recorder which allegedly malfunctioned and documents related to that malfunction; filed a motion for a protective order; and "breached [his] duty to provide exculpatory evidence to Ms. Gutierrez in her criminal case." [Doc. 52, ¶¶ 9, 12-14, 96-97, 108]

Sutherland limits his motion to an argument for dismissal of Count IV.  In his individual capacity, Sutherland may not be held liable under § 1983 on a theory of respondeat superior.  *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).  "As a general matter, § 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).  Individual liability of Sutherland must be based on his personal involvement in a constitutional violation. *Id.*; *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (observing that the contours of personal involvement for supervisory liability are still unclear after *Iqbal*).  Plaintiffs must show "an 'affirmative link' between the supervisor and the constitutional violation."  *Estate of Booker*, 745 F.3d at 435 (quoting *Schneider*, 717 F.3d at 767).  A § 1983 claim against

Sutherland in his supervisory capacity must show three elements:  "(1) personal involvement; (2) causation, and (3) state of mind."  Schneider, 717 F.3d at 767.

The second element, causation, "'requires the plaintiff to show that the defendant's alleged action[s] caused the constitutional violation' by setting 'in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.'"  *Estate of Booker*, 745 F.3d at 435 (quoting *Schneider*, 717 F.3d at 768).  The third element requires the plaintiff to show that Sutherland took the alleged actions with the requisite state of mind.  *Id.*

The FAC was not required to set forth "detailed factual allegations," but the factual allegations "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although the Court is required to accept the well-pleaded allegations of the FAC as true, the Court does not accept as true conclusory assertions or legal conclusions.  *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283.

The Court concludes that the FAC fails to make factual allegations sufficient to meet these standards.  The FAC merely makes conclusory assertions that Sutherland failed to properly "hire, train, screen, discipline, control and supervise" Luna County Central Dispatch Director Grado and Luna County Central Dispatch employee Villalba.  [Doc. 52, ¶ 9]  But the Court disregards conclusory, unsupported assertions.  *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283.  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556).  The FAC contains no factual allegations regarding any failure to hire, train, screen, discipline, control or supervise.  And even if the conclusory assertion of such failures were sufficient, the FAC fails to show an affirmative link with the alleged destruction or

16

withholding of evidence by Grado and Villalba; the FAC contains no factual allegations to show causation, or to show Sutherland's state of mind.

The FAC does not contain factual allegations sufficient to permit the Court to "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.  The FAC thus fails to allege facts sufficient to state a claim which is plausible—rather than merely conceivable—on its face. *See Robbins*, 519 F.3d at 1247.  The FAC is insufficient to survive the motion to dismiss because it fails to go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Because the FAC is "sufficiently devoid of facts necessary to establish liability," Plaintiffs "'have not nudged their claims across the line from conceivable to plausible.'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

The Court concludes that Count IV of the FAC does not sufficiently allege that Sutherland violated Plaintiffs' constitutional rights.  The Court need not reach the second issue, whether the rights were "clearly established." *See Butler*, 341 F.3d at 1200.  Sutherland is entitled to qualified immunity.  The Court will grant the motion to dismiss, with prejudice, the individual capacity claims against Sutherland under Count IV.


### III.  Grado's Motion To Dismiss or for Summary Judgment [Doc. 56]

The Court next considers *Defendant Mirna Grado's Motion To Dismiss or for Summary Judgment*.  [Doc. 56]  Grado moves to dismiss Counts IV, V, VI, and VII under Rule 12(b)(6), for failure to state a claim.  Alternatively, Grado moves for summary judgment, attaching several documents; some of these documents might be properly considered under Rule 12(b)(6).  *See Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008) (stating court may consider documents subject to judicial notice, or undisputedly authentic documents incorporated into the

complaint and central to plaintiff's claims). The Court need not decide this question, however, because the Court will exercise its broad discretion to resolve Grado's motion without considering the attached exhibits. *See Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).

Plaintiffs filed a response [Doc. 69], and Grado filed a reply [Doc. 74]. Having considered the motion, briefs, and relevant law, the Court concludes that Grado's motion to dismiss under Rule 12(b)(6) should be granted.

**A. Grado's Motion To Dismiss Count IV**

The FAC asserts claims under the Fourteenth Amendment for: (1) destruction of evidence; (2) malicious prosecution; and (3) false imprisonment. The FAC alleges that the July 4, 2009 dispatch recordings were destroyed or withheld, that some Defendants obstructed Plaintiffs' requests to see the recorder and the repair records, and that Maynes's dispatch request was altered "so as to hide the actual disposition of Deputy Maynes' request." [Doc. 52, ¶ 103] Grado's answer asserts that the recorder malfunctioned so that recordings were never available; she denies withholding or destroying recordings. [Doc. 53] Whether the recordings were destroyed or whether the recorder malfunctioned is a disputed issue of fact; viewing the FAC in the light most favorable to Plaintiffs, the Court proceeds on the assumption that the recordings were destroyed or withheld. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

The next questions are whether the FAC states a claim of a constitutional violation for such destruction or withholding, and whether any such constitutional right was clearly established.

**(1) Destruction of evidence**

Plaintiffs allege that Grado and others "breached their duty to provide exculpatory evidence to [Gutierrez] in her criminal case, and intentionally deprived her of this crucial evidence."   [Doc. 52, ¶ 108]   Plaintiffs allege that Defendants "act[ed] in concert with prosecutors, police officers and others to fabricate, alter or destroy key information that would have proved favorable to the Plaintiff."   [Doc. 72, p. 14]   Citing *Pierce*, Plaintiffs state that they raise a *Brady* claim.   *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004).   [Doc. 52, ¶¶ 108-10, 121, 123; Doc. 72, p. 15]

The Due Process Clause protects a defendant's right to exculpatory evidence.   *Brady v. Maryland*, 373 U.S. 83 (1963).   To establish a *Brady* violation, Plaintiffs must prove:   "'(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense.'"   *Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007) (quoting *United States v. Geames*, 427 F.3d 1333, 1337 (10th Cir. 2005)).   Destruction of evidence may constitute a violation of the duty to preserve exculpatory evidence.   *See Arizona v. Youngblood*, 488 U.S. 51 (1988); *California v. Trombetta*, 467 U.S. 479 (1984).

The Court concludes that Plaintiffs' allegations, taken as true, nevertheless set forth only legal conclusions and conclusory assertions—unsupported by factual allegations—that the dispatch recordings would have been "exculpatory" under the standard of the *Brady/Youngblood/Trombetta* line of cases.   *See United States v. Gomez*, 191 F.3d 1214, 1218-19 (10th Cir. 1999).   Plaintiffs had the burden of "alleging sufficient facts on which a recognized legal claim could be based."   *Hall*, 935 F.2d at 1110.   "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."   *Id*.   Speculation that dispatch recordings would have been favorable to Gutierrez is insufficient.   *See United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010).

Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* The standard of "'constitutional materiality' requires more than '[t]he possibility that the [destroyed evidence] could have exculpated [the defendant].'" *United States v. Cayatineto*, 49 Fed. Appx. 278, 283 (10th Cir. 2002) (unpublished) (quoting *Youngblood*, 488 U.S. at 56 n.*). Plaintiffs set forth only speculative and conclusory assertions that the dispatch recordings are "clearly material as they would provide a reliable version of some of the events," "would most likely support Ms. Gutierrez' claim that her arrest was pretextual," and "would most likely support Ms. Gutierrez' claim that she was arrested for being gay." [Doc. 52, ¶¶ 110-12] *See Twombly*, 550 U.S. at 555 (holding that legal conclusions couched as factual allegations are not accepted as true). Speculation and conclusory assertions are insufficient. *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283.

The Court concludes that Plaintiffs have not carried their burden to allege sufficient facts to support their *Brady* claim that dispatch recordings would have been favorable and material. *See Hall*, 935 F.2d at 1110.

In addition, as Grado argues, a § 1983 claim under *Brady* is not viable because all criminal charges against Gutierrez were dismissed prior to trial in state court. [Doc. 52, ¶ 105] Both duties—to disclose or preserve evidence—are grounded in the due process right to a fair trial. *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999); *Becker*, 494 F.3d at 924. Plaintiffs could not establish materiality unless Gutierrez's state criminal case had gone to trial and deprivation of dispatch recordings were shown to have affected the outcome of her trial. *See Becker*, 494 F.3d at 924. "Regardless of any misconduct by government agents before or during

20

trial, a defendant who is [not convicted] cannot be said to have been deprived of the right to a fair trial." *Morgan*, 166 F.3d at 1310.  When all charges are dismissed prior to trial, "courts have held universally that the right to a fair trial is not implicated and, therefore, no cause of action exists under § 1983" for withholding or destruction of evidence.  *Id*.; *see Becker*, 494 F.3d at 924.

The Court concludes that the FAC fails to state a claim of a constitutional violation under *Brady*.  *See Becker*, 494 F.3d at 924.

### (2) Malicious prosecution

The FAC asserts a claim of malicious prosecution against Grado, Villalba, and Sutherland for destroying or withholding exculpatory evidence under *Brady*.  Plaintiffs claim that, by destroying or withholding dispatch recordings, these Defendants played "an active part in encouraging and/or continuing the prosecution of Plaintiff's criminal charges."  [Doc. 72, p. 13]  Plaintiffs explain that their claim for malicious prosecution is intertwined with their claim for destruction or withholding of dispatch recordings; Plaintiffs state that their *Brady* claim—as in *Pierce*—is "encompassed in" the malicious prosecution claim.  [Doc. 69, p. 15]

The common law tort provides a starting point, or guidepost, to determine the requirements for a malicious prosecution claim under § 1983.  *Becker*, 494 F.3d at 913; *Pierce*, 359 F.3d at 1288-89 (determining that court should refer to general common law rather than common law of jurisdiction in which action originated).  The elements of the common law tort of malicious prosecution applicable in a § 1983 claim are:

> "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."

*McCarty v. Gilchrist*, 646 F.3d 1281, 1284 (10th Cir. 2011) (quoting *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007)).

The "ultimate question" under § 1983 is "whether the plaintiff has proven a *constitutional* violation." *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996). § 1983 creates no substantive rights, but "merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The first step is to identify the specific constitutional right at issue. *Id*. The validity of a claimed  constitutional violation is judged "by reference to the specific constitutional standard which governs that right." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

The Tenth Circuit considered in *Becker* whether a malicious prosecution claim could be based on a due process violation under the Fourteenth Amendment. *Becker*, 494 F.3d at 918-19. *Becker* concluded that such a claim was foreclosed by *Albright*, in which the Supreme Court specifically rejected a malicious prosecution claim based on substantive due process. *Id*. *Albright* held:  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273 (quoting *Graham*, 490 U.S. at 395). The Supreme Court held that the Fourth Amendment is the specific constitutional provision implicated in a malicious prosecution claim, and that such a claim cannot be based on substantive due process. *Id*. at 274-75. Based on *Albright*'s reasoning, the Tenth Circuit held that a malicious prosecution claim cannot be based on procedural due process, either. *Becker*, 494 F.3d at 918-19. "The more

general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment in this context." *Id*.

