IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANNA GUTIERREZ and PATSY FLORES,

      Plaintiffs,

  vs.                                        Civ. No. 12-980 JH/GBW

LUNA COUNTY SHERIFF RAYMOND COBOS,
in his individual and official capacity; LUNA COUNTY
SHERIFF DEPUTY GABRIEL MAYNES, DEPUTY
MIKE EBY, DEPUTY TRINI GARCIA, DEPUTY
JOSE OJEDA, DEPUTY ISRAEL SAENZ, Jr., in
their individual and official capacities; LUNA
COUNTY CENTRAL DISPATCH DIRECTOR
MIRNA GRADO and DISPATCH EMPLOYEE
LUHANA VILLALBA, in their individual and
official capacities; LUNA COUNTY MANAGER
JOHN SUTHERLAND, in his individual and official capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the *Motion To Dismiss Official Capacity Claims* filed by Defendants Eby, Garcia, Ojeda, Saenz, and Cobos. [Doc. 121] Plaintiffs filed a response [Doc. 123], and Defendants filed a reply [Doc. 124]. Having considered the motion, briefs, and relevant law, the Court concludes that the Motion should be granted.

## BACKGROUND

The incident giving rise to this case occurred on July 4, 2009. Plaintiff Gutierrez was charged in state court with two felonies and four misdemeanors: Aggravated fleeing, Battery on a peace officer, Failure to maintain traffic lane, Careless driving, Concealing identity, and DWI.

[Doc. 52, ¶ 48]  The DWI charge was dismissed at a preliminary hearing by a State of New Mexico Magistrate Court Judge for lack of probable cause.  [Doc. 52, ¶ 107]  On March 31, 2011, the state filed a nolle prosequi dismissing the remaining charges.  [Doc. 52, ¶ 105]

Almost three years after the incident, Plaintiffs filed a complaint in the Sixth Judicial District Court for the State of New Mexico.  [Doc. 1-1]  The case was removed to this Court on September 19, 2012.  [Doc. 1]  The Court gave Plaintiffs leave to file an amended complaint five and one-half months after removal to federal court.  [Doc. 51]  *See* Fed. R. Civ. P. 15(a).  Plaintiffs filed the First Amended Complaint [hereinafter "FAC"] on March 6, 2013.  [Doc. 52]

On April 5, 2013, Defendants Eby, Garcia, Ojeda, and Saenz filed motions to dismiss Counts I, II, and III on the basis of qualified immunity.  [Docs. 60, 62]  Also on April 5, 2013, Defendant Cobos filed a motion to dismiss Count III on the basis of qualified immunity.  [Doc. 64]  Noting that these motions were limited to the counts specified, and limited to requests for dismissal of individual capacity claims, the Court dismissed Counts I, II, and III against Eby, Garcia, Ojeda, and Saenz on March 26, 2014.  [Doc. 120]  On the same basis, the Court dismissed Count III against Cobos.  [Doc. 120]

On April 22, 2014, Defendants filed this motion to dismiss the official capacity claims against them.  On May 16, 2014, Plaintiffs filed a response.  [Doc. 123]  The response fails to address arguments made in Defendants' motion.  Instead, in arguing that they sufficiently assert official capacity claims, Plaintiffs relied on new allegations and new theories of liability, to be set forth in an amended complaint that had not yet been filed; the response stated that a motion to amend was "being filed forthwith" and sought to incorporate the amended complaint.  Plaintiffs asked the Court to rule on the motion to amend the complaint before ruling on the *Motion To Dismiss Official Capacity Claims*.

2

Before Plaintiffs filed their motion to amend, Defendants filed their reply. [Doc. 124 (filed 5/21/14)]

Continuing their pattern of delay and dilatoriness, Plaintiffs did not file the motion to amend the complaint "forthwith." Instead, Plaintiffs delayed for another two weeks before finally filing the *Motion To Amend Complaint*, attaching the Second Amended Complaint [hereinafter "SAC"]. [Doc. 126 (filed 6/1/14)] On September 23, 2014, the Court issued a Memorandum Opinion and Order, in which the Court denied Plaintiffs' motion to amend the complaint. [Doc. 141, pp. 6-14] The Court noted that there was protracted and undue delay, without adequate explanation. The Court also observed that Plaintiffs attempted to add and alter factual allegations, add new theories of liability, and resurrect charges that had been dismissed— making their complaint into a "moving target" for both Defendants and the Court. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).

