IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


ANNA GUTIERREZ and PATSY FLORES,

      Plaintiffs,

    vs.                                  Civ. No. 12-980 JH/GBW

LUNA COUNTY SHERIFF RAYMOND COBOS,
in his individual and official capacity; LUNA COUNTY
SHERIFF DEPUTY GABRIEL MAYNES, DEPUTY
MIKE EBY, DEPUTY TRINI GARCIA, DEPUTY
JOSE OJEDA, DEPUTY ISRAEL SAENZ, Jr., in
their individual and official capacities; LUNA
COUNTY CENTRAL DISPATCH DIRECTOR
MIRNA GRADO and DISPATCH EMPLOYEE
LUHANA VILLALBA, in their individual and
official capacities; LUNA COUNTY MANAGER
JOHN SUTHERLAND, in his individual and official capacity,

      Defendants.


**MEMORANDUM OPINION AND ORDER**

      This matter is before the Court on three motions:  (I) *Plaintiffs' Motion To Exceed Page Limit for Exhibits and for Plaintiffs' Response Brief to Defendant Maynes' Motion for Summary Judgment on Count III (Excessive Force)* [Doc. 136]; (II) *Plaintiffs' Fourth Motion and Memorandum in Support of Counsel's Affidavit To Allow Discovery Pursuant to Rule 56(d)* [Doc. 158]; and (III) *Defendant Gabriel Maynes' Motion for Summary Judgment on Count III (Excessive Force) of Plaintiffs' Amended Complaint* [Doc. 130].  Defendant Maynes filed responses to the first two motions [Docs. 137, 159]; Plaintiffs did not file replies.  Plaintiffs filed a response to the third motion [Doc. 135], and Maynes filed a reply [Doc. 138].  Having

considered the motions, briefs, court file, and relevant law, the Court will grant the first and third motions [Docs. 136, 130] and deny the second motion [Doc. 158].

## BACKGROUND

The following is a statement of relevant facts, viewed in the light most favorable to Plaintiffs.

Very late in the evening of July 4, 2009, Plaintiff Gutierrez was driving on a dark street in Deming when she noticed a vehicle following her; this made her nervous, and she did not come to a complete stop at a stop sign.  Defendant Sheriff's Deputy Maynes activated his flashing lights and began pursuit; until then Gutierrez did not realize that the car following her was a law enforcement vehicle.  Out of fear, Gutierrez continued driving toward her mother's home a few blocks away—instead of stopping.  She was driving over the speed limit.

Gutierrez pulled into the parking lot of her mother's apartment.  As she got out of her truck, she saw Maynes get out of his car and reach for his gun.  Gutierrez then ran toward her mother's apartment.  Maynes ran after Gutierrez and, without warning, discharged his taser; one taser dart stuck into Gutierrez's back.  Gutierrez banged on the door of her mother's apartment, yelling in an effort to get inside.  Maynes caught up to her and began beating, hitting, kicking, and tasing her.

When Gutierrez's mother, Plaintiff Flores, opened the door, Maynes pushed through the door and threw Gutierrez to the floor inside.  Maynes angrily pushed and threw furniture around before getting on top of Gutierrez and continuing to beat, kick, and tase her.  Both at the door and inside the apartment, Gutierrez did not submit to being handcuffed and arrested, but acted to defend herself from Maynes.

Francisco Porras was also inside the apartment.  Flores begged Maynes to stop beating and tasing Gutierrez.  Maynes tased Flores on her leg.

Before Maynes was able to handcuff Gutierrez, other deputies arrived in response to Maynes's calls to dispatch for assistance.  After Maynes was able to complete the handcuffing, Gutierrez was taken outside and transported to the hospital to have the taser dart removed from her back.

One or more of the deputies searched Gutierrez's truck after she was arrested.

Plaintiff Gutierrez was charged in state court with two felonies and four misdemeanors: Aggravated fleeing, Battery on a peace officer, Failure to maintain traffic lane, Careless driving, Concealing identity, and DWI.  The DWI charge was dismissed at a preliminary hearing by a State of New Mexico Magistrate Court Judge for lack of probable cause.  On March 31, 2011, the state filed a nolle prosequi dismissing the remaining charges.

Almost three years after the incident, Plaintiffs filed a complaint in the Sixth Judicial District Court for the State of New Mexico.  [Doc. 1-1]  The case was removed to this Court on September 19, 2012.  [Doc. 1]  The Court gave Plaintiffs leave to file an amended complaint five and one-half months after removal to federal court.   [Doc. 51]  *See* Fed. R. Civ. P. 15(a).  Plaintiffs filed the First Amended Complaint ("FAC") on March 6, 2013.  [Doc. 52]

The FAC included seven counts and named a total of nine defendants.  In four prior rulings, the Court granted motions to dismiss Counts IV through VII, dismissed all claims against eight defendants, and dismissed official capacity claims against Maynes.  [Docs. 120, 141, 149, 154]  After those four rulings, the only claims remaining in the case were Counts I, II, and III against Deputy Maynes in his individual capacity.

On July 10, 2014, Maynes filed a motion for summary judgment on Count III (Excessive Force) ("MSJ #1"). [Doc. 130]  Pursuant to two extensions of time totaling more than two additional weeks—to which Maynes agreed—Plaintiffs' response was due on August 11. [Docs. 133, 134]  Without any further extension or approval, Plaintiffs filed their response one day late—on August 12. [Doc. 135]  On August 27 Maynes filed a reply and a notice of completion of briefing. [Docs. 138, 139]

On October 31, 2014, Maynes filed a motion for summary judgment on Counts I and II ("MSJ #2"). [Doc. 155]  Plaintiffs have not yet filed a response; instead, on November 14, 2014, Plaintiffs filed a motion for discovery regarding both MSJ #2 and MSJ #1; Plaintiffs also request leave to file a supplement to their response to MSJ #1. [Doc. 158]

## DISCUSSION

### I.  Plaintiffs' Motion To Exceed Page Limits [Doc. 136]

Plaintiffs' response [Doc. 135] to MSJ #1 violates the page limits—with a brief twenty-nine pages long and exhibits sixty-three pages long.  *See* D.N.M.LR-Civ. 7.5; D.N.M.LR-Civ. 10.5.  Plaintiffs state that it would have been difficult to write a twenty-four-page brief when they had to respond to forty-five factual assertions.  The Court notes that Maynes's motion and brief were only fifteen pages long.  Plaintiffs state that "[w]ith an additional significant investment of time, it is possible that Plaintiffs could modify their response to bring it within the page limit, or closer to the page limit," but "it is questionable whether Plaintiffs would be able to reduce their exhibits to bring this within the page limit, without sacrificing or giving up an argument, claim or a sufficient explanation of the facts." [Doc. 136, p. 2]  Plaintiffs failed to request prior approval to file a nonconforming response.

In addition, Plaintiffs' response was filed late.  Maynes had agreed to two extensions of time, for a total of more than two additional weeks, making Plaintiffs' response due on August 11, 2014.  [Docs. 133, 134]  Without any further extension or approval, Plaintiffs filed their response one day late—on August 12.  [Doc. 135]

Maynes asks the Court to deny the motion because it is untimely and cites no legal authority to justify Plaintiffs' request.  Maynes states that he would not have opposed a motion to exceed page limits if Plaintiffs had  made a timely request, and that he prompted Plaintiffs regarding the due date for the response to MSJ #1.  [Doc. 137, p. 2]  Maynes observes that Plaintiffs have engaged in a pattern of repeated rule violations, causing Defendants' counsel to spend significant additional amounts of time.  [Doc. 137, p. 2]

Although Plaintiffs' response to MSJ #1 is only one day late, this late filing continues a pattern of late filing and nonconforming pleadings, including the following:

(a) Plaintiffs' response [Doc. 69] was filed seven days late, despite a seventeen-day extension.

(b) Plaintiffs' response [Doc. 71] was filed two weeks late, despite a two-week extension; the twenty-five-page response exceeded the twenty-four-page limit, without prior approval.

(c) Plaintiffs' response [Doc. 72] was filed two weeks late, despite a two-week extension.

(d) One day before the response to a motion for summary judgment [Doc. 85] was due, Plaintiffs filed an opposed motion asking the Court for a two-week extension; on August 22, 2013 (the date the response would be due if the still-pending extension request were granted), Plaintiffs filed a request for discovery on that motion.  [Docs. 87, 89]  On August 26, 2013, the Court granted an extension for the response to September 5, but denied the discovery motion as procedurally deficient.  [Doc. 90]  On September 6, 2013, Plaintiffs filed their response [Doc.