In a malicious prosecution claim like Plaintiffs', the Tenth Circuit held that the constitutional right at issue is the Fourth Amendment:  "We have repeatedly recognized in this circuit that, at least prior to trial, the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be 'the Fourth Amendment's right to be free from unreasonable seizures.'"  *Becker*, 494 F.3d at 914 (quoting *Taylor*, 82 F.3d at 1561).  In such a claim, there must be a seizure—arrest or imprisonment.  *Id*.; *see Mata v. Anderson*, 635 F.3d 1250, 1254 (10th Cir. 2011).  Since the claimant in *Becker* had never been arrested or incarcerated, she had never been seized and therefore could not proceed on a malicious prosecution claim.  *Becker*, 494 F.3d at 915-16 (rejecting argument to expand Fourth Amendment liability to restrictions on liberty short of arrest or incarceration); *see Cummisky v. Mines*, 248 Fed. Appx. 962, 966 (10th Cir. 2007) (unpublished) (explaining that *Becker* held there could be no malicious prosecution claim when charges were dismissed before trial and plaintiff was not imprisoned).  Absent arrest or incarceration, there simply is no malicious prosecution claim available:

> While the consequences of unfounded criminal charges are surely grave, the Fourth Amendment adequately covers constitutional interests in the pretrial exercise of government control over a person or property.  A groundless charging decision may abuse the criminal process, but it does not, in and of itself, violate the Fourth Amendment absent a significant restriction on liberty.

*Becker*, 494 F.3d at 915.[4]  An accused "'is not entitled to judicial oversight or review of the decision to prosecute.'"  *Albright*, 510 U.S. at 274 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 118-19 (1975)).

---

[4] *Becker* acknowledged that the Supreme Court had not definitively ruled out the possibility of a substantive due process claim, if "the most extreme circumstances" were presented (as discussed below (Section III(C))).  *Becker*, 494 F.3d at 922-23.

The Tenth Circuit recognizes that the first element of a malicious prosecution claim may be satisfied by a showing that, even though the defendant did not initiate proceedings against the plaintiff, a defendant "'who takes an active part in *continuing or procuring the continuation* of criminal proceedings *initiated by himself or by another* is subject to the same liability for malicious prosecution as if he had then initiated the proceedings.'" *Pierce*, 359 F.3d at 1292 (quoting *Restatement (Second) Torts* § 655); *see* § 1983 ("Every person who … subjects, or causes to be subjected" (emphasis added)).

To state a claim for malicious prosecution, Plaintiffs must allege that Grado caused Gutierrez to be arrested or incarcerated.[5] *See Becker*, 494 F.3d at 919.

Gutierrez was arrested on July 4, 2009. The FAC does not allege that Grado had any part in causing the arrest. Plaintiff's response admits this point. [Doc. 69, p. 14 ("Neither [Grado nor Villalba was] involved until after the arrest, so neither had anything to do with the Plaintiff until after that time.")] Instead, Plaintiffs' theory is that at some later time, after criminal charges had been brought, Grado encouraged or continued the prosecution of Gutierrez, by destroying or withholding dispatch recordings. But the FAC does not allege that Gutierrez was incarcerated at that time. Since the FAC does not allege that Grado caused Gutierrez's arrest, and does not allege that Grado caused any incarceration, the FAC fails to state a claim of malicious prosecution. *See Becker*, 494 F.3d at 914-16.

Plaintiffs' response relies on *Pierce*. [Doc. 69, pp. 13-15] But Plaintiffs fail to recognize the critical distinction. The defendant in *Pierce* was arrested and taken into custody under an arrest warrant. *Pierce*, 359 F.3d at 1282. While in custody, the defendant allowed a search of

---

[5] The Court will address the malicious prosecution claim, although the Court notes that the FAC relies on the Fourteenth Amendment rather than the Fourth Amendment. As noted by the Tenth Circuit, technically a Fourth Amendment claim against New Mexico officers is also a claim under the Fourteenth Amendment, which incorporates the Fourth Amendment against the states. *Mondragon*, 519 F.3d at 1082 n.3.

his body on condition that if his hair was not a match he would be released; the forensic chemist, Gilchrist, made an allegedly false report of a match. *Id*. The defendant was tried, convicted, and spent fifteen years in prison. *Id*. at 1282-83. After exoneration following forensic analysis by other experts, the defendant filed a § 1983 claim for malicious prosecution, alleging that he would have been released within five minutes of arrest if Gilchrist had accurately reported the hair analysis results. *Id*. at 1283, 1285 n.2. The Tenth Circuit expressly stated that Gilchrist did not dispute that there was a seizure—arrest and resulting imprisonment. *Id*. *Pierce* therefore does not support Plaintiffs' claim for malicious prosecution without an allegation that Grado's actions caused Gutierrez to be arrested or incarcerated.

In addition to this critical flaw, the allegations in the FAC, taken as true, fail to show the requisite causal connection between Grado's actions and continuation of Gutierrez's prosecution. Plaintiffs must allege that Grado was both the but-for and proximate cause of the plaintiff's injury. *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006). The "'principal player'" in a prosecution is not a police officer, but the prosecutor. *Taylor*, 82 F.3d at 1563 n.8 (quoting *Albright*, 510 U.S. at 279 n.5 (Ginsburg, J., concurring)). The prosecutor's decision to prosecute and a bindover by a court typically constitute superseding causes that break the chain of causation from an officer's prior misconduct. *Id*. at 1564. But an officer or other person may be liable if the plaintiff shows a causal connection, so that that the prosecutor's or court's actions were not truly independent causes. *Pierce*, 359 F.3d at 1292-93. For instance, a person may be liable for malicious prosecution if that person conceals or misrepresents material facts to the prosecutor, whose judgment was influenced by the misstatements. *Id*. Such a demonstration could meet the causation requirement of § 1983. *Id*.

Plaintiffs rely on *Pierce* to support their argument on causation.   This reliance is misplaced.  As Grado argues, Plaintiffs again miss the critical distinction; in *Pierce*, the forensic chemist gave police and prosecutors false and misleading information which allegedly caused continued confinement and prosecution.  *Pierce*, 359 F.3d at 1282-85.  But Plaintiffs do not allege that Grado concealed evidence from, or provided any misleading, false, or distorted evidence to, the prosecutor.  On the contrary, Plaintiffs allege that the prosecutor was involved in the withholding or destruction of dispatch recordings.  [Doc. 52, ¶ 108; Doc. 69, p. 14]  In Plaintiffs' case, the prosecutor—knowing of the missing recordings—nevertheless proceeded with the prosecution.  In contrast to *Pierce*, therefore, the prosecutor's decision to continue Gutierrez's prosecution was an independent and superseding cause; therefore, the FAC fails to allege that Grado played a role in causing continuation of Gutierrez's prosecution.

The Court concludes that the FAC fails to allege the first element of a malicious prosecution claim:  that Grado caused the continued confinement or prosecution of Gutierrez.

The Court concludes that the third element—lack of probable cause—is also fatal to Plaintiffs' malicious prosecution claim.  *See McCarty*, 646 F.3d at 1285-86 (emphasizing that plaintiff must prove lack of probable cause to prosecute).  Probable cause to prosecute requires "a reasonable ground for belief of guilt," meaning that the facts and circumstances are "sufficient to warrant a person of reasonable caution to believe a crime has been committed."  *Id.* at 1286 (internal quotation marks omitted).

The FAC admits facts showing that there was probable cause to arrest and prosecute Gutierrez for the misdemeanor of Resisting, evading or obstructing an officer under NMSA 1978, § 30-22-1(C) (1963).  There is probable cause for an arrest if facts within the knowledge of an officer would lead a reasonable person to believe that an offense has been committed.  *Morris*

26

*v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012).  Even a reasonable but mistaken belief that there is probable cause entitles an officer to qualified immunity.  *Id*. at 1194.  This is an objective standard.  *Id*. (stating that arrest is lawful if there is probable cause for some offense, even if officer subjectively intended to base arrest on another offense).  An officer's "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  *Wren v. United States*, 517 U.S. 806, 813 (1996).

"Resisting, evading or obstructing an officer consists of:  … C. willfully refusing to bring a vehicle to a stop when given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed officer in an appropriately marked police vehicle …."  § 30-22-1(C).  The FAC admits that:  Gutierrez "may not have come to a complete stop at the stop sign"; Deputy Maynes engaged his lights, and Gutierrez then realized he was a police officer; Gutierrez nevertheless continued driving instead of stopping; and when Gutierrez stopped her truck in the parking lot of her mother's apartment, she got out and ran to her mother's apartment.  [Doc. 52, ¶¶ 17, 19-21]  These facts, admitted in the FAC, show that Maynes had probable cause to arrest Gutierrez for Resisting, contrary to Section 30-22-1(C).  Plaintiffs' responses confirm that they admit facts constituting probable cause on this offense.  [Doc. 71, p. 14 ("The third Graham factor, whether the suspect actively resisted arrest or attempted to evade arrest by flight, appears to provide some legal support for Deputy Maynes' argument that his actions were reasonable, at first blush.  <u>There is no doubt that Plaintiff Gutierrez was running away.</u>"  (emphasis added)); Doc. 69, p. 1 ("Gutierrez failed to yield to Defendant Deputy Maynes late at night as he was attempting to stop her for an alleged traffic violation, and instead drove to her mother's house nearby.  A brief vehicle chase ensued.")]

In addition to showing probable cause for the arrest, these admissions show probable cause to prosecute Gutierrez for violation of Section 30-22-1(C). *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (observing that court must credit uncontradicted facts supporting moving party); *Kee v. Ahlm*, 219 Fed. Appx. 727, 732 (10th Cir. 2007) (unpublished) (same).

Since Plaintiffs admit facts showing there was probable cause to prosecute Gutierrez for at least one offense, Plaintiffs cannot prevail on their malicious prosecution claim. Although Gutierrez was charged with two felonies and four misdemeanors, Plaintiffs make no argument that Gutierrez could not have been prosecuted for Resisting, alone. The Tenth Circuit held that a plaintiff could not prevail on a malicious prosecution claim when his § 1983 complaint admitted facts showing probable cause to pursue one of several charges against him, even if there was no probable cause on the other charges. *Van De Weghe v. Chambers*, 2014 WL 2898489, *2 (10th Cir. 2014) (unpublished). In addition, Plaintiffs—just like the plaintiff in *Van De Weghe*—failed to carry the second part of their burden: to identify clearly established law showing that a malicious prosecution claim can proceed when there is probable cause for one, but not all, of the offenses charged. *See id.* The Tenth Circuit concluded that there was no clearly established law on this point—no binding opinion from the Supreme Court, "uncertain signals in this court," and unmistakable division in other courts. *Id.* Since the law was not clearly established in June 2014, when the Tenth Circuit decided *Van De Weghe*, this point is fatal to Plaintiffs' malicious prosecution claim.

The Court concludes that the FAC fails to state a claim for malicious prosecution.

**(3)  False imprisonment**

The FAC generally alleges a claim for false imprisonment.  A claim of unconstitutional imprisonment without legal process is a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment.  *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).  "False arrest and false imprisonment overlap; the former is a species of the latter."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  The Supreme Court refers to the two torts together as false imprisonment.  *Id*. at 389.  The institution of legal process is what distinguishes them; false imprisonment challenges a detention without legal process, while malicious prosecution challenges detention after institution of legal process.  *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013).  Examples of "legal process" include an arrest warrant, bindover, or arraignment.  *Wallace*, 549 U.S. at 390; *Myers*, 738 F.3d at 1195.