Plaintiffs' untimely motion to amend the complaint for a second time appears to be an attempt to avoid Defendants' *Motion To Dismiss Official Capacity Claims*, as well as to avoid the Court's March 2014 rulings. Such attempts "to salvage a lost case," especially after adverse rulings, are disfavored. *Viernow v. Euripedes Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998); *United States v. Burbage*, 280 Fed. Appx. 777, 783 (10th Cir. 2008) (unpublished).[1] As requested by Plaintiffs, the Court waited to rule on the *Motion To Dismiss Official Capacity Claims* until after ruling on Plaintiffs' motion to amend the complaint for a second time. Since the Court has denied Plaintiffs' motion to file the SAC, the Court now considers whether to grant Defendants' *Motion To Dismiss Official Capacity Claims* based on the allegations in the FAC.

---

[1] The Court cites this and other unpublished opinions for their persuasive value. *See* 10th Cir. R. 32.1(A).

## **LEGAL STANDARDS**

On a motion to dismiss, the court assesses the legal sufficiency of the allegations contained within the four corners of the complaint. *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all well-pleaded facts, viewing them in the light most favorable to the plaintiff and allowing all reasonable inferences in favor of the plaintiff. *Archuleta*, 523 F.3d at 1283; *Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000) (motion under Rule 12(c) "is treated as a motion to dismiss under Rule 12(b)(6)" and same standard applies). This deference is inapplicable to legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see Iqbal*, 556 U.S. at 678. The court does not accept as true a legal conclusion couched as a factual allegation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint "does not need detailed factual allegations," but the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. The complaint must go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory statements unsupported by factual allegations are not sufficient. *Id*.; *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555 (holding that mere "labels and conclusions" and "formulaic recitation

of the elements of a cause of action" are insufficient); *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Looking within the four corners of the complaint, the Court determines whether there are "sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Archuleta*, 523 F.3d at 1281, 1283 (quoting *Twombly*, 550 U.S. at 556). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins*, 519 F.3d at 1247. The Tenth Circuit observed that "plausible" cannot mean "likely to be true," but "must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

There is no *respondeat superior* liability under § 1983. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A local government body may be held liable "only for its own unconstitutional or illegal policies and not for the tortious acts of its employees." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). To establish a claim under § 1983 against a local government body for the acts of employees, a plaintiff must prove: (1) that an employee committed a constitutional violation, and (2) that a policy or custom of the government body was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The "policy or custom" requirement may be shown by:

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to

>adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted); *see Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

To establish that a challenged policy or custom was the "moving force" (the "causation element"), the plaintiff must show that it was "closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770 (internal quotation marks omitted). It is not sufficient for a plaintiff to allege that she was harmed and that the harm could have been prevented if the governmental entity did something different in the way of training or supervision. *Connick v. Thompson*, ___ U.S. ___, 131 S. Ct. 1350, 1363, 179 L. Ed. 2d 417 (2011). "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *City of Canton*, 489 U.S. at 392. It is not sufficient to assert that there were "<u>general</u> deficiencies" in training or supervision; instead, the plaintiff is required to "'identify a <u>specific</u> deficiency' that was obvious and 'closely related' to" the injury. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (emphasis added) (quoting *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999)); *see Schneider*, 717 F.3d at 769. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program . . . ." *City of Canton*, 489 U.S. at 390-91.

In addition, the plaintiff must show that an alleged failure to train or supervise amounted to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Thompson*, 131 S. Ct. at 1359 (quoting *City of Canton*, 489 U.S. at 388)).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Ordinarily, a pattern of similar constitutional violations is required to demonstrate deliberate indifference. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *Thompson*, 131 S. Ct. at 1360 & n.7 (also observing that a "pattern" cannot be established by a number of contemporaneous actions).

"[P]roving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents 'difficult problems of proof,' and [the court] must adhere to a 'stringent standard of fault,' lest municipal liability under § 1983 collapse into *respondeat superior*." *Thompson*, 131 S. Ct. at 1365 (quoting *Brown*, 520 U.S. at 406, 410); *see Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 759 (10th Cir. 2014) (emphasizing that "'rigorous standards of culpability and causation'" apply to ensure municipality is held liable only for its own illegal acts (quoting *Brown*, 520 U.S. at 405)); *Schneider*, 717 F.3d at 770 (stating that "causation element is applied with especial rigor" when claim is based on failure to train or supervise (internal quotation marks omitted)).