98]—one day later than allowed by the Court.  In addition, the response included a brief twenty-five pages long and three-hundred pages of exhibits; prior approval was not requested for page extensions.  Two weeks after Defendants filed a motion to strike [Doc. 99], Plaintiffs filed a motion to amend their response, with a proposed response attached [Doc. 103] which still exceeded the page limits; the brief was increased to twenty-nine pages, with seventy pages of exhibits.

(e) Plaintiffs' response [Doc. 102] to another motion for summary judgment [Doc. 95] included a twenty-nine-page brief and seventy pages of exhibits, with no request for page extensions.

Although Plaintiffs' response to MSJ #1 was filed only one date late, Plaintiffs have repeated the same rule violations multiple times—obtaining extensions and nevertheless filing late, and filing nonconforming documents without requesting prior approval.  [Doc. 120, p. 4; Doc. 141, pp. 60-61]  In ruling on motions to strike prior nonconforming responses, the Court observed that the reasons given by Plaintiffs' counsel do not excuse counsel from the duty to familiarize herself with, and comply with, court rules, including time restrictions.  [Doc. 141, p. 61; *see* Doc. 103, pp. 2-3 (Plaintiffs' counsel citing the press of running a solo practice and inexperience in prosecuting civil rights claims in federal court); Docs. 104, p. 2 and 126, p. 2 (Plaintiffs' counsel citing "inadvertence" for omitting relevant facts and failure to follow rules)]  As Maynes states, Defendants have filed many pleadings—motions to strike and replies—pointing out Plaintiffs' continued failure to follow the rules.  [Doc. 137, p. 2]

Before Plaintiffs filed the nonconforming response which is the subject of the motion currently before the Court, the Court cautioned Plaintiffs to follow the rules but denied Defendants' motion to strike a previous nonconforming response.  [Doc. 120, p. 4]  Afterward,

the Court again cautioned Plaintiffs about their continued violations of the same rules.  [Doc. 141, p. 61]  Plaintiffs provide no adequate excuse, either in this or previous motions.

Plaintiffs' late filing of a nonconforming response to MSJ #1 continues this pattern of untimely and nonconforming pleadings.[1]

Local Rule 7.1(b) provides:  "The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ. 7.1(b).  Summary judgment, however, is not proper solely because there is no timely response.  *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).  In an extreme case meriting a severe sanction, the district court has discretion to apply the local rule and grant summary judgment as a sanction after applying the analysis set forth in *Meade*.  *See Reed*, 312 F.3d at 1193-96; *Meade v. Grubbs*, 841 F.2d 1512, 1519-22 (10th Cir. 1988), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Alternatively, the court may refuse to allow an untimely filing, and may take a party's failure to file a timely response as a waiver of the right to respond or to controvert the facts asserted in the summary judgment motion.  *Reed*, 312 F.3d at 1193-96; *Sizemore v. State of N.M. Dep't of Labor*, 182 Fed. Appx. 848, 854 (10th Cir. 2006) (unpublished).[2]  The court then accepts as true all material facts properly asserted in the summary judgment motion and grants summary judgment if those facts entitle the moving party to judgment as a matter of law under Rule 56.  *Reed*, 312 F.3d at 1195-96.

---

[1] The Court observes that Plaintiffs also routinely violate D.N.M.LR-Civ. 10.6, requiring identification of portions of exhibits by brackets, shading, or underlining.  This violation exacerbates the violation of filing overly long exhibits.

[2] The Court cites this and other unpublished opinions for their persuasive value.  *See* 10th Cir. R. 32.1(A).

Having fully considered the proceedings in this case, the Court concludes that neither of these courses is merited at this point.  The Court strongly cautions Plaintiffs to follow the rules in future, but will grant the motion and accept Plaintiffs' untimely and nonconforming response to MSJ #1.

## II.  Plaintiffs' Fourth Motion for Discovery [Doc. 158]

### A.  Legal standard for discovery

A court should refuse to grant summary judgment when "'the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'"  *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1206 (10th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).  Under Rule 56(d), the Court has discretion to allow discovery when a party shows "that, for specified reasons, it cannot present facts essential to justify its opposition" to a summary judgment motion.

A discovery request "'should be treated liberally unless dilatory or lacking in merit.'"  *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990) (quoting *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984)).  But a plaintiff is not entitled to discovery; it is not sufficient merely to assert that discovery is needed.  Instead, the plaintiff is required to support a discovery request by:  identifying the probable facts not available; showing what steps were taken to obtain these facts; and stating  "'with specificity how the additional material will rebut the summary judgment motion.'"  *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006) (quoting *Ben Ezra, Weinstein & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000)).  Rule 56(d) "is not a license for a fishing expedition."  *Ellis*, 779 F.3d at 1208 (internal quotation marks omitted).  The Tenth Circuit stated that it expects Rule 56(d) motions to be "robust."  *Ellis*, 779 F.3d at 1206.

The court's discretion is more limited when the defendant claims qualified immunity. *Lewis*, 903 F.2d at 758. Qualified immunity allows a public official to avoid the burden of discovery, in addition to the burden of undergoing trial. *Iqbal v. Ashcroft*, 556 U.S. 662, 672 (2009); *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988). Suits against government officials should be resolved "*prior to discovery and on summary judgment* if possible." *Lewis*, 903 F.2d at 758 (internal quotation marks omitted); *see Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). The otherwise liberal standard of Rule 56(d) is thus tempered by the qualified immunity doctrine; liberal application of Rule 56 must not be allowed to subvert the principles of qualified immunity. *Lewis*, 903 F.2d at 758.

### B. Plaintiffs' prior discovery requests

On February 8, 2013, pursuant to the agreement of all parties, the Court entered a stay of discovery pending resolution of motions raising the defense of qualified immunity. [Doc. 51] Plaintiffs filed their first motion for discovery on June 4, 2013. [Doc. 80] The Court denied that motion to the extent it related to motions to dismiss on the basis of qualified immunity. [Doc. 141, pp. 62-65] To the extent the discovery motion related to a motion for summary judgment, the Court observed that the discovery motion was filed one month after Plaintiffs had filed their response and one week after briefing was completed on that summary judgment motion. Quoting the requirements of Rule 56(d), the Court observed that the discovery motion was "wide-ranging" and was not limited to specified facts focused on the particular motions at issue. [Doc. 141, p. 64] The Court noted that Plaintiffs could not logically show the need for discovery after they had already filed their response. [Doc. 141, pp. 63-64] And the Court explained that

to allow the wide-ranging discovery requested would undermine the principles of qualified immunity.  [Doc. 141, p. 64]  The Court thus denied Plaintiffs' first motion for discovery.[3]

Plaintiffs' second motion for discovery was filed one day before the due date for Plaintiffs' response to a prior motion for summary judgment.  [Docs. 85, 89]  The Court denied the motion as procedurally deficient (for failure to include an affidavit), but allowed Plaintiffs additional time to file their response to the summary judgment motion.  [Docs. 89, 90]

More than two months later, Plaintiffs filed their third motion for discovery, addressed to the same summary judgment motion and another summary judgment motion.  [Doc. 113 (regarding Docs. 85, 95)]  The Court again explained that the discovery request was wide-ranging and not properly limited to the summary judgment motions at issue.  [Doc. 141, p. 64] The Court explained that Plaintiffs failed to meet the Rule 56 standard for discovery:  "Plaintiffs fail to specifically identify probable facts and to state with specificity how additional material would rebut the summary judgment motions."  [Doc. 141, pp. 64-65]  The Court cited caselaw on the applicable standard:  *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006); *Comm. for First Amendment v. Campbell*, 962 F.2d 1516, 1523 (10th Cir. 1992) (observing that discovery request is not fishing expedition).  The Court again observed that Plaintiffs could not logically show that they needed discovery to respond because their third discovery motion was filed long after Plaintiffs' responses were filed and two weeks after briefing was completed.  [Doc. 141, p. 65]  The Court thus denied Plaintiffs' third motion for discovery.[4]

---

[3] The Court also denied the discovery request as futile, because Defendant's motion was, in the alternative, a motion to dismiss, and the Court granted Defendant's motion under Rule 12(b)(6).  [Doc. 141, p. 63]
[4] The Court also denied the third discovery request on the basis that it was addressed to summary judgment motions which the Court denied.  [Doc. 141, p. 65 (denying MSJs in Docs. 85 & 95)]

### C. Plaintiffs' fourth discovery request

Plaintiffs' fourth discovery motion requests discovery on both of Maynes's summary judgment motions (MSJ #1 and MSJ #2)—even though Plaintiffs have already filed their response to MSJ #1, and briefing is complete.  Plaintiffs further request leave to file a supplement to their response to MSJ #1.[5]  Maynes responds that the discovery motion should be denied because it is untimely with respect to MSJ #1, it fails to meet the discovery standard, and it seeks discovery beyond the limited scope of Rule 56(d) (allowing discovery of "facts essential to justify" opposition).