A plaintiff may recover under § 1983 for false arrest upon showing that she was arrested in the absence of probable cause to believe that she had committed an offense.  *Morris v. Noe*, 672 F.3d 1185, 1191-93 (10th Cir. 2012).  The FAC does not allege that Grado had any part in Gutierrez's arrest.

To the extent that Plaintiffs attempt to assert a claim of false imprisonment based on allegations that Gutierrez's prosecution was continued because of destruction or withholding of dispatch recordings, this claim concerns a time after Gutierrez was charged with criminal offenses.  Such a claim sounds in malicious prosecution—not false imprisonment.  *Myers*, 738 F.3d at 1194.  And, as discussed above, the FAC does not allege that Gutierrez was detained or imprisoned after the initial arrest on July 4, 2009.  The Court does not accept as true the legal conclusion that Grado falsely imprisoned Gutierrez; there are no factual allegations in support.  *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283; *Robbins*, 519 F.3d at 1247.

The FAC fails to state a claim of false imprisonment against Grado.

**(4)  Conclusion on Grado's motion to dismiss Count IV**

The FAC fails to state a claim against Grado under Count IV, on any of the three bases discussed above.  The Court concludes that Grado's motion to dismiss Count IV should be granted under Rule 12(b)(6).

**B.  Grado's Motion To Dismiss Count V**

The FAC sets forth a claim that Gutierrez was "targeted" because Deputy Maynes and other Defendant deputies believed that Gutierrez was gay, and that the stop and arrest were pretextual.  [Doc. 52, ¶¶ 111-12, 116-17]  The FAC also includes an assertion that "Defendants' actions constitute race and national origin discrimination in violation of the Equal Protection Clause."  [Doc. 52, ¶ 131]

Although the FAC names Grado along with all other Defendants under Count V, the FAC fails to include any factual allegations whatsoever in support of an equal protection claim against Grado.  There is no justification to name Grado as a defendant under Count V.  Conclusory statements unsupported by factual allegations are insufficient to state a claim.  *Iqbal*, 556 U.S. at 678 (stating that "'naked assertions[s]' devoid of 'further factual enhancement'" are not sufficient (quoting *Twombly*, 550 U.S. at 557)); *Hall*, 935 F.2d at 1110.  The Court disregards as "entirely conclusory" and therefore not entitled to the assumption of truth the assertion that Gutierrez "was targeted because of" the belief that she was gay.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

The Court will grant Grado's motion to dismiss Count V under Rule 12(b)(6) for failure to state a claim.

**C.  Grado's Motion To Dismiss Count VI**

The FAC asserts that Grado "withheld evidence regarding the dispatch recordings, and withheld evidence regarding allegations that Ms. Gutierrez was gay, perpetuating the criminal proceedings against Plaintiff Gutierrez, of which Defendants should have known," and that this conduct "shocked the conscience."   [Doc. 52, ¶ 137]   The FAC reasserts as violations of substantive due process the claims made under Count IV.

The Supreme Court sets a high hurdle for substantive due process claims, and has always been reluctant to expand the concept.  *Albright*, 510 U.S. at 271-72.  Substantive due process protection has been "for the most part … accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."  *Id*. at 272.  The Tenth Circuit recognizes a § 1983 claim for violation of substantive due process only "in the narrowest of circumstances" for "'a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'"  *Becker*, 494 F.3d at 922-23 (quoting *Livsey v. Salt Lake Cnty.*, 275 F.3d 952, 957-58 (10th Cir. 2001)).  "This standard is met in only the most extreme circumstances, typically involving some violation of physical liberty or personal physical integrity."  *Id*. at 923.  In *Becker*, the Tenth Circuit acknowledged that allegations of oppressive and repeated prosecution demonstrated "absence of professionalism" and violations of "the most obvious standards of proper conduct," but still did not meet the "rigorous standard" of "affronts to personal autonomy" required to state a substantive due process claim.  *Id*.  Plaintiffs' claims that Grado destroyed evidence do not rise to the level of the claims in *Becker*, therefore certainly do not rise to the level of stating a substantive due process claim.  And, as *Becker* recognized, even if Plaintiffs could state a substantive due process claim, Defendants would be entitled to qualified immunity because of Plaintiffs' inability to show that such a right was clearly established.  *Id*. at 923 n.12.

§ 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright*, 510 U.S. at 271 (quoting *Baker*, 443 U.S. at 144 n.3). The first step under § 1983 is to identify the specific constitutional right at issue. *Id*. *Albright* held: "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273 (quoting *Graham*, 490 U.S. at 395).

As discussed above (Section III(A)(2)), the constitutional right at issue in a malicious prosecution claim is the Fourth Amendment. *Becker*, 494 F.3d at 914. Since the Fourth Amendment "'provides an explicit textual source of constitutional protection,'" Plaintiffs cannot base their claim on "the more generalized notion of substantive due process." *Albright*, 510 U.S. at 273 (quoting *Graham*, 490 U.S. at 395).

For these reasons, the Court will grant Grado's motion to dismiss Count VI under Rule 12(b)(6) for failure to state a claim.

**D.  Grado's Motion To Dismiss Count VII**

The FAC asserts that Defendants Cobos, Maynes, Eby, Garcia, Ojeda, Saenz, Sutherland, Grado, and Villalba were acting under color of state law and in their official capacities as law enforcement officers and conspired "to accomplish one or more unlawful objectives, including concealment of the dispatch recordings from July 4, 2009, and including concealment of the true motive for Ms. Gutierrez' arrest which was based on gender discrimination." [Doc. 52, ¶¶ 140-143] The title of Count VII shows that Plaintiffs make their claim under § 1985. [Doc. 52, p. 20] The Complaint alleges that there "was a meeting of the minds in an unlawful arrangement or agreement, as described above." [Doc. 52, ¶ 144]

The FAC explicitly claims a conspiracy under § 1985, presumably under § 1985(3). [Doc. 52, p. 20]  The elements of a § 1985(3) claim are:  "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).  "'[T]here must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Yaklich v. Grand Cnty.*, 278 Fed. Appx. 797, 801-02 (10th Cir. 2008) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  "'[T]he plaintiff must be a member of a statutorily protected class, and the actions taken by defendant must stem from plaintiff's membership in the [protected] class.'" *Id*. at 802 (quoting *Silkwood v. Kerr-McGee Corp*., 637 F.2d 743, 746 (10th Cir. 1980)).  The Tenth Circuit observed that the Supreme Court has not decided what class-based discrimination—if any—outside racial discrimination suffices for a § 1985(3) claim. *Id.*; *Tilton*, 6 F.3d at 686.  The Tenth Circuit held that § 1985(3) protects few rights against private actors; for instance, the Tenth Circuit held that the right to freedom of religion is not protected under this statute. *Tilton*, 6 F.3d at 686.  The Tenth Circuit declined to decide whether gender bias is one of the protected classes. *Yaklich*, 278 Fed. Appx. at 802.

The FAC does not state that Gutierrez is gay.  The FAC thus appears to assert a claim that § 1985(3) protects the class of those who are thought to be gay.  Whether the FAC claims that the protected class is those who are gay, or those who are thought to be gay, however, Plaintiffs present no authority that either is a class protected under § 1985(3).  Plaintiffs thus fail to carry their "heavy" burden to demonstrate that Grado violated a constitutional right.  *See Archuleta*, 523 F.3d at 1283; *Ariz. Pub. Serv. Co. v. EPA*, 562 F.3d 1116, 1130 (10th Cir. 2009) (stating that issues unsupported by citation to authority need not be addressed).  In addition,

33

Plaintiffs fail to show clearly established law that § 1985(3) protects against gender discrimination; *Yaklich* stated that this was an unresolved question. *Yaklich*, 278 Fed. Appx. at 802; *see Tilton*, 6 F.3d at 688.

Even if Plaintiffs had demonstrated that gender bias were a protected class, the Tenth Circuit held that a conclusory assertion that an action was taken against the plaintiff because of gender is insufficient to state a claim. *Yaklich*, 278 Fed. Appx. at 802. Instead, a complaint must include factual allegations to show that the conspiracy was motivated by the claimant's membership in the protected class. *Id*. *Yaklich* shows that the FAC is insufficient, because the FAC merely makes conclusory assertions that it was because of gender discrimination that Defendants destroyed or withheld dispatch recordings, or concealed the "true motive" for Gutierrez's arrest.

Many differences exist between conspiracy alleged under § 1983 and under § 1985. *Brooks v. Gaenzle*, 614 F.3d 1213, 1227 (10th Cir. 2010). § 1983 applies to defendants acting under color of state law; § 1985 applies to "'private conspiracies driven by some racial or otherwise class-based discriminatory animus.'" *Id*. (quoting *Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir. 1990)). But a claim under either statute "requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Id*. at 1227-28. An allegation of parallel action does not necessarily indicate an agreement to act in concert. *Brooks*, 614 F.3d at 1228. Plaintiffs were required to "allege specific facts showing an agreement and concerted action amongst the defendants because conclusory allegations of conspiracy are insufficient to state a valid" claim. *Brooks*, 614 F.3d at 1228 (internal quotation marks omitted); *see Patillo v. Larned State Hosp.*, 462 Fed. Appx. 780, 783 (10th Cir. 2012) (unpublished). The complaint

must "describe particular misconduct warranting imposition of liability." *Patillo*, 462 Fed. Appx. at 783. Vague claims of an alleged conspiracy are not sufficient. *Brooks*, 614 F.3d at 1228.

The Court concludes that Plaintiffs' vague claims of alleged conspiracy are insufficient. The FAC does not allege specific facts to show that Defendants made an agreement or acted in concert or with a general conspiratorial objective. The Court recognizes that direct evidence of conspiracy is not always available and conspiracy may be inferred from circumstantial evidence indicating coordination and concerted action. *See United States v. Dazey*, 403 F.3d 1147, 1159 (10th Cir. 2005). "But a plaintiff must bring forth 'more than mere conclusory allegations' to establish a claim under § 1985." *Hamby v. Assoc'd Ctrs. for Therapy*, 230 Fed. Appx. 772, 787 (10th Cir. 2007) (unpublished) (quoting *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994)). "[F]ormulaic recitation of the elements of a cause of action,' 'mere conclusory statements,' and 'naked assertions devoid of further factual enhancement' do not state a claim …." *Patillo*, 462 Fed. Appx. at 783 (quoting *Iqbal*, 129 S. Ct. at 1949). In addition, the FAC fails to allege facts to show that, even if there were a conspiracy, it was motivated by gender discrimination. *See Paris v. SW Bell Tel. Co.*, 94 Fed. Appx. 810, 815-16 (10th Cir. 2004) (unpublished). A complaint must do more than suggest the possibility of unconstitutional conduct; it must show plausibility. *Robbins*, 519 F.3d at 1247 (explaining allegations must show that plaintiff "plausibly (not just speculatively) has a claim for relief"). The FAC asserts that there was a conspiracy, and also asserts that Gutierrez was believed to be gay; nothing beyond speculation connects these two assertions, so that the conspiracy was motivated by gender discrimination.