## DISCUSSION

Defendants Eby, Garcia, Ojeda, Saenz, and Cobos move to dismiss the official capacity claims against them on two bases. First, Defendants argue that the FAC fails to state viable official capacity claims against them. Second, Defendants argue that the official capacity claims were dismissed by the stipulated dismissal of Defendant Board of County Commissioners of Luna County. [Doc. 41]

**I. Dismissal for Failure To State A Claim**

Defendants observe that official capacity claims require a plaintiff to prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998). [Doc. 121, pp. 1-2] Defendants argue that the FAC fails to state official capacity claims against them.

**A. Commission of a constitutional violation by governmental employee**

As Defendants observe, the Court previously dismissed individual capacity claims against Eby, Garcia, Ojeda, Saenz, and Cobos under Counts I, II, and III, concluding that these Defendants were entitled to qualified immunity.[2] [Doc. 120] Defendants' claims of qualified immunity required Plaintiffs to (1) demonstrate violation of a constitutional right, (2) which was clearly established. *See Archuleta*, 523 F.3d at 1283. With regard to each of these counts against each of these Defendants, the Court concluded that the FAC failed to sufficiently allege violation of a constitutional right. [Doc. 120] With respect to each count, the Court expressly stated that it did not need to reach the second issue—whether the law was clearly established. [Doc. 120, pp. 16, 21, 25, 27, 29, 32]

Defendants argue that: (1) an official capacity claim requires a showing of a constitutional violation; (2) the Court previously determined that the FAC failed to state claims of constitutional violations by these Defendants under Counts I, II, and III; and (3) therefore, the Court should determine that the FAC fails to state official capacity claims against these Defendants under Counts I, II, and III. The Court agrees.

It is well established that a government body cannot be held liable under § 1983 for the acts of an employee if the employee did not commit a constitutional violation. *City of Los*

---

[2] Cobos's motion to dismiss was limited to Count III. [Doc. 120, p. 30]

*Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Myers*, 151 F.3d at 1316; *see Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."). A determination that an employee is entitled to qualified immunity, however, does not necessarily preclude municipal liability; an individual officer—but not a municipality—is entitled to qualified immunity even if the officer committed a constitutional violation but the law was not clearly established. *Myers*, 151 F.3d at 1317. But in this case the Court expressly determined that the FAC failed to sufficiently allege that Eby, Garcia, Ojeda, Saenz, and Cobos committed constitutional violations; the Court expressly stated that its decision did not rest on determinations that the law was not clearly established. [Doc. 120] Since the Court determined that the FAC did not state claims of constitutional violations against these Defendants, it follows that the FAC does not sufficiently state official capacity claims against these Defendants.

**B. Governmental policy as "moving force" behind constitutional violations alleged**

The FAC asserts that Eby, Garcia, Ojeda, and Saenz: "were acting under color of state law and within the scope and course of their employment and duties as law enforcement officers"; "acted pursuant to the customs and policies of Luna County, the Luna County Sheriff's Department and the Luna County Central Dispatch"; and were acting "in their official capacities as law enforcement officers." [Doc. 52, ¶¶ 7, 15, 52, 63, 78] The FAC makes only general, conclusory references to policy, practice, or custom—asserting that Sheriff Cobos:

> (1) was responsible for the policies, practices and customs of the Luna County Sheriff's Department;
>
> (2) was also responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of Luna County Sheriff Deputies under his command;

9

>  (3) acted with deliberate, reckless and callous indifference to the constitutional rights of plaintiffs in [his] policies, practices and customs, including [his] failure to properly hire, train, screen, discipline, control and supervise the Defendants; and
>
> (4) had a duty to supervise, discipline and control Luna County deputies, and to provide sufficient training for them, including Deputy Maynes, and his failure in those areas with respect to Deputy Maynes, and Deputy Maynes' excessive use of force, and other acts of misconduct, lead to liability on the part of Sheriff Cobos.