After denial of three discovery motions, and after the Court set forth the applicable standards and caselaw in its prior rulings, Plaintiffs once again request discovery on a summary judgment motion long after they filed their response and briefing has been completed.  MSJ #1 was filed on July 10, 2014; Plaintiffs' response was filed on August 12, 2014; and briefing was completed on August 27, 2014.  [Docs. 135, 138, 139]  Plaintiffs did not file the fourth discovery motion until November 14, 2014.  As before, the Court again observes that Plaintiffs failed to follow Rule 56 procedure, which requires a timely request for discovery before the response is filed.  In addition, the Court finds that the motion is dilatory with respect to MSJ #1—being filed four months after MSJ #1 was filed.  *See Lewis*, 903 F.2d at 758 (stating that discovery motion not entitled to liberal treatment if dilatory or lacking in merit).

Attempting to justify discovery with respect to MSJ #1, Plaintiffs assert:  "Despite the fact that Plaintiffs have attempted to respond to Defendant Maynes' motion for summary judgment on Count III, it is clear that Plaintiffs did not have sufficient information to enable them to provide a complete response."  [Doc. 158, p. 3] The Court observes that Plaintiff

---

[5] Plaintiffs also referred to a need for discovery a number of times in their response to MSJ #1 [Doc. 135]—again, however, failing to meet the Rule 56 standard.  This matter is discussed further below.  (*See* Section III(A).)

Gutierrez was present and observed all of the events related to her claim of excessive force; Plaintiff Flores was present to observe some of these events and all of the events related to Flores's claim.  Plaintiffs' previously filed response to MSJ #1 demonstrates that Plaintiffs were in possession of ample information on relevant facts; Plaintiffs' response brief contains twenty-nine pages of detailed factual allegations and argument. *See Ellis*, 779 F.3d at 1206 (stating that summary judgment should be refused if "'nonmoving party has not had the opportunity to discover information that is essential to his opposition'" (quoting *Anderson*, 477 U.S. at 250 n.5)).

Plaintiffs also request leave "to supplement Plaintiffs' response to Count III after conducting discovery, based on any new and/or additional information learned through discovery that support[s] Plaintiffs' response and/or position."  [Doc. 158, pp. 3-4]  This request is based solely on the premise that Plaintiffs needed more factual information for their response to MSJ #1; the purpose of a supplement would be to address any new factual information obtained through discovery.  Since the Court rejects Plaintiffs' premise that they needed more factual information and is denying the discovery request, the Court will deny leave to supplement. Plaintiffs have not shown they had insufficient access to relevant factual information to enable them to file a response to MSJ #1.

Even if Plaintiffs had not already filed their response to MSJ #1, Plaintiffs' fourth discovery request fails to meet the Rule 56 standard to justify discovery on either MSJ #1 or MSJ #2.  As with Plaintiffs' prior discovery requests, the Court once again observes that Plaintiffs' fourth discovery request is wide-ranging and fails to focus on critical facts relevant to the two summary judgment motions.  Plaintiffs state generally that they seek discovery on: "Defendant Maynes' knowledge, as well as the knowledge of various witnesses, at the time of Plaintiffs'

seizures, the unlawful entry into Plaintiffs' home, the excessive use of force upon Plaintiff Gutierrez, when the July 4, 2009 recordings were 'lost' or became unavailable, and when Defendant Maynes' employment was terminated."  [Doc. 158, p. 6 (also stating that purpose of discovery request is to allow Plaintiffs "'to fill in material gaps', to create a more complete picture")]  The affidavit of Plaintiffs' counsel includes three pages listing numerous topics for discovery, including many points not relevant to a response to the summary judgment motions and not focused on the three counts still in the case; for example, Plaintiffs seek discovery on: Maynes's prior training; actual locations for July 4, 2009 celebrations in Deming; actual assistance provided by dispatch; investigation into missing dispatch recordings; Maynes's training about the speed for a safe turn.  [Doc. 158-1, pp. 2-4]  *See Comm. for First Amendment*, 962 F.2d at 1523 (discovery request is not fishing expedition).  And many points listed as discovery topics are largely within Plaintiffs' possession, e.g.:  Plaintiffs' expectation of privacy in the apartment; the circumstances of Maynes's entry into the apartment.  [Doc. 158-1, p. 3]

The motion fails to specifically explain what steps Plaintiffs took to obtain the discovery, how further discovery would assist in overcoming Maynes's prima facie showing of entitlement to summary judgment, and how additional time would enable Plaintiffs to rebut Maynes's allegations that there are no genuine disputes on material facts.  *See Trask*, 446 F.3d at 1042. Plaintiffs' motion merely asserts that "Plaintiffs have availed themselves of all other methods of obtaining information material to the present claims," and "have diligently pursued discovery and made every other effort to gather the necessary factual information."  [Doc. 158, pp. 7-8] These conclusory assertions, without any specific explanation of the steps taken, are insufficient to justify discovery.

Plaintiffs attempt to justify discovery by asserting that some information is exclusively in Defendants' control and can only be obtained through the discovery process.  [Doc. 158, p. 7] The Court notes that such an assertion does not automatically justify discovery.  *See Trask*, 446 F.3d at 1042.  The information to which Plaintiffs refer is the dispatch recordings which Defendants said were missing; this information was relevant primarily to counts already dismissed, and Plaintiffs provide no persuasive argument that they need additional information about the  missing dispatch recordings in order to respond to MSJ #1 or MSJ #2.

The Court concludes that Plaintiffs fail to meet the standard of Rule 56.  Plaintiffs fail to limit their request to specific facts relevant to the summary judgment motions, fail to specifically explain the steps previously taken to obtain the information, and fail to explain how discovery will help Plaintiffs overcome Maynes's claim of entitlement to summary judgment.  *See Trask*, 446 F.3d at 1042; *Ellis*, 779 F.3d at 1208 (stating that movant is required to particularize a request for discovery).  A court is within its discretion to deny a discovery request that lacks specificity.  *Trask*, 446 F.3d at 1042.

In addition, since Maynes has raised qualified immunity as a defense, the Court's discretion to allow discovery is more limited.  *Lewis*, 903 F.2d at 758.  Plaintiffs were also required to show "'*how* discovery will enable them to rebut a defendant's showing of objective reasonableness' or, stated alternatively, demonstrate a 'connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion.'"  *Id.* (quoting *Jones*, 854 F.2d at 1211).  It is insufficient for Plaintiffs "to merely assert that additional discovery is required to demonstrate a factual dispute or 'that evidence supporting a party's allegation is in the opposing party's hands.'"  *Id.* (quoting *Jones*, 854 F.2d at 1211).  Plaintiffs' discovery motion fails to meet this standard.

14

The affidavit of Plaintiffs' counsel mistakenly asserts that "there is no longer a reason to limit discovery" because all defendants but Maynes have been dismissed from the case. [Doc. 158-1, p. 5, ¶ 11] Deputy Maynes is entitled to raise the defense of qualified immunity, which is a claim to avoid the burden of discovery as well as the burden of going to trial. *See Iqbal*, 556 U.S. at 672; *Jones*, 854 F.2d at 1211; *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (qualified immunity "is effectively lost if a case is erroneously permitted to go to trial"). Maynes is entitled to application of the principle that suits against government officials should be resolved "*prior to discovery and on summary judgment* if possible." *Lewis*, 903 F.2d at 758 (internal quotation marks omitted); *see Anderson*, 483 U.S. at 640 n.2. Allowing Plaintiffs' request for wide-ranging discovery, including discovery on irrelevant subjects, would undermine the purpose of the qualified immunity doctrine. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248-49 (10th Cir. 2008) (stating that qualified immunity doctrine is intended to protect public officials from broad-ranging discovery).

The Court concludes that Plaintiffs fail to justify their request for discovery on either summary judgment motion. The Court will deny Plaintiffs' unfocused and unwarranted discovery requests.

The Court will also deny Plaintiffs' dependent request to supplement their response to MSJ #1. The Court orders Plaintiffs to file a response to MSJ #2 on or before May 18, 2015.