The FAC's conclusory allegations of conspiracy, without supporting factual detail, are "plainly inadequate." *Patillo*, 462 Fed. Appx. at 784.  The Court concludes that the FAC fails to state a claim for conspiracy.

### D.  Conclusion on Grado's Motion To Dismiss

The Court concludes that the FAC fails to state a claim against Grado on Counts IV, V, VI, or VII.  Under Rule 12(b)(6), the Court will grant the motion to dismiss, with prejudice, the individual capacity claims against Grado under Counts IV, V, VI, and VII.

## IV.  Defendant Villalba's Amended Motion To Dismiss for Failure To State a Claim [Doc. 91]

Villalba initially filed a *Motion To Dismiss for Failure To State a Claim* on January 24, 2013.  [Doc. 42]  Plaintiffs filed a response.  [Doc. 72]  Pursuant to the Court's request, after Plaintiffs filed the FAC Villalba revised and refiled her motion as *Amended Motion To Dismiss for Failure To State a Claim.*  [Doc. 91]  Plaintiffs filed no response.

Villalaba moves to dismiss all claims against her for failure to state a claim under Rule 12(b)(6), and argues that she is entitled to qualified immunity.  [Docs. 91-92]  Villalba argues that no allegations identify when or how Villalba violated Plaintiffs' rights under Counts I, II, and III.  [Doc. 92, p. 3]  As the Court reads the FAC, Counts I, II, and III do not attempt to assert claims against Villalba.

Counts IV, V, VI, and VII  assert various claims against Villalba.  Under Rule 12(b)(6), Villalba argues that the only factual allegations are that she was aware of the July 4, 2009 dispatch recordings and that she "pulled" the recordings.  [Doc. 92, pp. 2-3]  The FAC also alleges that Villalba told others at a November 2009 gathering that she was told to pull the tapes, that she did so at the request of her supervisor, and that she later disavowed the latter statement.

[Doc. 52, ¶¶ 98-100]  Villalba argues that the FAC fails to state a claim against her, because it does not specifically identify any actions by Villalba that are alleged to be constitutional violations.  [Doc. 92, pp. 2-3]

As discussed above (Section III(A)), the Court proceeds on the assumption that the recordings were destroyed or withheld for purposes of deciding this motion.  *See Brown*, 662 F.3d at 1162.  The Court agrees with Villalba's assertion that, by itself, the allegation that Villalba "pulled" tapes does not constitute an allegation that she destroyed or withheld tapes, but the FAC also generally alleges that Defendants (listing Villalba along with others) withheld or destroyed exculpatory evidence, under a heading claiming:  malicious prosecution, destruction of evidence, and false imprisonment.  [Doc. 52, ¶ 108-09, 121-23]  The Court must accept as true all well-pleaded facts and view the facts in the light most favorable to Plaintiffs.  *See Brown*, 662 F.3d at 1162.  Reading the FAC as a whole, under the applicable standard, the Court concludes that the FAC sufficiently alleges that Villalba participated in withholding or destroying dispatch recordings.

The FAC alleges that Villalba played a lesser role than Grado, and makes no allegations against Villalba that the Court has not already addressed with respect to Grado above (Section III).  The FAC sets forth only conclusory assertions unsupported by factual allegations.  The Court does not accept as true the legal conclusions in the FAC, without factual allegations in support.  *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283; *Robbins*, 519 F.3d at 1247.  Based on the same analyses discussed above with respect to Grado's motion, the Court concludes that the FAC fails to state a claim against Villalba and that she is entitled to qualified immunity.  To summarize, Count IV fails to state a claim because:   the FAC sets forth only conclusory assertions that the dispatch recordings would have been exculpatory; the *Brady* claim is not

viable because the state criminal proceedings were dismissed pretrial; the malicious prosecution is not viable because the FAC does not allege that Villalba caused Gutierrez's arrest or caused any incarceration after institution of state criminal charges, and because the FAC admits facts constituting probable cause to prosecute Gutierrez; and the FAC fails to allege facts showing false imprisonment.  (*See* Section III(A), above.)  Count V fails to state a claim against Villalba because the FAC fails to include any factual allegations to support an equal protection claim. (*See* Section III(B), above.)  Count VI fails to state a claim based on the generalized notion of substantive due process because the Fourth Amendment is an explicit textual source of constitutional protection.  (*See* Section III(C), above.)  Count VII fails to state a claim against Villalba because the FAC fails to allege specific facts to show a conspiracy and Plaintiffs fail to identify authority showing that gender bias is a protected class under § 1985.  (*See* Section III(D), above.)

The Court notes that Villalba also contends that she is entitled to qualified immunity because the FAC alleges that Villalba acted at her supervisor's request.  [Doc. 92, pp. 4-5]  The Court cannot conclude, however, that acting at a supervisor's request insulates an employee from an allegation of constitutional violation.  The Court believes that pre-existing law gave fair notice that such conduct could still be unconstitutional.  *See Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002) (holding that even in novel factual circumstances it may be apparent to a reasonable official that conduct violates Constitution); *Pierce*, 359 F.3d at 1297-98 (observing that issue is whether contours of constitutional right were sufficiently clear; not required that the very action in question have been held unlawful).  The Court disagrees with this portion of Villalba's argument, but agrees that the FAC fails to state claims against Villalba based on the same analyses discussed in detail with respect to Grado.  (*See* Section III, above.)

The Court will grant the motion to dismiss, with prejudice, all individual capacity claims against Villalba under Rule 12(b)(6).

## V.  Defendants' Motion for Summary Judgment on Counts I, II, IV, V, VI, and VII [Doc. 85] and Grado's Second Motion for Summary Judgment [Doc. 95]

The Court next considers two motions for summary judgment based on collateral estoppel:  (1) *Defendants' Motion for Summary Judgment on Counts I, II, IV, V, VI, and VII of Plaintiffs' Amended Complaint* [Doc. 85 (filed by Cobos, Maynes, Eby, Garcia, Ojeda, Saenz, Villalba, and Sutherland)]; and (2)  *Defendant Mirna Grado's Second Motion for Summary Judgment* [Doc. 95].

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The facts must be viewed in the light most favorable to the nonmovant, and the court must allow all reasonable inferences in favor of the nonmovant.  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Defendants argue that collateral estoppel, or issue preclusion, bars Counts I, II, IV, V, VI, and VII, because these counts require a showing of lack of probable cause and there are two determinations of probable cause from state court proceedings.  Exhibit D is a State of New Mexico Magistrate Judge's determination of probable cause in the bindover order in the state criminal case against Gutierrez, determining that there was probable cause on all offenses except DWI.  Defendants' undisputed fact #4 states that Plaintiffs' current counsel cross-examined Maynes and Eby at the preliminary hearing.  [Doc. 86-4]  Exhibit G is a State of New Mexico District Judge's order denying Gutierrez's motion to suppress, finding that Gutierrez veered into the deputy's lane and then "sped away at speeds up to 65 mph in front of the local high school,"

with other people present on that July 4th holiday, when the deputy tried to stop her; the Judge found that a felony allegedly occurred in the deputy's presence—presumably Aggravated fleeing. [Docs. 86-5, 86-7]  *See* NMSA 1978, § 30-22-1.1 (2003).  Hearings on the suppression motion were held over two days, totaling about eight hours, in which Plaintiffs' current counsel cross-examined Maynes and Eby for a second time and put on testimony by Ojeda and Garcia.  [Docs. 86-6; 106-1; 106, p. 4]  As Defendants argue, both of these orders constitute determinations that there was probable cause to believe that Gutierrez had committed some criminal offense.

Plaintiffs initially filed an untimely and nonconforming response to Defendants' motion [Doc. 85], with a brief twenty-five pages long and exhibits three hundred pages long.  [Doc. 98]  Defendants filed a motion to strike on these and other bases, asking the Court to grant Defendants' summary judgment motion based on the theory that Plaintiffs consented under Local Rule 7.1(b):  "The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ. 7.1(b). [Doc. 99]  But even if the Court were to grant the motion to strike, the Court could not simply grant Defendants' motion on the theory that Plaintiffs consent; even in absence of any response, the Court cannot grant summary judgment without determining whether Defendants have met their initial burden under Rule 56 and are entitled to judgment.  *See Reed v. Bennett*, 312 F.3d 1190, 1193-96 (10th Cir. 2002) (holding court may consider whether Rule 56 standard met without controversion of facts, or may consider grant as sanction after consideration of *Meade* factors).  Defendants filed a reply.  [Doc. 101]

Plaintiffs also filed a nonconforming response to Grado's motion [Doc. 95].  [Doc. 102 (brief of 29 pages; 70 pages of exhibits)]  Grado filed a reply.  [Doc. 106]

The Court observes that, even if the Court were to apply collateral estoppel, the Court would not agree with the arguments in one of Defendants' motions that this conclusion would automatically support dismissal of Counts I, II, IV, V, VI, and VII.  [Doc. 85][6]  The Court has already dismissed Counts I and II against Eby, Garcia, Ojeda, and Saenz, leaving only Maynes as a Defendant under Counts I and II.  Even applying collateral estoppel, the determination that there was probable cause would not resolve all of the issues raised in Counts I and II.  Having probable cause to stop and arrest does not necessarily preclude liability for entry into a private residence to make the arrest, under Count I.  Having probable cause to arrest Gutierrez does not necessarily preclude a claim of an unconstitutional search of Gutierrez's truck, under Count II.  Application of collateral estoppel would support dismissal of Count IV to the extent that it asserts malicious prosecution and false imprisonment, but not the *Brady* claim which does not require lack of probable cause.  Application of collateral estoppel does not automatically lead to dismissal of Count V; even when there is probable cause under the Fourth Amendment, a different analysis is required to address a claim of an equal protection violation.  *See United States v. Flores-Olmos*, 438 Fed. Appx. 713, 716 (10th Cir. 2011).  Nor would the probable cause determination automatically support dismissal of Counts VI and VII.

### A.  Collateral Estoppel

Collateral estoppel, or issue preclusion, can bar relitigation of an issue previously determined.  *Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006).  In a § 1983 action, a federal court is required to give preclusive effect to a state court judgment to the same extent that a court in that state would.  *Hubbert v. City of Moore*, 923 F.2d 769, 772 (10th Cir. 1991); *see Allen v. McCurry*, 449 U.S. 90, 96 (1980).

---

[6] Grado limits her motion [Doc. 95] to claims of malicious prosecution and false imprisonment under Count IV.