[Doc. 52, ¶¶ 8, 14, 88]

These conclusory assertions, unsupported by factual allegations, are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. In addition, the FAC fails to sufficiently assert the elements of official capacity claims. First, the FAC fails to identify, as the cause of Plaintiffs' constitutional injuries, any specific policy or specific deficiency in training or supervision.[3] *See Porro*, 624 F.3d at 1328 (stating that plaintiff must identify a specific deficiency, not just assert general deficiencies); *Schneider*, 717 F.3d at 769 (stating that *Monell* requires plaintiff to identify a policy or custom alleged to have caused the injury). Mere conclusory allegations of inadequate training or supervision are insufficient to state a plausible claim. *See City of Canton*, 489 U.S. at 390-91. Second, the FAC fails to sufficiently allege the "moving force" behind the claimed constitutional violations, and fails to explain how such violations could have been avoided with different or better training and supervision. *See Schneider*, 717 F.3d at 770. Third, the FAC fails to allege that the need for improved training and supervision was so obvious that the County can reasonably be said to have shown "deliberate indifference." *See Thompson*, 131 S. Ct. at 1360 & n.7 (stating that ordinarily a pattern of

---

[3] The FAC does cite the New Mexico "Law Enforcement Safe Pursuit Act," NMSA 1978, §§ 29-20-1 to -4 (2003), but does not assert that the state statute constitutes an official policy of Luna County, that it is unconstitutional, or that it caused the constitutional violations asserted in the FAC. [Doc. 52, ¶ 40] Similarly, the FAC cites "Department policy (RCM)" and safety protocols about taser use, but does not assert that this constitutes an unconstitutional policy or that it caused a constitutional violation; on the contrary, the FAC asserts that Maynes failed to follow the RCM. [Doc. 52, ¶ 81] *See Porro*, 624 F.3d at 1328-29 (observing that employee's actions which are contrary to policy do not show liability of governmental body); *Schneider*, 717 F.3d at 774 (same).

similar constitutional violations is required, and that a pattern cannot be shown by contemporaneous actions); *Porro*, 624 F.3d at 1328.

The FAC is insufficient because it fails to go beyond "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. The Court concludes that the FAC fails to state official capacity claims against Eby, Garcia, Ojeda, Saenz, and Cobos under Counts I, II, and III.

The Court recognizes that the FAC asserts that Cobos was acting "pursuant to his … authority as Sheriff," and asserts that Eby, Garcia, Ojeda, and Saenz "were acting … in their official capacities." [Doc. 52, ¶¶ 8, 52, 63, 78] Including clauses such as "acting in their official capacities" is not sufficient to state official capacity claims; officials may be held liable in their individual capacities for actions taken in their official roles. *Hafer v. Melo*, 502 U.S. 21, 27-28 (1991); *see Ross v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992); *Bradshaw v. Alpine Sch. Dist.*, 956 F.2d 277, *3 (10th Cir. 1992) (unpublished). Nor was it sufficient to include in the FAC's caption "in his individual and official capacity" after each Defendant's name. The Supreme Court emphasized that the distinction between official capacity suits and individual capacity suits is not a mere pleading device. *Hafer*, 502 U.S. at 27. Instead, to state official capacity claims, Plaintiffs had to assert that an official policy or custom was the moving force of a constitutional violation. *See Monell*, 436 U.S. at 694. This the FAC fails to do.

The Court concludes that the FAC fails to assert a specific policy or custom, and fails to assert that such policy or custom was the moving force behind constitutional violations alleged. The FAC fails to state official capacity claims against Eby, Garcia, Ojeda, Saenz, and Cobos.

## II.  Dismissal of Board of County Commissioners of Luna County

The parties stipulated to dismissal—with prejudice—of the Board of County Commissioners of Luna County, stating that all claims between these parties had been fully settled.  [Docs. 40, 41]  Defendants argue that this stipulated dismissal included dismissal of official capacity claims, because official capacity suits are the same as a suit against the municipality.  *See Monell*, 436 U.S. at 690 n.55; *Barney*, 143 F.3d at 1306 n.4.  Plaintiffs' response does not address this argument.