## III.  SUMMARY JUDGMENT ON COUNT III  (EXCESSIVE FORCE)

### A.  Response's Assertions of Need for Discovery on MSJ #1

Plaintiffs' response repeatedly asserts that discovery is necessary to allow them "to fully respond" to Maynes's statement of facts.  [Doc. 135, pp. 2, 7, 9, 12, 14, 19, 22-23, 26-28]  But Plaintiffs failed to follow the procedure required to support a discovery request.  Rule 56(d) allows a motion for discovery when the nonmovant shows, by affidavit or declaration, "that, for specified reasons, it cannot present facts essential to justify its opposition" to a summary judgment motion; the court then has discretion to allow discovery.  (Emphasis added.)  Plaintiffs, however, failed to file a motion for discovery with a supporting affidavit before the due date for their response.  *See Thomas v. Pacificorp*, 324 F.3d 1176, 1179 (10th Cir. 2003) (holding no abuse of discretion to grant summary judgment without discovery being completed when nonmovant fails to avail himself of procedure available under Rule 56).  Instead of filing a timely motion for discovery under Rule 56, Plaintiffs filed their untimely response.  Plaintiffs' response—pursuant to two extensions of time—was due August 11, 2014, but was not filed until August 12.

Nor do Plaintiffs' assertions throughout their response satisfy the burden to justify a discovery order under Rule 56—even if the response were treated as an untimely discovery request.  Plaintiffs fail to limit their assertions about discovery to specific facts relevant to the summary judgment motion, fail to specifically explain the steps previously taken to obtain the information, and fail to explain how discovery will help Plaintiffs overcome Maynes's claim of entitlement to summary judgment.  *See Trask*, 446 F.3d at 1042; *Ellis*, 779 F.3d at 1208.  Instead of limiting discovery to specific relevant topics—as required under Rule 56 and as further limited by the qualified immunity doctrine—Plaintiffs assert that wide-ranging discovery is

required, including a number of irrelevant topics in their assertions.[6]  *See Lewis*, 903 F.2d at 758; *Ellis*, 779 F.3d at 1208; *Trask*, 446 F.3d at 1042.

A request for discovery—even if made by motion with supporting affidavit—made on the day after the response is due would not be entitled to liberal treatment, because it is "dilatory." *Lewis*, 903 F.2d at 758 (internal quotation marks omitted).  In addition, the Court's discretion is limited because Maynes's summary judgment motion is based on qualified immunity, and liberal application of Rule 56 "should not be allowed to subvert the goals of qualified immunity." *Id.* (internal quotation marks omitted).  Plaintiffs' unfocused remarks about the need for broad-ranging discovery, included in an untimely response, are inconsistent with the policy underlying qualified immunity and fail to carry their burden to justify discovery.  *See Ellis*, 779 F.3d at 1208; *Trask*, 446 F.3d at 1042 (stating that court is within discretion to deny discovery for lack of specificity in request).

## B.  Legal Standard for Summary Judgment on Excessive Force Claim

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[6] Plaintiffs' response discusses many topics as subjects for discovery which are irrelevant, or on which Plaintiffs' discussion shows they had ample information.  For instance, Maynes's Fact #12 alleges:  "Besides the driving infractions he had already observed, Deputy Maynes believed the driver's actions were also indications of impairment that threatened the health and safety of others, so he informed dispatch he was in pursuit of a vehicle." [Doc. 130, p. 3]  Plaintiffs' response states:  "Plaintiffs dispute that Deputy Maynes **believed** that Plaintiff Gutierrez was impaired."  [Doc. 135, pp. 6-7 (emphasis in Plaintiffs' response)]  Plaintiffs argue that discovery is needed to allow them to "fully ferret out these facts," and to ascertain what other actions led Maynes to believe that Gutierrez was impaired.  [Doc. 135, pp. 7, 9-10]  But Plaintiffs demonstrate they had ample factual information, proceeding to recite information from four sources to support their allegation that Gutierrez was not impaired (EMT Reagan, who transported Gutierrez to the hospital; Dr. Homsi, who treated Gutierrez; the state court magistrate judge who conducted the preliminary hearing; Deputy Eby).  [Doc. 135, pp. 6-7]  Plaintiffs argue that Maynes stopped Gutierrez on a pretext—because "Maynes believes Ms. Gutierrez is gay."  Plaintiffs' claim that Maynes stopped her because he believes she is gay is irrelevant and untenable at this point; Plaintiffs identify no evidence to show that Maynes—late at night, in the dark—knew who was driving the truck he pursued.  Plaintiffs assert that discovery is needed to further investigate the matter of the missing dispatch recording.  [Doc. 135, p. 9]  Many of the facts Plaintiffs discuss are not relevant or necessary for a response to the summary judgment motion (e.g., facts about the dispatch recording, which was relevant to a count previously dismissed by the Court).

17

56(a).  A fact is material if it could have an effect on the outcome of the suit.  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party.  *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party.  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).  The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A defendant seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  When, as in this case, the defendants do not have the burden of persuasion at trial, they can satisfy their burden at the summary judgment stage by identifying a lack of evidence on an essential element of the plaintiff's claim.  *Id*. at 671.  If the defendants satisfy their burden, the burden shifts to the plaintiff.  *Id*.

The plaintiff cannot rest on his pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment."  *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The plaintiff must "set forth specific facts" from which a rational trier of fact could find in the plaintiff's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits.  *Adler*, 144 F.3d at 671 (internal quotation marks omitted).   The plaintiff cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations.  *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375

Fed. Appx. 887, 891 (10th Cir. 2010) (unpublished) (internal quotation marks omitted); *see Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003).

To survive a summary judgment motion in which the defendant claims qualified immunity, however, the analysis is different.  The plaintiff must first carry the additional burden of satisfying "a strict two-part test." *Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013). In considering whether the plaintiff has satisfied this test, the court still views the evidence in the light most favorable to the plaintiff.  *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (on reh'g *en banc*).  The plaintiff must show that the defendant's actions violated a constitutional right, and that this right was "clearly established" at the time of the conduct.  *Rojas*, 727 F.3d at 1003.  A right is clearly established if the "'contours of the right'" are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  A plaintiff can carry his burden of showing that a right is clearly established by identifying Supreme Court or Tenth Circuit caselaw on point, or by demonstrating that the weight of authority from other circuits shows the right to be clearly established.  *Albright*, 51 F.3d at 1535.  The plaintiff need not identify "a *perfectly* on-point case" or caselaw with "precise factual correspondence," but does not carry his burden by pointing only to "'clearly established law at a high level of generality.'"  *Quinn v. Young,* 780 F.3d 998, 1005, 1013 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2084, 179 L. Ed. 2d 1149 (2011)). The clearly established right at issue should be defined "'on the basis of the specific context of the case.'"  *Id*. (quoting *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014)).  "[A] plaintiff may not simply allege—and the district court likewise may not accept as sufficient—the defendant's violation of an amorphously-defined Fourth Amendment right";

instead, the plaintiff must show "'a *substantial correspondence* between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.'"  *Id*. at 1009 (quoting *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000)).

"<u>If, and only if</u>, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Rojas*, 727 F.3d at 1003 (internal quotation marks omitted; emphasis added).  If the plaintiff fails to satisfy either part of this test, the defendant is "entitled to" qualified immunity.  *Id*. at 1004; *see Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013).

"Qualified immunity is designed to shield public officials from liability and ensure 'that erroneous suits do not even go to trial.'"  *Albright*, 51 F.3d at 1534.  In addition, qualified immunity is designed to prevent government officials from facing the other burdens of litigation. *Iqbal*, 556 U.S. at 672.  The Supreme Court "has directed the lower federal courts to apply qualified immunity broadly, to protect from civil liability for damages all officers except 'the plainly incompetent or those who knowingly violate the law,'" so that officers "might not be unduly 'inhibit[ed] … in performing their official duties.'"  *Wilson v. City of Lafayette*, 510 Fed. Appx. 775, 780 (10th Cir. 2013) (unpublished) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001)).  The qualified immunity standard allows  "'ample room for mistaken judgments,'" allowing accommodation for reasonable error.  *Applewhite v. U.S. Air Force*, 995 F.2d 997, 1000 (10th Cir. 1993) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

An investigative stop is reasonable if based on an observed traffic violation or a reasonable articulable suspicion that an offense has been committed.  *United States v. Botero-*

*Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc).  Reasonable suspicion is "a particularized and objective basis" for suspecting a person of criminal activity.  *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).  There is probable cause for an arrest if facts within the knowledge of an officer would lead a reasonable person to believe that an offense has been committed.  *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012).  If an officer has probable cause to believe that a person has committed even a very minor criminal offense in the officer's presence (e.g., a traffic offense like failure to wear a seatbelt), the officer may make a warrantless arrest without violating the Fourth Amendment.  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222-23 (10th Cir. 2013) (stating that warrantless arrest for crime committed in officer's presence is reasonable under Federal Constitution, regardless of state restrictions); *Quinn*, 780 F.3d at 1006 (observing that Supreme Court allows officer "wide berth" regarding warrantless arrest).  Even a reasonable but mistaken belief that there is probable cause entitles an officer to qualified immunity.  *Morris*, 672 F.3d at 1194.  This is an objective standard; an officer's "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  *Whren v. United States*, 517 U.S. 806, 813 (1996).