Under New Mexico law, the party invoking collateral estoppel has the burden of demonstrating four elements:

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 1993-NMSC-015, ¶ 10, 850 P.2d 996, 1000; *see Ideal v. Burlington Res. Oil & Gas Co.*, 2010-NMSC-022, ¶ 9, 233 P.3d 362, 365-66. The party invoking collateral estoppel has the burden to make a prima facie showing that the doctrine is applicable. *Contreras v. Miller Bonded, Inc.*, 2014-NMCA-011, ¶ 15, 316 P.3d 202, 206-07; *Reeves v. Wimberly*, 1988-NMCA-038, ¶ 15, 755 P.2d 75, 79. Once the movant makes a prima facie showing, the burden shifts to the nonmovant to show that she did not have a full and fair opportunity to litigate. *Contreras*, 2014-NMCA-011, ¶ 15, 316 P.3d at 207; *Larsen v. Farmington Mun. Sch.*, 2010-NMCA-094, ¶ 9, 242 P.3d 493, 496. The court must then "consider the countervailing equities that include, but are not limited to, prior incentive for vigorous defense, inconsistencies, procedural opportunities, and inconvenience of forum." *Reeves*, 1988-NMCA-038, ¶ 15, 755 P.2d at 79. Even when a prima facie showing has been made, the court may determine that it would be fundamentally unfair to apply collateral estoppel because there was not a full and fair opportunity to litigate. *State v. Bishop*, 1992-NMCA-034, ¶ 8, 832 P.2d 793, 795; *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 14, 137 P.3d 577, 583 (emphasizing that the main concern is full and fair opportunity). It is thus within the trial court's discretion whether to apply collateral estoppel. *Shovelin*, 1993-NMSC-015, ¶ 15, 850 P.2d at 1002; *Reeves*, 1988-NMCA-038, ¶ 14, 755 P.2d at 78 ("Collateral estoppel should be applied only where the trial judge determines that its application would not be fundamentally unfair.").

42

The New Mexico Supreme Court stated that, although the wording of the elements differed somewhat between New Mexico and the Tenth Circuit, there was "little difference" on the elements important in the case before the court. *Deflon*, 2006-NMSC-025, ¶ 13, 137 P.3d at 583.

In the Tenth Circuit, application of issue preclusion requires four elements:

"(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4*)* the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action."

*Burrell*, 456 F.3d at 1172 (emphasis omitted) (quoting *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000)).  With regard to the fourth element, considerations include whether there were significant procedural limitations in the prior action and whether the party had the incentive to fully litigate the issue.  *Id*.  The Tenth Circuit concluded in *Burrell* that lack of opportunity to appeal was a consideration weighing against a conclusion that there was a full and fair opportunity to litigate.  *Id*. at 1173 (concluding tribal court's decision not entitled to recognition under comity or collateral estoppel).

The first element under *Shovelin* is that the party to be estopped was a party to the prior proceeding.  Gutierrez was a party.[7]  Flores was not a party.  Defendants argue that Flores's claim is derivative of Gutierrez's claim of illegal arrest, so it does not matter that Flores was not a party.  [Doc. 101, pp. 5-6]  The Court agrees, with respect to Counts IV, V, VI, and VII.  The Court has already dismissed Counts I, II, and III against all Defendants except Maynes [Doc. 120], and will conclude not to dismiss Counts I and II against Maynes.  Under Count III Flores asserts an independent violation, but Defendants do not request summary judgment on Count III.

---

[7] Despite Plaintiffs' argument to the contrary, Defendants did not also have to be parties.  New Mexico long ago adopted "the modern view of mutuality, dispensing with the 'same parties' requirement."  *Reeves*, 1988-NMCA-038, ¶ 11, 745 P.2d at 78.

The second element is met.  The causes of action are different.

The third and fourth elements under *Shovelin* are that the issue was actually litigated and necessarily determined.  The State of New Mexico Magistrate Court Judge determined that there was probable cause to try Gutierrez on all offenses except DWI.  [Doc. 86-4]  In denying the suppression motion, the State of New Mexico District Court Judge necessarily determined that there was probable cause to stop and seize Gutierrez.  [Doc. 86-7, pp. 2-3][8]

"[T]he fact that a plaintiff has been bound over for trial on the criminal matter constitutes prima facie evidence of the existence of probable cause for the detention."  *Weststar Mortg. Corp. v. Jackson*, 2003-NMSC-002, ¶ 18, 61 P.3d 823, 832 (internal quotation marks omitted).  But the Court is next required to "consider the countervailing equities," including whether Gutierrez had a full and fair opportunity to litigate, and whether application of collateral estoppel would be fundamentally unfair.  *Reeves*, 1988-NMCA-038, ¶ 14, 755 P.2d at 78-79.  Under New Mexico law, whether to apply collateral estoppel is in the trial court's discretion.  *Shovelin*, 1993-NMSC-015, ¶ 14, 850 P.2d at 1002.

The Court has two concerns.

First is the question of whether the orders from the State of New Mexico judges are sufficiently final.  Defendants have the burden of showing that collateral estoppel is applicable, but have not directed the Court to authority that such orders are adequate under New Mexico law.

Second, Defendants have not directed the Court to authority that New Mexico would not require an opportunity to appeal as part of a full and fair opportunity to litigate.  The Court notes that New Mexico law recognizes the importance of an opportunity to appeal.  *See, e.g.*, *Shovelin*,

---

[8] The Court notes that Plaintiffs' nonconforming responses [Docs. 98, 103-1] do not dispute the genuineness of Doc. 86-4 and Doc. 86-7.

1993-NMSC-015, ¶¶ 18-19, 850 P.2d at 1003-04 & n.5.  The importance of opportunity to appeal has been recognized and discussed by the Tenth Circuit in discussing caselaw of other states.  *Bell v. Dillard Dep't Stores, Inc.*, 85 F.3d 1451, 1456-57 (10th Cir. 1996).  *Compare Hubbert*, 923 F.2d at 773 (applying collateral estoppel under Oklahoma law to a non-appealable preliminary hearing determination of probable cause), *with Bell*, 85 F.3d at 1457-58 (concluding it was unclear whether Oklahoma would always require availability of appeal as a necessary component of a full and fair opportunity to litigate, and declining to decide the question), *and Gouskos v. Griffith*, 122 Fed. Appx. 965, 971-74 (10th Cir. 2005) (unpublished) (distinguishing *Hubbert* as falling into one of two exceptional situations).  The Court recognizes that the Tenth Circuit did affirm, under New Mexico law, the application of collateral estoppel to the probable cause determination in a preliminary hearing, despite lack of opportunity to appeal when a nolle prosequi was filed after bindover on the criminal charges.  *Angel v. Torrance Cnty. Sheriff's Dep't*, 183 Fed. Appx. 707, 708-09 (10th Cir. 2006).  But the unpublished case of *Angel* did not address the issue of lack of opportunity to appeal.

Defendants bear the burden of establishing that the defense of collateral estoppel is applicable.  *See Contreras*, 2014-NMCA-011, ¶ 15, 316 P.3d at 206-07; *Reeves*, 1988-NMCA-038, ¶ 15, 755 P.2d at 79.  Since Defendants have not directed the Court to authority showing that New Mexico would apply collateral estoppel under the circumstances of this case, the Court concludes that Defendants have not borne their burden.  Alternatively, the Court could conclude that Defendants made a prima facie case, but Plaintiffs then carried their burden of showing lack of full and fair opportunity to litigate because they had no opportunity to appeal the state court probable cause determinations.  Either alternative leads to the same conclusion.  Considering all of the circumstances and "countervailing equities," the Court declines to apply collateral estoppel

in this case.  *See Shovelin*, 1993-NMSC-015, ¶ 15, 850 P.2d at 1002 (holding that decision is within court's discretion).

The Court concludes that the motions for summary judgment on the basis of collateral estoppel should be denied.

### B.  Failure To State a Claim Under Rule 12(b)(6)

A court may dismiss a complaint sua sponte under Rule 12(b)(6) "when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile."  *Hall*, 935 F.2d at 1109-10 (internal quotation marks and citations omitted); *see Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014).  Even a pro se litigant has the burden of alleging sufficient facts to support a claim; although every fact need not be described in specific detail, "conclusory allegations without supporting factual averments are insufficient to state a claim."  *Hall*, 935 F.2d at 1110.  The Tenth Circuit upheld dismissal without leave to amend of a pro se plaintiff's complaint when that complaint made vague assertions without any supporting factual allegations; under these circumstances, leave to amend would be futile and sua sponte dismissal was upheld.  *Kenney v. AG Equip. Co.*, 462 Fed. Appx. 841, 843 (10th Cir. 2012) (unpublished); *see Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (stating that although leave to amend should be given freely, may be denied when amendment would be futile because complaint would still be subject to dismissal).  The Court cannot supply additional factual allegations.  The Court cannot act as Plaintiffs' advocate and "'has no obligation to conjure up unpleaded allegations.'"  *Kenney*, 462 Fed. Appx. at 843 (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357, at 772-77 (3d ed. 2004)).

The Court perceives no justification for Plaintiffs to have omitted factual allegations of any acts by Cobos, Maynes, Eby, Garcia, Ojeda, Saenz, and Sutherland that would support claims against them under Counts IV, V, VI, and VII.  *See Hall*, 935 F.2d at 1110 (stating that even pro se plaintiff is not relieved of obligation to set forth relevant facts); *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (stating that even for pro se plaintiff court will not supply additional facts or construct a legal theory assuming facts that have not been pleaded).   The futility of allowing leave to amend is demonstrated by Plaintiffs' failure in the SAC to make specific factual allegations to support these counts; the SAC still contains only legal conclusions and conclusory assertions on critical points.  [Doc. 126-1]  In addition, denial of a further motion to amend would likely be supported by the same reasons that the Court is denying Plaintiffs' *Motion for Leave To Amend Complaint* [Doc. 126], as discussed above (Section I); when there has already been protracted and undue delay without adequate explanation, Plaintiffs would be unable to justify even further delay.

In addition to these general principles, other considerations lead the Court to conclude that dismissal sua sponte is justified under the particular circumstances of this case.  Most important, Plaintiffs have already had the opportunity to address the same or related issues, in filing responses to the three motions by Grado, Villalba, and Sutherland.  [Docs. 56, 91, 58]  Further delay would also be contrary to the purposes of the qualified immunity doctrine—to resolve claims expeditiously and without placing undue burdens on officials.  Plaintiffs' pattern of rule violations and untimely filings has already caused consumption of considerable court and attorney time in reviewing numerous pleadings.  The Court concludes that judicial economy, together with all of these other considerations, supports sua sponte dismissal here.

The Court in this Memorandum Opinion and Order is granting Grado's and Villalba's motions to dismiss Counts IV, V, VI, and VII against them, along with Sutherland's motion to dismiss Count IV. Much of the same analysis leads the Court to determine that these counts should also be dismissed with respect to the remaining Defendants, as discussed further below.

**(1)  Count IV**

The FAC asserts claims in Count IV against Cobos, Maynes, Eby, Garcia, Ojeda, and Saenz. [Doc. 52, ¶ 91]  With respect to the claims for a *Brady* violation and malicious prosecution, the FAC makes only conclusory assertions, unsupported by factual allegations, that Cobos, Eby, Garcia, Ojeda, and Saenz breached a duty to provide exculpatory evidence, thus perpetuating criminal prosecution against Gutierrez. [Doc. 52, ¶¶ 108, 121-24]  The complaint merely makes a conclusory assertion of a violation and lists a number of persons as being generally responsible. *See Robbins*, 519 F.3d at 1247 (stating that complaint must identify actions by each defendant and "make clear exactly who is alleged to have done what to whom"). The only factual allegation against Maynes is that he made a written request for dispatch recordings; this allegation does not support the *Brady* and malicious prosecution claims. [Doc. 52, ¶ 103]  The Court does not accept as true the conclusory assertions of a *Brady* violation and malicious prosecution. *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283.  Plaintiffs have not carried their burden "to frame a 'complaint with enough factual matter (taken as true) to suggest' that [they are] entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556).  Because the FAC is "sufficiently devoid of facts necessary to establish liability," Plaintiffs "'have not nudged their claims across the line from conceivable to plausible.'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).  The Court concludes that Count

IV of the FAC fails to state a claim against Cobos, Maynes, Eby, Garcia, Ojeda, or Saenz with respect to a *Brady* violation or malicious prosecution.