Official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell*, 436 U.S. at 690 n.55); *Porro*, 624 F.3d at 1328 ("Suing individual defendants in their official capacities under § 1983 … is essentially another way of pleading an action against the county or municipality they represent.").  An official capacity suit is "in all respects other than name, to be treated as a suit against the entity."  *Graham*, 473 U.S. at 166; *see Hafer*, 502 U.S. at 25; *Myers*, 151 F.3d at 1316.  "It is *not* a suit against the official personally, for the real party in interest is the entity."  *Graham*, 473 U.S. at 166.  The same standards apply under § 1983 to claims against a government body for actions of its employees or officials and official capacity claims against those employees or officials.  *Porro*, 624 F.3d at 1328.

There is no need to even bring official capacity claims, because under *Monell* local government units can be sued directly.  *Graham*, 473 U.S. at 167 n.14.  Some courts routinely dismiss official capacity claims as duplicative or redundant when the plaintiff also sues the government entity.  *Thorpe ex rel. D.T. v. Breathitt Cnty. Bd. of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013); *Grissom v. Dist. of Columbia*, 853 F. Supp. 2d 118, 125 (D.D.C. 2012).

Consistent with these principles, a judgment against a person in his official capacity imposes liability on the governmental entity the person represents—not on the person. *Graham*, 473 U.S. at 169; *Hinton*, 997 F.2d at 782. A plaintiff "seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Graham*, 473 U.S. at 166.

Defendants are members of the Luna County Sheriff's Department. "Generally, governmental sub-units are not separate suable entities that may be sued under § 1983." *Hinton v. Dennis*, 362 Fed. Appx. 904, 907 (10th Cir. 2010) (unpublished) (holding that Creek County Criminal Justice Center could not be separately sued under § 1983); *see Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (stating that City of Denver Police Department was not a separate suable entity), *vacated on other grounds*, 800 F.2d 230 (10th Cir. 1986).[4] The Luna County Sheriff's Department is a sub-unit of Luna County and is therefore not a separate suable entity. *See Lindsey v. Thomson*, 275 Fed. Appx. 744, 747 (10th Cir. 2007) (unpublished) (holding that Carter County Sheriff's Department was not a legally suable entity). The Court concludes that claims against Defendants in their official capacities constitute claims against Luna County.

A suit against Luna County is brought by naming as defendant the Board of County Commissioners of Luna County. *See* NMSA 1978, § 4-46-1 (2014) (providing that in a suit "against a county, the name in which the county shall … be sued shall be the board of county commissioners of the county"). Dismissal of the Board of County Commissioners constitutes dismissal of Luna County.

The stipulated Order of Dismissal states that Plaintiffs and Defendant Board of County Commissioners "have amicably resolved <u>all of their disputes</u>," and that "this matter, <u>having been fully settled</u>" among them, "should be dismissed <u>in all respects</u> against Defendant Board of

---

[4] Although *Martinez* was vacated on other grounds—mootness—the Tenth Circuit continues to rely on *Martinez* as persuasive precedent in published and unpublished cases. *See, e.g.*, *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991).

13

County Commissioners of Luna County only, with prejudice." [Doc. 41 (filed 1/23/13) (emphasis added)] In so stipulating, Plaintiffs agreed that they had settled all of their claims against Luna County and agreed that claims against Luna County should be dismissed with prejudice. Since the official capacity claims against Eby, Garcia, Ojeda, Saenz, and Cobos constitute claims against Luna County, and only Luna County would be responsible for any damages on these official capacity claims, these official capacity claims must be dismissed in accordance with the stipulated dismissal of Luna County. *See Houston v. Reich*, 932 F.2d 883, 888-89 (10th Cir. 1991) (holding that once City was dismissed from suit (by directed verdict), officers could only be sued in individual capacities and there was no basis for holding City liable for damages); *Hinton*, 997 F.2d at 783 (holding that official capacity claims against mayor should be dismissed on same rationale as claims against City).

## CONCLUSION

The Court concludes that Counts I, II, and III of the FAC should be dismissed for failure to state official capacity claims against Eby, Garcia, Ojeda, Saenz, and Cobos. As an alternative and independent ground, the Court concludes that official capacity claims against these Defendants should be dismissed in accordance with the stipulated dismissal of the Board of County Commissioners of Luna County.

**IT IS THEREFORE ORDERED THAT** the *Motion To Dismiss Official Capacity Claims* [Doc. 121] is **GRANTED.**

_____
**UNITED STATES DISTRICT JUDGE**