The right to make an investigative stop or arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  There is no "generic 'right' to be free from excessive force, grounded not in any particular constitutional provision but rather in 'basic principles of § 1983 jurisprudence.'"  *Graham*, 490 U.S. at 393.  "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Id.* at 393-94 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  A claim that an officer used excessive force in the course of a stop or arrest raises a claim under the Fourth Amendment. *Roska v. Peterson*,

328 F.3d 1230, 1243 (10th Cir. 2003); *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014).  The plaintiff must show that a "seizure" occurred and that the seizure was unreasonable. *Roska*, 328 F.3d at 1243; *see Florida v. Bostick*, 501 U.S. 429, 435 (1991) (a person is seized within the meaning of the Fourth Amendment when "a reasonable person would believe that he or she is not 'free to leave'").

To establish a constitutional violation for use of excessive force, a plaintiff must demonstrate that the force used was objectively unreasonable.  *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008).  Reasonableness is evaluated under the totality of the circumstances, considering and balancing the following factors:  "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009) (quoting *Graham*, 490 U.S. at 396).  The court must "pay careful attention to the facts and circumstances of the particular case."  *Estate of Larsen*, 511 F.3d at 1260.  Officers may have "to make split-second judgments in uncertain and dangerous circumstances."  *Thomson*, 584 F.3d at 1313 (internal quotation marks omitted).  "A reasonable officer need not await the 'glint of steel' before taking self-protective action; by then, it is 'often … too late to take safety precautions.'"  *Estate of Larsen*, 511 F.3d at 1260 (quoting *People v. Morales*, 603 N.Y.S.2d 319, 320 (N.Y. App. Div. 1993)).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment."  *Graham*, 490 U.S. at 397 (internal quotation marks and citation omitted).  "[A] higher level of force may be employed when the subject is actively

resisting or attempting to evade arrest by flight." *Aldaba v. Pickens*, 777 F.3d 1148, 1158 (10th Cir. 2015). *See, e.g.*, *Hinton v. City of Elwood*, 997 F.2d 774, 781-82 (10th Cir. 1993) (granting defendants summary judgment on excessive force claim when plaintiff resisted arrest and defendants grabbed him from behind, wrestled him to ground, and used stun gun numerous times but ceased once they succeeded in handcuffing plaintiff); *Gross v. Pirtle*, 245 F.3d 1151, 1154, 1158 (10th Cir. 2001) (reversing denial of summary judgment, and holding that deputy was entitled to qualified immunity when he kicked plaintiff "very hard" in the foot, resulting in a bone spur injury—even though plaintiff did not resist arrest or flee); *Sanders v. Thomas*, 167 Fed. Appx. 723, 724-25 (10th Cir. 2006) (unpublished) (affirming dismissal for failure to state claim of excessive force when officers hit plaintiff in face and kicked him; plaintiff had refused to stop in response to officers' activation of emergency lights, steered into oncoming traffic during pursuit, and attempted to flee on foot after stopping vehicle).

### C. Determination of Undisputed Facts

Plaintiffs do not dispute that in the late evening of July 4, 2009, Deputy Maynes was on patrol in Deming, in his marked car, in the area of the high school and country club. [Doc. 131, p. 2, ¶¶ 1, 7] Maynes was assigned to provide the Deming Police Department with support, to ensure citizens' safety during and after the fireworks display. [Doc. 131, p. 2, ¶ 6] Plaintiffs do not dispute that people gathered in this area to watch the fireworks display and remained outdoors for hours, continuing their celebrations, before heading home. [Doc. 131, p. 2, ¶¶ 4-5]

The FAC admits that Maynes activated his flashing lights and that Gutierrez knew then it was a police officer following her. [Doc. 52, p. 4, ¶ 19] Plaintiffs' response and Gutierrez's affidavit confirm these facts, disputing only other parts of Maynes's Fact #10 of MSJ #1. [Doc. 135, pp. 5-6; Doc. 135-7, p. 2, ¶¶ 8-9] *See Graves v. Thomas*, 450 F.3d 1215, 1223 (10th Cir.

2006) (characterizing as undisputed a factual allegation when response identifies only evidence that does not directly controvert allegation, or avoids full discussion of a particular allegation).

MSJ #1 alleges that Gutierrez failed to stop at two stop signs.  [Doc. 131, p. 3, ¶ 14]  The FAC admits that, "[d]ue to her nervousness at being followed," Gutierrez "may not have come to a complete stop" at one stop sign.  [Doc. 52, p. 3, ¶ 17]  Plaintiffs' response and Gutierrez's affidavit state that there are two stop signs in the area (though one is not at the precise location alleged by Maynes) and state that Gutierrez disputes that she ran one of the stop signs— implicitly admitting that Gutierrez failed to stop at one stop sign.  [Doc. 135, p. 3 (Plaintiffs' response states:  "Plaintiff Gutierrez states that the officer was following her, and put on his lights <u>after running a stop sign</u>." (emphasis added)); Doc. 135-7, p. 2, ¶¶ 6-7]  It is thus undisputed that Gutierrez committed the traffic violation of failing to stop at a stop sign.  *See Graves*, 450 F.3d at 1223 (characterizing as undisputed a factual allegation which is not directly controverted, or on which full discussion is evaded).

Maynes alleges that Gutierrez accelerated after Maynes turned on his emergency lights and that Gutierrez reached a speed of 65 mph.  [Doc. 131, p. 3, ¶¶ 11, 14]  Plaintiffs dispute only part of these facts, alleging that Gutierrez started to speed up before Maynes activated his emergency lights and admitting that Gutierrez "may have picked up speed" after Maynes activated his lights and began pursuit.  [Doc. 135, pp. 6, 10-11]  Plaintiffs dispute that Gutierrez got up to 65 mph.  Plaintiffs cite Gutierrez's affidavit in support of their allegations; Gutierrez's affidavit admits that her "speed may have been slightly over the speed limit."  [Doc. 135-7, p. 2, ¶ 10]  It is thus undisputed that Gutierrez was speeding—though not undisputed that her speed was as high as 65 mph.  *See Graves*, 450 F.3d at 1223 (characterizing as undisputed a factual allegation which is evaded, rather than controverted).

The FAC admits that, although Gutierrez knew a police officer was behind her and that he had activated his flashing lights to stop her, Gutierrez refused to stop:  "Out of fear, Ms. Gutierrez continued driving and took a left onto Zinc Street a few blocks in front of her, instead of immediately stopping."  [Doc. 52, p. 4, ¶ 20; *id.* ¶ 19 (admitting Gutierrez knew a police officer was following her when he activated his lights)]  Plaintiffs thus admit that Gutierrez refused to yield to a peace officer who engaged his flashing lights, but instead drove "a few blocks" farther.

The FAC alleges that Gutierrez pulled into the parking lot of her mother's apartment building, got out, and ran toward the building—alleging that she did so because she saw the officer get out of his car and reach for his gun.  [Doc. 52, p. 4, ¶ 21]  Plaintiffs' response admits that "Gutierrez ran straight toward the apartments" and "headed straight for her mother's apartment."  [Doc. 135, p. 20; *see also* Doc. 71, p. 14 (Plaintiffs' response to earlier motion admitted:  "There is no doubt that Plaintiff Gutierrez was running away.")]  It is undisputed that, after driving a few blocks farther and parking, Gutierrez again fled and evaded an officer.

MSJ #1 alleges that Gutierrez ran to Apartment 2 and began banging on the door.  [Doc. 131, p. 4, ¶ 26]  The FAC alleges that Gutierrez "desperately banged on the door of her mother's apartment" in her attempt to get inside—and away from the officer.  [Doc. 52, p. 4, ¶ 23]  It is undisputed that Gutierrez continued to flee from and attempt to evade an officer.