Count IV also asserts a claim of false imprisonment. This claim appears to be aimed at assertions that Defendants caused the state criminal prosecution against Gutierrez to be continued; to the extent that such a claim is based on withholding or destruction of dispatch recordings, the claim fails because there are no factual allegations to support the conclusory assertions against Cobos, Maynes, Eby, Garcia, Ojeda, and Saenz. *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283. To the extent that the FAC could be read to assert that Eby, Garcia, Ojeda, and Saenz participated in arresting Gutierrez without probable cause, the Court will not so interpret the FAC because this claim would duplicate the claim made under Count II; the Court has already dismissed Count II against these Defendants. [Doc. 120] To the extent that Count IV could be read to include assertions of discrimination based on belief that Gutierrez was gay, the Court will not so interpret the FAC because this claim would duplicate Count V.

There are no factual allegations to support any participation by Cobos in the arrest; conclusory assertions are insufficient. *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283. The FAC does not allege facts regarding Cobos showing his personal involvement, causation, and state of mind, as required to show liability in a supervisory capacity. *See Schneider*, 717 F.3d at 767 (holding that respondeat superior does not support § 1983 liability; claim must show affirmative link).

To the extent that Count IV could be read to assert a claim of false imprisonment against Maynes based on the allegations that he arrested Gutierrez without probable cause, this claim would duplicate the claim of false arrest under Count II. Since there are no other factual

allegations that Maynes caused imprisonment of Gutierrez, the Court concludes that Count IV fails to state any additional claim against Maynes for false imprisonment.

In addition, the Court concludes that facts admitted by Plaintiffs show that there was probable cause to arrest and prosecute Gutierrez for the misdemeanor of Resisting, as discussed more fully above (in Section III(A)(2)).  Plaintiffs admit that Gutierrez failed to stop when Maynes engaged his flashing lights, even though Gutierrez then knew he was a police officer, but drove on and then ran to her mother's apartment once she stopped.  [Doc. 52, ¶¶ 17, 19-21; Doc. 69, p. 1]  Plaintiffs admit:  "There is no doubt that Plaintiff Gutierrez was running away." [Doc. 71, p. 14]  Admission of facts showing probable cause precludes the FAC's claims of malicious prosecution and false imprisonment.  (*See* Section III(A)(2)-(3), above.)

The Court concludes that Count IV fails to state a claim against Cobos, Maynes, Eby, Garcia, Ojeda, or Saenz in their individual capacities.  The Court will dismiss Count IV under Rule 12(b)(6).

### (2)  Count V

The FAC asserts a claim under Count V for an equal protection violation against Cobos, Maynes, Eby, Garcia, Ojeda, Saenz, and Sutherland.  The claim is that Gutierrez was "targeted" because Maynes and other Defendant deputies believed that she was gay, and the stop and arrest were pretextual.  [Doc. 52, ¶¶ 111-12, 116-17]  The Court disregards as "entirely conclusory" and therefore not entitled to the assumption of truth the assertion that Gutierrez "was targeted because of" the belief that she was gay.  *Khalik*, 671 F.3d at 1193.

The FAC fails to include any factual allegations whatsoever in support of an equal protection claim against Cobos and Sutherland.  There is no allegation that they believed that Gutierrez was gay and performed any action motivated by such a belief.  Conclusory assertions

unsupported by factual allegations are insufficient to state a claim. *Iqbal*, 556 U.S. at 678; *Hall*, 935 F.2d at 1110.  Count V fails to state a claim against Cobos and Sutherland.

The FAC alleges that:  Maynes shouted at Gutierrez, "tell me the truth," over and over again [Doc. 52, ¶¶ 25, 82, 115]; "one of the Hispanic defendant deputies at the scene stated to Ms. Flores' companion, Francisco Porras, that 'she (plaintiff Gutierrez) likes women', or 'did you know she likes women?'" [Doc. 52, ¶¶ 41, 114]; Gutierrez was arrested for being gay, and "[a]ll allegations about Ms. Gutierrez being gay came from Deputy Maynes and/or the other defendant deputies who arrived at the scene" [Doc. 52, ¶ 112]; Maynes testified in state court that Gutierrez told him she ran away from him because "she wanted to go home to tell her parents that she was gay" [Doc. 52, ¶ 113].

With respect to Eby, Garcia, Ojeda, and Saenz, the FAC does not allege that they had any participation in the decision to try to stop Gutierrez, or in the decision to arrest Gutierrez.  The Court has already dismissed Counts I, II, and III against these Defendants for lack of factual allegations to show their involvement in any constitutional violations asserted under Counts I, II, and III.  [Doc. 120]

Maynes's attempted traffic stop of Gutierrez was reasonable if it was based on an observed traffic violation or a reasonable articulable suspicion of an offense. *See United States v. Botero-Ospina*, 71 F.3d 7823, 787 (10th Cir. 1995) (en banc).  Reasonable suspicion is "a particularized and objective basis" for suspecting a person of criminal activity. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).  There was probable cause for the arrest if facts within Maynes's knowledge would lead a reasonable person to believe that an offense had been committed; even a reasonable but mistaken belief that there was probable cause would entitle Maynes to qualified immunity. *Morris*, 672 F.3d at 1192, 1194.  This is an objective standard.

*Id.* (stating that arrest is lawful if there is probable cause for some offense, even if officer subjectively intended to base arrest on another offense).  An officer's "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813.

A claim of an equal protection violation, however, requires a different analysis.  *Id.* "Equal protection is essentially a direction that all persons similarly situated should be treated alike."  *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109 (10th Cir. 2008).  In a claim of selective law enforcement, the claimant must show that the officer's actions had a discriminatory effect and were motivated by a discriminatory purpose.  *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1263-64 (10th Cir. 2006).  Plaintiffs must show that similarly situated persons who were not gay (or not believed to be gay) were not stopped or arrested.  *See id.* at 1264.  Plaintiffs must also show that discriminatory intent was a "'motivating factor in the decision' to enforce the criminal law against" Gutierrez.  *Id.* (quoting *Marshall v. Columbia Lea Reg'l Hosp*, 345 F.3d 1157, 1168 (10th Cir. 2003)).  "'The discriminatory purpose need not be the only purpose, but it must be a motivating factor in the decision.'"  *Blackwell v. Strain*, 496 Fed. Appx. 836 (10th Cir. 2012) (unpublished) (quoting *Marshall*, 345 F.3d at 1168).

The FAC fails to allege that Gutierrez was stopped while others who were similarly situated were not.  There are no allegations that Maynes did not stop others believed to be gay, when he had probable cause to believe that they committed traffic violations or committed the offense of Resisting.  *See McClesky v. Kemp*, 481 U.S. 279, 292 (1987) (stating that claimant must show that officer in his case acted with discriminatory purpose); *United States v. Coleman*, 483 Fed. Appx. 419, 420 (10th Cir. 2012) (unpublished) (citing *McClesky* for same principle). Nor does the FAC allege a discriminatory purpose.  The FAC fails to allege that, at the time he attempted to stop Gutierrez, Maynes knew who was driving that truck; Maynes could not have

stopped Gutierrez because she was believed to be gay if he did not even see, at night, who was driving that truck.  *See Flores-Olmos*, 438 Fed. Appx. at 715-16 (rejecting equal protection claim for racial discrimination when officer could not determine nationality of pickup's occupants until he approached after stopping truck).

Similarly, the FAC fails to sufficiently allege either a discriminatory effect or a discriminatory purpose for the arrest.  Before Maynes arrested Gutierrez, he had probable cause to believe that she had committed the offense of Resisting;[9] there are no allegations in the FAC that Maynes did not arrest others in a similar situation.  Nor does the FAC sufficiently allege that the decision to arrest Gutierrez was "motivated by a discriminatory purpose."  *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)); *Coleman*, 483 Fed. Appx. at 421 (clarifying that focus on equal protection claim is not whether seizure is reasonable, but whether it was pretext for discrimination).  The FAC's conclusory assertion that Gutierrez was stopped or arrested "based on gender, because she was believed to be gay" is not sufficient.  [Doc. 52, ¶ 130]  *See Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001), *overruled on other grounds by Pignanelli v. Pueblo Sch. Dist.*, 540 F.3d 1213, 1222 (10th Cir. 2008); *Shifrin v. Toll*, 483 Fed. Appx. 446, 450 (10th Cir. 2012).  In *SECYS*, the Tenth Circuit clarified  the claimant's burden on this point.  *SECSYS, LLC v. Vigil*, 666 F.3d 678 (10th Cir. 2012).  Although no proof of an exploitative or vicious motive is required, the claimant is required to show that the challenged action intentionally discriminates between persons.  *Id*. at 689.  The Tenth Circuit discussed an example from *Engquist* to explain what is required.

---

[9] The facts admitted in Plaintiffs' pleadings show probable cause on this offense, as discussed above (in Section III(A)(2)).

*Engquist* used as an illustration a police officer who gives a speeding ticket to only one motorist on a busy highway where many people are speeding. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008). Not all speeders can be stopped and ticketed. *Id.* at 604. The Tenth Circuit explained that this officer selects speeders at random because he cannot ticket everybody, but the officer "doesn't possess an *intent* to single out any particular person *because of who* he or she is." *SECSYS*, 666 F.3d at 690. The officer acts "with volition," and "knows that the effect of his actions will be differential treatment for different speeding drivers." *Id.* But the equal protection doctrine requires more; it requires "a particular intent, an *intent* to discriminate, in this example an intent to pull over a particular individual *because of* his or her identity." *Id.* In this example, no such intent exists and therefore no equal protection violation occurs. *Id.*

As in *SECYS*, the FAC fails to allege an intent to discriminate. The FAC fails to allege that others, who were not gay (or not believed to be gay), were not stopped or arrested. As far as the FAC's allegations go, Gutierrez is like the one speeder who was pulled over.

At the pleading stage, of course, Plaintiffs are not required to present evidence. But they are required to allege facts to support the claim that Gutierrez was treated differently because she was gay, or was believed to be gay, and also to allege facts to support the claim that a discriminatory purpose was a motivating factor in Maynes's decision to stop and arrest Gutierrez. The FAC fails to do so; the factual allegations fail to support the conclusory assertions of discrimination.

The FAC also includes an assertion that "Defendants' actions constitute race and national origin discrimination in violation of the Equal Protection Clause." [Doc. 52, ¶ 131] There are no factual allegations to make this conclusory assertion sufficient, however; the FAC does not allege that Defendants knew Gutierrez's race or national origin at critical times (e.g., before she

was stopped), or that Defendants treated Gutierrez differently or intended to discriminate on such bases.  This bare and conclusory assertion, unsupported by factual allegations, is insufficient to state a claim.