MSJ # 1 alleges that Maynes caught up at the door and attempted to place handcuffs on Gutierrez, but that Gutierrez began hitting and pushing Maynes as he attempted to restrain her; Maynes believed her aggressive behavior was a threat to him and others if he could not apprehend her.  [Doc. 131, p. 4, ¶¶ 27-29]  Maynes further alleges that he then attempted to shock her with the taser in the right quadriceps muscle, but she continued to fight and their hands

became tangled in the taser wires.  [Doc. 131, p. 5, ¶ 30]  Plaintiffs dispute that Gutierrez initiated any aggressive action against Maynes, and allege that she was kicked, beaten, and tased at the door.  [Doc. 135, p. 21]  Plaintiffs admit, however, that Gutierrez did not passively submit:

> "The only actions she took were in self defense."

> "Plaintiffs dispute that Ms. Gutierrez engaged in aggressive behavior, and assert that the only actions she took were directly in response to Deputy Maynes' angry, violent and punitive actions against her, including those with the use of his weapon, for self-preservation."

> "Plaintiff Gutierrez disputes that she 'continued to fight' with Deputy Maynes, or that she fought with him at all.  All actions she took were in self defense."

[Doc. 135, pp. 21-22]  Gutierrez's affidavit alleges that when Maynes caught up to her at the door, he "immediately began hitting, kicking and tasing me repeatedly, while I tried to defend myself."  [Doc. 135-7, p. 3, ¶ 14]  It is undisputed that Gutierrez did not passively submit.

MSJ #1 alleges that:  the apartment door opened; Maynes and Gutierrez fell inside together; Maynes saw at least two other people in the room; Maynes yelled for assistance over his radio because he was in a dangerous position; and Gutierrez moved away from him and continued resisting his efforts to arrest her.  [Doc. 131, p. 5, ¶¶ 31-34]  Plaintiffs dispute most of these allegations, alleging that:  Maynes pushed the door open and entered the apartment, following Gutierrez; only Plaintiff Flores was in the living room at the time of entry; and that Maynes did not believe he was in a dangerous position.  [Doc. 135, pp. 23-24]  Plaintiffs admit, however, that Gutierrez still did not passively submit:

> "Plaintiff Gutierrez did not resist Deputy Maynes' efforts to arrest her.  Most of the actions she took were to protect herself from the beating, kicking and tasing by Deputy Maynes, in self defense.   The remainder of her actions were involuntary, in response to the repeated tasings she endured."

> "Plaintiff Gutierrez disputes that she 'ceased resisting' when Deputy Eby entered the apartment.  She was never resisting arrest.  As explained herein, her actions and movement were directly in response to trying to protect herself from the

beating, kicking and tasing by Deputy Maynes.  She also experienced involuntary movement from the tasing."

[Doc. 135, pp. 24, 26]  The FAC admits that Gutierrez "tried to defend herself" from Maynes, after they were on the floor of the apartment.  [Doc. 52, p. 4, ¶ 26]  Gutierrez's affidavit alleges that Maynes "continued to beat, kick and tase [her] over and over again," and admits that she continued to try to get away from him and continued to act in "self defense":

> "On my hands and knees I tried to crawl away from him as he continued to beat, kick and tase me over and over again."

> "The officer got on top of me and I turned onto my back trying to fend off the blows."

[Doc. 135-7, ¶¶ 15-16]  While alleging that Maynes beat, kicked, and tased her throughout, Gutierrez's affidavit also admits that she continued to try to evade him and to act in "self defense" (or that her movements were involuntary responses to the tasing), rather than passively submitting.  [Doc. 135-7, pp. 4-5, ¶¶ 19, 20, 23-24]

Plaintiffs dispute many of Maynes's allegations about what force he used and what happened when.  The Court must accept Plaintiffs' version of events on disputed facts, and allow all reasonable inferences in favor of Plaintiffs.  *See Shero*, 510 F.3d at 1200.  The Court concludes, however, that the following facts are undisputed:  Gutierrez failed to stop at one stop sign; Maynes activated his flashing lights to stop Gutierrez;  Gutierrez saw those lights and knew a police officer was trying to stop her; Gutierrez refused to stop but drove a few blocks farther; Gutierrez drove at a speed slightly above the speed limit; after parking, Gutierrez got out of her truck and ran away from Maynes, toward an apartment building; Maynes deployed his taser, but only one probe stuck in Gutierrez's back; she continued to try to get away from Maynes by banging on an apartment door, trying to get inside; at the door, Maynes attempted to use the taser in stun drive; Gutierrez did not passively submit, but continued to resist—acting in "self

defense"; once inside the apartment, Gutierrez still did not passively submit, but continued to try to crawl away from Maynes and to act in "self defense."

### D.  Deputy Maynes's Argument in MSJ #1

MSJ #1 argues that Maynes did not commit the constitutional violation of using excessive force.  He argues that he observed Gutierrez commit two traffic violations, failure to stop at a stop sign[7] and speeding.  [Doc. 131, p. 9]  Plaintiffs admit that Gutierrez refused to stop when signaled to do so by Maynes's flashing lights, thus committing the misdemeanor of Resisting, Evading or Obstructing an Officer, contrary to NMSA 1978, § 30-22-1 (1981). Maynes further argues that he observed Gutierrez commit a felony—Aggravated Fleeing, contrary to NMSA 1978, § 30-22-1.1 (2003).  This assertion is based on Maynes's allegations that Gutierrez reached speeds of more than 60 mph in a 25 mph zone, thus endangering the lives of the people around her.  [Doc. 131, pp. 9-10]  As discussed above, Plaintiffs dispute the speed, but admit that Gutierrez was "slightly over the speed limit."  [Doc. 135-7, p. 2, ¶ 10]  The undisputed facts show that:  Gutierrez drove for another few blocks when she knew that an officer, with lights activated, was signaling her to stop; Gutierrez ran one stop sign; and Gutierrez was speeding ("slightly") in a residential area, late at night, with people still around after the fireworks display.  Facts within Maynes's knowledge thus showed probable cause to believe that Gutierrez committed the felony of Aggravated Fleeing.[8]  *See State v. Misquez*, 2009 WL 6677937, *2-4 (N.M. Ct. App. 2009) (unpublished) (finding sufficient evidence to uphold conviction for Aggravated Fleeing when defendant failed to come to complete stop at stop signs in residential area and drove in wrong lane at some point; § 30-22-1.1 does not require specific proof of endangerment of a person when there were people in the general area, nor is high-speed

---

[7] Maynes alleged that Gutierrez ran two stop signs; as discussed above, it is undisputed that she ran one stop sign.
[8] Although Maynes states that the Court previously recognized Gutierrez "committed" the felony of Aggravated Fleeing [Doc. 131, p. 9 n.1], the Court instead stated that this felony "was relevant" [Doc. 120, p. 20].

chase required); *State v. Padilla*, 2008-NMSC-006, ¶ 14, 176 P.3d 299, 302-03 (distinguishing felony and misdemeanor, and holding that misdemeanor fleeing under § 30-22-1 is committed by fleeing with no willful or careless driving).

Maynes argues that his observation of these criminal offenses justified stopping and arresting Gutierrez. [Doc 131, pp. 9-10] *See Graves*, 450 F.3d at 1223 (holding that violation of traffic laws and fleeing from police officer "supplied, in spades, a legitimate object of arrest"). He argues that "'the right to make an arrest … necessarily carries with it the right to use some degree of physical coercion or the threat thereof to effect it.'" [Doc. 131, p. 7 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989), and citing *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010))] The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight. *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). [Doc. 131, p. 7] Maynes argues that the question of whether the force used was reasonable, and not excessive, requires consideration of factors including: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; (3) and whether the suspect is actively resisting arrest." [Doc. 131, p. 7 (citing *Graham*, 490 U.S. at 396)]

Maynes argues that his use of the taser was permissible and reasonable force. *See Hinton v. City of Elwood,* 997 F.2d 774, 781 (10th Cir. 1993) (recognizing that tasers are "one of the less serious methods for effecting the compliance of a suspect resisting arrest"); *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) (stating that officers not required to use less intrusive or alternative means); *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 510 (6th Cir. 2012) ("tasers carry a significantly lower risk of injury than physical force and that the vast majority of

individuals subjected to a taser—99.7%—suffer no injury or only a mild injury" (internal quotation marks omitted)).  [Doc. 131, pp. 7-9]

In terms of the severity of the crime, Maynes observed Gutierrez speeding and failing to come to a complete stop at a stop sign—late at night, in the dark, in a residential area in which people were still around after the fireworks; these misdemeanors became more serious under the circumstances.  Maynes also had probable cause to believe that Gutierrez committed the felony of Aggravated Fleeing.  [Doc. 131, pp. 9-10]