The Court concludes that Count V should be dismissed for failure to state a claim.

**(3)  Count VI**

The FAC asserts a claim under Count VI for a substantive due process violation against Cobos, Maynes, Eby, Garcia, Ojeda, Saenz, and Sutherland.  The FAC claims that Defendants' conduct "shocked the conscience," when they "blasted into the home of Plaintiffs at night without a warrant, subjecting Plaintiffs to fear, and when Defendant Maynes used excessive force in the wrongful arrest of Plaintiff Gutierrez, and in the wrongful seizure of Plaintiff Flores, of which Defendants Cobos, Eby, Garcia, Ojeda and Saenz should have known."  [Doc. 52, ¶ 136]  These assertions restate violations already asserted under Counts I, II, and III.

There are no factual allegations to support these conclusory assertions against Cobos. *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283; *Robbins*, 519 F.3d at 1247.  The FAC fails to state a claim against Cobos under Count VI.

As discussed above (in Section III(C)), the Supreme Court sets a high hurdle for substantive due process claims, which have been "for the most part … accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright*, 510 U.S. at 271-72.  The Court concludes that Plaintiffs fail to demonstrate that the conduct alleged under Count VI rises to "'a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" *Becker*, 494 F.3d at 922-23 (quoting *Livsey*, 275 F.3d at 957-58).

For the same reasons discussed above (in Section III(C)), the Court concludes that Count VI should be dismissed for failure to state a claim against Sutherland.

The Court concludes that Count VI asserts claims against Maynes, Eby, Garcia, Ojeda, and Saenz under the Fourth Amendment.  *See Graham*, 490 U.S. at 394 (stating that first step under § 1983 is to identify the specific constitutional right allegedly infringed).  Claims of unlawful entry into the home and seizure of persons raise claims under the Fourth Amendment.  Claims of excessive force may implicate several amendments; the claim of excessive force in the context of an arrest "is most properly characterized as one invoking the protections of the Fourth Amendment."  *Id.*; *see Estate of Booker*, 745 F.3d 405, 419 (10th Cir. 2014).  Since the Fourth Amendment "'provides an explicit textual source of constitutional protection,'" Plaintiffs cannot base their claim on "the more generalized notion of substantive due process."  *Albright*, 510 U.S. at 273 (quoting *Graham*, 490 U.S. at 395).

The Court has already concluded that the FAC fails to set forth factual allegations to support assertions that Eby, Garcia, Ojeda, and Saenz violated Plaintiffs' Fourth Amendment rights under Counts I, II, and III.  [Doc. 120]  The FAC fails to allege facts showing they participated in the conduct alleged as constitutional violations.  The FAC fails to allege any conduct that could meet the "high hurdle" for substantive due process claims against Cobos, Eby, Garcia, Ojeda, and Saenz.

With regard to the conduct by Maynes, the FAC alleges that he "blasted into the home of Plaintiffs at night without a warrant," wrongfully arrested Gutierrez, and wrongfully seized Flores.  These claims duplicate Counts I, II, and III.  The Court concludes that the Fourth Amendment protects against these claimed violations, including the allegedly repeated tasing.  Plaintiffs have not cleared the "high hurdle" to state a substantive due process claim.

For all of these reasons, the Court concludes that Count VI should be dismissed against all Defendants.

**(4)  Count VII**

The FAC asserts a claim under Count VII for conspiracy under § 1985.  The Court concludes in Section III(D) above that Count VII fails to state a claim against Grado.  The FAC apparently alleges a conspiracy to conceal dispatch recordings, thus concealing the "true motive" for Gutierrez's arrest, and a conspiracy to stop and arrest Gutierrez based on belief that she was gay.  [Doc. 52, ¶ 143]  Despite the fact that different conspiracies are involved, the Court concludes that the same analysis applicable to Grado leads to the conclusion that the FAC fails to state a claim of conspiracy against Cobos, Maynes, Eby, Garcia, Ojeda, Saenz, and Sutherland.

Most important, Plaintiffs present no authority to support their claim that those who are gay (or thought to be gay) constitute a class protected under § 1985(3).  *See Yaklich*, 278 Fed. Appx. at 801-02 (concluding that there must be racial or perhaps other class-based discrimination and declining to decide whether gender bias is protected).  Plaintiffs fail to carry their "heavy burden" to demonstrate violation of a constitutional right.  *See Archuleta*, 523 F.3d at 1283.  In addition, Plaintiffs fail to show clearly established law that § 1985(3) protects against gender discrimination.  *See Yaklich*, 278 Fed. Appx. at 802; *Tilton*, 6 F.3d at 688.

Even if Plaintiffs had demonstrated that § 1985(3) were applicable, the FAC contains nothing more than conclusory assertions that any action was taken against Gutierrez because of gender.  Without factual allegations to show that the conspiracy was motivated by Gutierrez's membership in a protected class, the FAC is insufficient to state a claim.  *See Yaklich*, 278 Fed. Appx. at 802.

In addition, the FAC was required to "allege specific facts showing an agreement and concerted action amongst the defendants because conclusory allegations of conspiracy are

insufficient to state a valid" conspiracy claim.  *Brooks*, 614 F.3d at 1228 (internal quotation marks omitted).  The FAC's vague assertions of agreement are insufficient.  *See id.*

There are no factual allegations to support a claim that Cobos, Maynes, Eby, Garcia, Ojeda, Saenz, and Sutherland participated in a conspiracy to conceal dispatch recordings.  *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283; *Robbins*, 519 F.3d at 1247.  There are no factual allegations that Cobos, Eby, Garcia, Ojeda, Saenz, and Sutherland participated in the decision to arrest Gutierrez, much less that they did so with the motivation of gender discrimination.  For this reason, the Court has already dismissed Count II against Eby, Garcia, Ojeda, and Saenz.[10]  [Doc. 120]

Even though conspiracy may be inferred from circumstantial evidence indicating coordination and concerted action, Plaintiffs were required to "bring forth more than mere conclusory allegations."  *See Dazey*, 403 F.3d at 1159; *Hamby*, 230 Fed. Appx. at 787.  The Court concludes that the FAC's vague and conclusory assertions are insufficient to state a claim of conspiracy.

For all of these reasons, the Court concludes that Count VII fails to state a claim against Cobos, Maynes, Eby, Garcia, Ojeda, Saenz, and Sutherland.

### C.  Conclusion

The Court concludes that *Defendants' Motion for Summary Judgment on Counts I, II, IV, V, VI, and VII of Plaintiffs' Amended Complaint* [Doc. 85], and *Defendant Mirna Grado's Second Motion for Summary Judgment* [Doc. 95], should be denied.

The Court will dismiss sua sponte, with prejudice, for failure to state a claim Counts IV, V, VI, and VII with respect to the following Defendants in their individual capacities:  Cobos, Maynes, Eby, Garcia, Ojeda, and Saenz.

---

[10] Count II does not assert a claim against Cobos or Sutherland.

In the current Memorandum Opinion and Order, the Court is granting Sutherland's motion to dismiss Count IV.  The Court dismisses sua sponte, with prejudice, for failure to state a claim Counts V, VI, and VII with respect to Sutherland.

## VI.  Motions To Strike, To Amend Response, To Exceed Page Limits

The Court next considers:  *Defendants' Motion To Strike* [Doc. 99]; *Plaintiffs' Motion To Amend Response to Defendants' Motion for Summary Judgment on Counts I, II, IV, V, VI and VII* [Doc. 103]; *Defendants' Motion To Strike Plaintiffs' Motion To Amend Response (Doc. 103)* [Doc. 105]; *Plaintiffs' Motion To Exceed Page Limit for Exhibits and for Plaintiffs' Response to Defendants' Motions for Summary Judgment* [Doc. 104]; and *Defendants' Motion To Strike Plaintiffs' Motion To Exceed Page Limit (Doc. 104)* [Doc. 107].

Defendants filed a number of motions to strike Plaintiffs' pleadings.  Defendants have also correctly noted in various pleadings that Plaintiffs continually violated rules regarding time limits and page limits.

One day later than allowed under the Court's extension of time, Plaintiffs filed their response to Defendants' motion for summary judgment [Doc. 85].  [Doc. 98; Doc. 90]  The response brief is 25 pages long, with 300 pages of exhibits attached.  Response briefs are limited to 24 pages, and exhibits to 50 pages.  D.N.M.LR-Civ. 7.5; D.N.M.LR-Civ. 10.5.  A party may file only those pages of an exhibit which are to be brought to the Court's attention.  D.N.M.LR-Civ. 10.5.

Plaintiffs had obtained an extension of time to respond, and then filed a motion for discovery instead—which was denied as procedurally deficient; the Court, however, allowed

Plaintiffs an extension of ten days to respond.   [Docs. 89, 90]   Plaintiffs then filed their nonconforming response one day after the extended deadline.  [Doc. 98]

Defendants then filed *Defendants' Motion To Strike*.  [Doc. 99]  In addition to exceeding the page limits for briefs and exhibits, Defendants assert that Plaintiffs attached as an exhibit inadmissible material—an unofficial transcript from state court proceedings.   Defendants nevertheless filed a reply.  [Doc. 101 (filed 9/18/13)]

One week later, Plaintiffs filed a motion to amend their response, with an attached proposed response.  [Doc. 103 (filed 9/22/13); Doc. 103-1]   Defendants filed a motion to strike the motion to amend, arguing that:  the motion was untimely despite several extensions (and filed after notice of completion of briefing); the proposed amended response again violated the page limits with a 29-page brief (4 pages longer than the original brief) and 70 pages of exhibits; and the exhibits again included inadmissible unofficial transcripts.   [Doc. 105 (filed 9/25/13)] Plaintiffs had not sought prior approval from Defendants or the Court to exceed the page limits. Defendants also filed a response to Plaintiffs' motion to amend.  [Doc. 111 (filed 10/8/13)]

Plaintiffs had also filed a nonconforming response to Grado's motion for summary judgment, again exceeding page limits with a 29-page response brief and 70 pages of exhibits. [Doc. 102 (filed 9/21/13)]  After filing that response, Plaintiffs filed a motion (opposed by all counsel) to exceed the page limits on responses to both motions for summary judgment.  [Doc. 104 (filed 9/24/13); Doc. 85; Doc. 95]  Defendants filed a response.  [Doc. 112 (filed by all Defendants except Grado)]  Defendants (except Grado) also filed a motion to strike Plaintiffs' motion to exceed the page limit.  [Doc. 107 (filed 10/2/13) (moving to strike Doc. 104)]

Plaintiffs' counsel has engaged in a pattern of filing untimely and nonconforming pleadings, routinely filing late despite having been allowed extensions of time.   The Court

previously denied a motion to strike [Doc. 73], while cautioning Plaintiffs to follow the rules on timing and page limits in future.  [Doc. 120, pp. 3-4]  Even after that caution, Plaintiffs continue to file untimely, nonconforming responses.  [Docs. 135, 136]  In addition, Plaintiffs have filed several motions to exceed page limits after the untimely and nonconforming response has already been filed; such motions are viewed with disfavor.