In terms of whether Gutierrez posed an immediate threat to the safety of Maynes or others, it is undisputed that Maynes did not know to whom the apartment belonged, when Gutierrez ran and started banging on the door and yelling.[9]  MSJ #1 alleges that Maynes believed that the driver's aggressive behavior was a threat to him and others if he could not apprehend her; he believed she might intend to commit a new crime.  [Doc. 131, p. 5, ¶ 29; Doc. 131, p. 10] Plaintiffs dispute what Maynes believed and argue that such a belief was not objectively reasonable; however, while disputing that Gutierrez engaged in aggressive behavior, Plaintiffs admit that Gutierrez did act in "self defense" rather than passively submit.  [Doc. 135, p. 21] Maynes argues that, judging the reasonableness of Maynes's force from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight, Maynes reasonably "perceived an increased risk of harm to himself and others because, like the officer in *Wilson*, he was alone, in the dark, unsure of Plaintiff Gutierrez' motives for flight, and whether she was armed."  [Doc. 131, p. 10]  *Graham*, 490 U.S. at 396; Wilson *v. City of Lafayette*, 510 Fed. Appx. 775, 778-80 (10th Cir. 2013) (unpublished).  Maynes argues that he "made a reasonable decision to use his taser and attempt to immobilize Plaintiff Gutierrez rather than engage in a

---

[9] MSJ #1 alleges that Maynes did not know to whom the apartment belonged.  [Doc. 131, pp. 4-5, ¶ 27]  Plaintiffs do not dispute this part of Fact #27.  [Doc. 135, pp. 20-21]  *See Graves*, 450 F.3d at 1223.

hand to hand struggle to subdue her or allow her to gain entrance to an unknown person's home late at night." [Doc. 131, p. 10]

In terms of the third factor, Maynes argues that use of a taser was reasonable to effect the arrest of a person who was actively resisting arrest and attempting to evade arrest by flight. [Doc. 131, pp. 8-11]   *Compare Wilson*, 510 Fed. Appx. at 779 (affirming grant of qualified immunity for taser use causing death, when person suspected of nonviolent felonies ran, disregarded repeated orders to stop, and reached toward pocket so lone officer could reasonably fear danger from a weapon), *and Aldaba v. Pickens*, 777 F.3d 1148, 1158 (10th Cir. 2015) (holding that officer may use higher level of force when suspect actively resists or attempts to evade arrest by flight, and when subject physically struggles, courts have held no constitutional violation occurred or right not to be tased under these circumstances was not clearly established), *with Casey v. City of Federal Heights*, 509 F.3d 1273, 1282-86 (10th Cir. 2007) (concluding force was excessive when nonviolent misdemeanant, neither actively resisting nor fleeing, was grabbed and tackled without being given chance to submit peacefully; also excessive force in tasing misdemeanant without warning or allowing opportunity to comply), *and Cavanaugh*, 625 F.3d at 663-64 (affirming denial of qualified immunity, when officer tased, without warning, woman suspected at most of misdemeanor, when woman was not actively resisting arrest or fleeing and was given no opportunity to comply).  Maynes argues that caselaw demonstrates that he did not commit a constitutional violation when he tased Gutierrez in the parking lot as she ran, when he tased her at the apartment door in an effort to arrest her and prevent her from gaining entrance to the apartment, and when he tased her once they were inside the apartment.  [Doc. 131, pp. 8-12]

Maynes argues that when he and Gutierrez were inside the apartment, where there could be other assailants, he "faced a precarious and hazardous situation" with a suspect who continued to resist arrest rather than passively submit.  Plaintiff Flores was right there, having opened the door, and Francisco Porras appeared some time later, according to Plaintiffs.  [Doc. 135, p. 23; Doc. 135-15, pp. 1-2]  Maynes argues that he used an appropriate and reasonable amount of force to complete Gutierrez's arrest.  Maynes cites *Hinton*, in which officers were entitled to qualified immunity when they used both physical force (grabbing suspect from behind and wrestling him to the ground) and several applications of a taser on a person suspected of a minor crime (disturbing the peace and verbal threats of violence) who refused to stop walking when asked and instead raised his voice and tried to push past the two officers.  *Hinton*, 997 F.2d at 781.  In resisting, the suspect kicked, flailed his arms, and bit.  *Id*. at 776-77, 781.  The suspect did not have weapons, the crime under investigation was minor, and there were two officers and one suspect.  *Id.* at 781.

Maynes argues that he too used an appropriate and reasonable amount of force to complete the arrest.  "Like the officers in *Hinton*, Deputy Maynes decided to arrest Plaintiff Gutierrez as a result of her crime."  [Doc. 131, p. 11]  Maynes argues that Gutierrez's "pattern of dangerous behavior escalated"—speeding, running, attempting "to enter an unknown person's house for an unknown purpose," and fighting back when he used physical force to restrain and arrest her.  [Doc. 131, p. 11]  Maynes argues that he reasonably perceived a threat of danger to the safety of other residents when Gutierrez ran and tried to get into someone's apartment, and also reasonably perceived a threat of danger to himself once he was inside an apartment with several other people.  [Doc. 131, p. 12]

Maynes also argues that the record belies Plaintiffs' claims that he brutally tased and beat them.  [Doc. 131, p. 12]  *See Thomson*, 584 F.3d at 1325 (Holmes, J., concurring) (stating that court deciding summary judgment motion does not rely on non-movant's factual allegations if "blatantly contradicted by the record"); *Quinn*, 780 F.3d at 1004.  Maynes alleges that Flores never reported any injury, and the medical records attached to MSJ #1 as exhibits show that the only injury for which Gutierrez was treated was the taser barb stuck in her back.  [Doc. 131, p. 12; Doc. 131, p. 6, Fact #45—supported by:  Doc. 131-2, ¶¶ 19-20; Doc. 131-3, ¶ 22; Doc. 131-4, p. 2 (Emergency Medical Technician Report, stating that Gutierrez did not complain of any other trauma or pain, stating there was no bleeding from the taser barb, and showing no indication of other injury); Doc. 131-5 (Medical Clearance for Transport to Luna County Detention Center)]  Plaintiffs state that they dispute Fact #45, but identify only evidence that is consistent with Fact #45—that Gutierrez had a taser barb stuck in her back, described as a traumatic injury which caused pain.  [Doc. 135, pp. 28, 18-20]  Plaintiffs identify no evidence to show any injury to Gutierrez other than the injury from the taser barb.  *See Sealock*, 218 F.3d at 1209; *Adler*, 144 F.3d at 671.

With respect to Plaintiff Flores's claim of excessive force, based on the allegation that Maynes tased her on the leg, Maynes argues that the FAC admits that Flores approached Maynes as he was trying to arrest Gutierrez.  [Doc. 131, p. 12]  Maynes does not concede that he intentionally tased Flores.  [Doc. 131, p. 12 n.2]  But assuming Flores was tased, Maynes argues that such action was justified by his need to make split-second decisions in a "rapidly evolving" and "desperate" situation, and that such action was justified by Maynes's need to protect himself when Flores intruded into a hotly contested arrest.  [Doc. 131, p. 12]

33

### E.  Plaintiffs' Argument in Their Response to MSJ #1

Plaintiffs' response disputes the factual allegations of MSJ #1 at great length and in great detail—but, in twenty-nine pages, there is not one citation to legal authority (other than three mentions of the Fourth Amendment in one paragraph [Doc. 135, pp. 12-13]).  Plaintiffs provide no caselaw regarding excessive force.  Plaintiffs assert that Gutierrez acted in self defense against excessive force, but provide no caselaw distinguishing a right to self defense from a right to resist arrest.  Maynes alleges that he tased Gutierrez; Plaintiffs allege that Maynes also beat, hit and kicked Gutierrez—but provide no caselaw regarding the use of such physical force in the course of making an arrest.

Maynes's reply argues that Plaintiffs failed to carry their "heavy two-part burden" to show that he violated a constitutional right and that the right was clearly established at the time of Maynes's actions.  [Doc. 138, pp. 3-4]  *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).  Maynes argues that he is entitled to summary judgment under *Smith v. McCord*, 707 F.3d 1161 (10th Cir. 2013).