Plaintiffs' counsel has cited the press of running a solo practice and inexperience in prosecuting civil rights claims in federal court.  [Doc. 103, pp. 2-3]  Plaintiffs' counsel also cited "inadvertence" for omitting relevant facts and failure to follow rules.  [Doc. 126, p. 2; Doc. 104, p. 2]  None of these attempted justifications excuses counsel from the duty to familiarize herself with, and comply with, court rules, including time restrictions.  Review of the nonconforming responses shows that judicious editing and restriction to relevant issues would have allowed counsel to remain within length restrictions.  The Court will review the portions of pleadings that conform to the length limitations set by D.N.M.LR-Civ 7.5 (i.e., the first 24 pages of Plaintiffs' responses and the first 50 pages of exhibits, provided that portions of the exhibits are specifically brought to the Court's attention, as required by D.N.M.LR-Civ 10.5).  The Court, however, exercises its duty to review Defendants' motions on the merits, and does not conclude that Plaintiffs have conceded any points.

The Court will deny *Defendants' Motion To Strike* [Doc. 99]; *Defendants' Motion To Strike Plaintiffs' Motion To Amend Response* [Doc. 105], and *Defendants' Motion To Strike Plaintiffs' Motion To Exceed Page Limit* [Doc. 107].  The Court notes that these motions are addressed to the motions for summary judgment based on collateral estoppel—which the Court is denying, primarily based on the Court's review of the law.  (Section V, above)  The Court will also deny as untimely and unjustified:  *Plaintiffs' Motion To Amend Response to Defendants'*

*Motion for Summary Judgment on Counts I, II, IV, V, VI and VII* [Doc. 103]; and *Plaintiffs' Motion To Exceed Page Limit for Exhibits and for Plaintiffs' Response to Defendants' Motions for Summary Judgment* [Doc. 104].

## VII.  Plaintiffs' Motions for Discovery [Docs. 80, 113]

The Court next considers two motions for discovery:  *Plaintiffs' Motion and Memorandum in Support of Counsel's Affidavit To Allow Discovery Pursuant to Rule 56(d)* [Doc. 80 (filed 6/04/13)]; and *Plaintiffs' Third Motion and Memorandum in Support of Counsel's Affidavit To Allow Discovery Pursuant to Rule 56(d)* [Doc. 113 (filed 10/17/13)].  Responses were filed by Defendant Grado [Doc. 82], and by Defendants Cobos, Maynes, Eby, Garcia, Ojeda, Saenz, Villalba, Sutherland, and Grado [Doc. 114].

Pursuant to the parties' agreement at the Rule 16 conference on February 5, 2013, the Court ordered that discovery would be stayed pending the Court's ruling on motions to dismiss based on qualified immunity.  [Doc. 51]  The Court previously denied *Plaintiffs' Second Motion To Allow Discovery Pursuant to Rule 56(d)* as procedurally deficient.  [Docs. 89, 90]

Plaintiffs' first motion for discovery [Doc. 80] requests wide-ranging discovery on Grado's motion for dismissal or, alternatively, for summary judgment [Doc. 56].  This first motion also requests discovery to enable Plaintiffs to respond to motions to dismiss based on qualified immunity, filed by Defendants Cobos, Eby, Garcia, Ojeda, Saenz, Villalba, and Sutherland.  [Doc. 80, p. 1]

Rule 56(d) provides that the court "may" allow discovery when a party shows "that, for specified reasons, it cannot present facts essential to justify its opposition" to a summary judgment motion.  But, as Grado observes, Plaintiffs' first motion for discovery was filed after

briefing was complete on Grado's motion.   On April 5, 2013, Grado filed her motion for dismissal or for summary judgment, based on qualified immunity.  [Doc. 56]  On May 13, 2013, Plaintiffs filed their response.  [Doc. 69]  On May 28, 2013, Grado filed her reply and her notice of completion of briefing.  [Docs. 74, 75]  Then Plaintiffs filed the motion for discovery—on June 4, 2013.  [Doc. 80]  Having already filed their response, Plaintiffs cannot logically make the required showing that they need discovery in order to respond.  Similarly, briefing on motions to dismiss by the other Defendants was completed before Plaintiffs filed their first motion for discovery, and Plaintiffs had already filed their responses.

Plaintiffs rely on Rule 56(d), which is limited to discovery requests related to summary judgment motions.  Plaintiffs cite caselaw setting forth some general principles or addressing discovery in relation to summary judgment, but have directed the Court to no authority supporting their reliance on Rule 56(d) for discovery related to a motion to dismiss.

As Grado argues, her motion was primarily a motion to dismiss, with an alternative summary judgment motion directed at the malicious prosecution claim.  And the Court has concluded (in Section III(A), above) that Grado's motion should be granted under Rule 12(b)(6). Discovery on the limited summary judgment portion of Grado's motion would therefore be futile. Under the applicable standard, the Court has already taken the FAC's well-pleaded factual allegations as true.

In addition, Plaintiffs' request for discovery on motions to dismiss is contrary to basic principles governing claims of qualified immunity.  Qualified immunity is a legal question. *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) (observing that qualified immunity cannot be avoided by "framing it as factual").  The doctrine of qualified immunity provides immunity from suit, not just a defense to liability; "it is effectively lost if a case is erroneously

permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see Iqbal*, 556 U.S. at 672 (stating that qualified immunity is a limited entitlement to avoid burdens of litigation, in addition to burden of undergoing trial).  Qualified immunity "allows a public official to avoid the burdens of discovery and litigation, as well as liability." *Gallegos v. City of Denver*, 984 F.2d 358, 361 (10th Cir. 1993); *see Robbins*, 519 F.3d at 1248-49 (stating that purpose is to protect public officials from broad-ranging discovery, which can be peculiarly disruptive of effective government).  There is a "special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation." *Robbins*, 519 F.3d at 1249 (internal quotation marks omitted).  Defendants "should be spared the burden of going forward, unless and until the plaintiff is able to meet the burden of establishing that the defendant's alleged actions violated clearly established law." *Gallegos*, 984 F.2d at 362.  When a complaint is insufficient to state a claim, the plaintiff is not entitled to discovery.  *Iqbal*, 556 U.S. at 685-86 (reversing decision allowing even "minimally intrusive discovery," because complaint was deficient under Rule 8).

The Court concludes that allowing the requested discovery would undermine the purpose of qualified immunity.  *See id.*  In addition, Plaintiffs' motion does not limit the request to specified facts focused on the particular motions at issue, but instead ranges over a multitude of factual issues.  The Court will deny Plaintiffs' first motion for discovery.  [Doc. 80]

Plaintiffs' third motion for discovery requests wide-ranging discovery addressed to Defendants' motions for summary judgment based on collateral estoppel.  Much of the discussion, and much of the requested discovery, is addressed to other issues, rather than being limited to the motions based on collateral estoppel.  Plaintiffs fail to specifically identify probable facts and to state with specificity how additional material would rebut the summary

judgment motions. *See Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006); *Comm. for First Amendment v. Campbell*, 962 F.2d 1516, 1523 (10th Cir. 1992) (observing that discovery request is not fishing expedition). In addition, Plaintiffs' motion for discovery was again filed after Plaintiffs' responses; Plaintiffs therefore cannot logically show that they need discovery to respond.[11] But even if Plaintiffs' discovery motion met the requirements of Rule 56(d), the Court has concluded (in Section V, above) that Defendants' motions to dismiss based on collateral estoppel should be denied. No discovery is therefore warranted on these motions.

## CONCLUSION

The Court previously granted motions to dismiss individual capacity claims under Counts I, II, and III against Eby, Garcia, Ojeda, and Saenz; the Court also granted Cobos's motion to dismiss the individual capacity claim under Count III. [Doc. 120 (filed 3/26/14)] In the current Memorandum Opinion and Order, the Court is granting: Sutherland's motion to dismiss Count IV; Grado's motion to dismiss Counts IV, V, VI, and VII; and Villalba's motion to dismiss Counts IV, V, VI, and VII. The Court is dismissing sua sponte for failure to state a claim Counts IV, V, VI, and VII, with respect to the following Defendants in their individual capacities: Cobos, Maynes, Eby, Garcia, Ojeda, and Saenz. The Court is dismissing sua sponte for failure to state a claim Counts V, VI, and VII with respect to Sutherland in his individual capacity.

---

[11] Defendants Cobos, Maynes, Eby, Garcia, Ojeda, Saenz, Villalba, and Sutherland filed their motion for summary judgment on July 22, 2013. [Doc. 85] Plaintiffs' second motion for discovery was denied, but Plaintiffs were given an extension of time to file their response. [Docs. 87, 89, 90] Plaintiffs then filed their response one day late, on September 6, 2013. [Doc. 98] Defendants filed their reply on September 18, 2013, and notice of completion of briefing on October 2, 2013. [Docs. 101, 108]

      Defendant Grado filed her motion for summary judgment based on collateral estoppel on September 6, 2013. [Doc. 95] Plaintiffs filed their response on September 21, 2013. [Doc. 102] Grado filed her reply and notice of completion of briefing on October 2, 2013. [Docs. 106, 110]

**IT IS THEREFORE ORDERED** that:

(1)  Plaintiffs' *Motion for Leave To Amend Complaint* [Doc. 126] is **DENIED**;

(2)  Defendant Sutherland's *Motion To Dismiss Count IV* [Doc. 58] is **GRANTED**;

(3)  *Defendant Mirna Grado's Motion To Dismiss or for Summary Judgment* [Doc. 56] is **GRANTED**;

(4)  Defendant Villalba's *Amended Motion To Dismiss for Failure To State a Claim* [Doc. 91] is **GRANTED**;

(5)      (a)  *Defendants' Motion for Summary Judgment on Counts I, II, IV, V, VI, and VII of Plaintiffs' Amended Complaint* [Doc. 85], and *Defendant Mirna Grado's Second Motion for Summary Judgment* [Doc. 95] are **DENIED**;

         (b)  The Court sua sponte dismisses for failure to state a claim Counts IV, V, VI, and VII against Defendants Cobos, Maynes, Eby, Garcia, Ojeda, and Saenz;

         (c)  The Court sua sponte dismisses for failure to state a claim Counts V, VI, and VII against Defendant Sutherland;

(6)      (a)  *Defendants' Motion To Strike* [Doc. 99]; *Defendants' Motion To Strike Plaintiffs' Motion To Amend Response (Doc. 103)* [Doc. 105]; and *Defendants' Motion To Strike Plaintiffs' Motion To Exceed Page Limit (Doc. 104)* [Doc. 107], are **DENIED**;

         (b)  *Plaintiffs' Motion To Amend Response to Defendants' Motion for Summary Judgment on Counts I, II, IV, V, VI and VII* [Doc. 103], and *Plaintiff's Motion To Exceed Page Limit for Exhibits and for Plaintiffs' Response to Defendants' Motions for Summary Judgment* [Doc. 104]; are **DENIED**;

(7)  Plaintiffs' Motion and Memorandum in Support of Counsel's Affidavit To Allow Discovery

66

Pursuant to Rule 56(d) [Doc. 80]; and Plaintiffs' Third Motion and Memorandum in Support of

Counsel's Affidavit To Allow Discovery Pursuant to Rule 56(d) [Doc. 113] are **DENIED**.

_____

**UNITED STATES DISTRICT JUDGE**