The Tenth Circuit has repeatedly held that if a plaintiff fails to carry either part of the two-part burden in response to a claim of qualified immunity, "the court must grant the defendant qualified immunity."  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001); *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) ("If the plaintiff fails to satisfy either part of the two-part inquiry, the court <u>must</u> grant the defendant qualified immunity." (emphasis added)); *Albright*, 51 F.3d at 1535 ("the defendant "is entitled to qualified immunity"); *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1183 (10th Cir. 2009) ("When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff must carry a two-part burden for his claims <u>to survive</u>." (emphasis added)); *Smith*, 707 F.3d at 1162.  Plaintiffs were required

to show in their response to MSJ #1 that Maynes violated a constitutional right and that the right at issue was "clearly established" at the time of the incident—*i.e.,* on July 4, 2009.  *Cavanaugh*, 625 F.3d at 664; *see Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In *Smith*, the Tenth Circuit affirmed the grant of summary judgment based on qualified immunity in a § 1983 case claiming excessive force, when the plaintiff failed to carry his "'heavy two-part burden' of showing both that (1) 'the defendant violated … [a] constitutional … right [ ],' and (2) the 'infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable law enforcement officer would have known that his or her challenged conduct was illegal.'"  *Smith*, 707 F.3d at 1162 (quoting *Martinez v. Carr*, 479 F.3d 1292, 1294-95 (10th Cir. 2007)).  The plaintiff only responded "as one does in an ordinary summary judgment proceeding," arguing "that a material dispute of fact existed," making no attempt to meet his "'heavy two-part burden'" to show violation of a constitutional right, and that the right was clearly established.  *Id*.  The district court granted summary judgment for the defendants, and the Tenth Circuit affirmed, holding that it could find no fault with the district court's "unassailable" conclusion that the plaintiff "failed to carry the burden assigned him by law."  *Id*.

In later cases, the Tenth Circuit confirmed that a response like Plaintiffs' entitles the defendant to summary judgment.  In *Rojas*, the district court granted summary judgment to defendants based on qualified immunity in a § 1983 case claiming unlawful seizure and excessive force.  *Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013).  The Tenth Circuit observed that the plaintiff's response "made little, if any, attempt to meet his 'heavy two-part burden.'"  *Id*. (quoting *Martinez*, 479 F.3d at 1294).  The plaintiff's response made cursory arguments, but did not discuss how the officer's actions violated the plaintiff's constitutional

rights or whether the infringed right at issue was clearly established at the time; the response did not contain "a single case citation" to support the plaintiff's argument.  *Id*. at 1004; *see Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law.").  The Tenth Circuit stated that if the plaintiff failed to satisfy his heavy two-part burden, the defendants "'are <u>entitled to</u> qualified immunity.'"  *Id*. (emphasis added) (quoting *Martinez*, 479 F.3d at 1295).  On appeal, the plaintiff faulted the district court for ignoring a genuine dispute on a material fact (whether the plaintiff attempted to assault the officer), and argued that the existence of a genuine issue of fact required reversal.  *Id*.  The Tenth Circuit explained that the district court does not even reach this issue unless the plaintiff carries his two-part burden:

> What Plaintiff fails to comprehend, however, is that it is [i]f, *and only if*, he satisfies his two-part burden that Defendants then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and [they are] entitled to judgment as a matter of law.  Because Plaintiff failed to meet his burden on the *legal* qualified immunity question, this traditional summary judgment burden never shifted back to Defendants.  Plaintiff's focus on appeal on a genuine issue of material fact is therefore misplaced.

*Id*. at 1004-05 (internal quotation marks, footnote, and citations omitted).

The Tenth Circuit observed in *Rojas* that its independent review of the record suggested that "a case might well have been made that [the defendants] were not entitled to qualified immunity" on the plaintiff's excessive force claim based on the allegation that the defendants intentionally dropped the plaintiff face-first on the asphalt after he had been removed from the patrol car, while handcuffed and after his feet had been tied, causing him to split open his chin and fracture his mandible.  *Id*. at 1005, 1002.  But, the Tenth Circuit concluded, given the plaintiff's failure to point to any authority to support his claims, he failed to carry his burden and the defendants were entitled to qualified immunity.  *Id*. at 1005 (citing *Smith*, 707 F.3d at 1162).

36

In an unpublished 2014 case, the Tenth Circuit again applied the principle of *Smith* to affirm a grant of qualified immunity. *Comprehensive Addiction Treatment Ctr. v. Leslea*, 552 Fed. Appx. 812, 816-18  (10th Cir. 2014) (unpublished).  The district court noted that the plaintiffs' response to a motion to dismiss failed to cite any authority to show the rights at issue were clearly established.  The Tenth Circuit affirmed the dismissal without reaching the merits. *Id*. at 816-18.  Citing *Rojas* and *Smith*, the Tenth Circuit stated that it had no choice but to affirm the grant of qualified immunity.  *Id*. at 818.

Plaintiffs claim that Maynes used excessive force against Gutierrez, but Plaintiffs fail to cite or discuss any legal authority, utterly ignoring the authority cited by Maynes.  Three mentions of the Fourth Amendment in Plaintiffs' response are insufficient. *See Quinn*, 780 F.3d at 1009 (stating that plaintiff does not carry burden to identify caselaw showing right was clearly established by alleging violation of "an amorphously-defined Fourth Amendment right").  Plaintiffs admit that Gutierrez did not passively submit to apprehension and arrest, and assert that Gutierrez acted in self defense against excessive force.  Plaintiffs fail to cite any legal authority to support Gutierrez's claim of excessive force when she did not passively submit, or to demonstrate the extent of a right to use self defense against excessive force as distinguished from a "right" to resist arrest.  Plaintiffs allege that Maynes beat, hit, and kicked Gutierrez; Plaintiffs cite no caselaw regarding the use of such physical force in the course of an arrest.

Plaintiffs claim that Maynes violated Flores's Fourth Amendment right by tasing her. [Doc. 52, p. 11 (Count III entitled:  "Fourth Amendment—42 U.S.C. Section 1983—Excessive Force"); Doc. 52, p. 12, ¶¶ 83-85 (explicitly claiming Fourth Amendment violation for tasing Flores)]  But Plaintiffs' response fails to include any legal authority to show that such a tasing constituted a seizure or a constitutional violation on any other basis, and that the right at issue

was clearly established at the time.  *See Quinn*, 780 F.3d at 1009 (stating that plaintiff does not carry burden to identify caselaw showing right was clearly established by alleging violation of "an amorphously-defined Fourth Amendment right").

The response filed by Plaintiffs Gutierrez and Flores presents exactly the same situation facing the *Smith* Court.  Plaintiffs responded only "as one does in an ordinary summary judgment proceeding," making no attempt to carry their heavy two-part burden to show violation of a constitutional right and that the right was clearly established.  There is no legal authority relating to either part of Plaintiffs' burden, other than one paragraph containing three references to the Fourth Amendment.  [Doc. 135, pp. 12-13]  As in *Smith*, Plaintiffs' response does not even mention the terms "qualified immunity" or "clearly established."  *Id.*

Plaintiffs' response is insufficient to survive the motion for summary judgment; Plaintiffs failed to carry their heavy two-part burden in responding to the claim of qualified immunity raised by MSJ #1.  Defendant Maynes is therefore entitled to qualified immunity.  As in *Smith*, *Rojas*, and *Comprehensive Addiction Treatment Center*, the Court need not reach the merits of Plaintiffs' constitutional claims.

The Court grants Maynes's motion for summary judgment on Count III.


## CONCLUSION

Pursuant to earlier rulings, the only claims remaining in the case were Counts I, II, and III against Deputy Maynes in his individual capacity.  [Docs. 120, 141, 149, 154]  Pursuant to this Memorandum Opinion and Order, the claims remaining in the case are:  Counts I and II against Defendant Maynes in his individual capacity.

**IT IS THEREFORE ORDERED THAT:**

(I)  *Plaintiffs' Motion To Exceed Page Limit for Exhibits and for Plaintiffs' Response Brief to Defendant Maynes' Motion for Summary Judgment on Count III (Excessive Force)* [Doc. 136] is **GRANTED**;

(II)  *Plaintiffs' Fourth Motion and Memorandum in Support of Counsel's Affidavit To Allow Discovery Pursuant to Rule 56(d)* [Doc. 158] and the dependent request to supplement Plaintiffs' response to MSJ #1 are **DENIED**;

(III)  *Defendant Gabriel Maynes' Motion for Summary Judgment on Count III (Excessive Force) of Plaintiffs' Amended Complaint* [Doc. 130] is **GRANTED**; and

(IV)  Plaintiffs' response to MSJ #2 (*Defendant Gabriel Maynes' Motion for Summary Judgment on Counts I and II of Plaintiffs' Amended Complaint* [Doc. 155]) is due on or before May 18, 2015.

_____
**UNITED STATES DISTRICT JUDGE**

39