IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


ANNA GUTIERREZ and PATSY FLORES,

     Plaintiffs,

    vs.                                  Civ. No. 12-980 JH/GBW

LUNA COUNTY SHERIFF RAYMOND COBOS,
in his individual and official capacity; LUNA COUNTY
SHERIFF DEPUTY GABRIEL MAYNES, DEPUTY
MIKE EBY, DEPUTY TRINI GARCIA, DEPUTY
JOSE OJEDA, DEPUTY ISRAEL SAENZ, Jr., in
their individual and official capacities; LUNA
COUNTY CENTRAL DISPATCH DIRECTOR
MIRNA GRADO and DISPATCH EMPLOYEE
LUHANA VILLALBA, in their individual and
official capacities; LUNA COUNTY MANAGER
JOHN SUTHERLAND, in his individual and official capacity,

     Defendants.


<u>**MEMORANDUM OPINION AND ORDER**</u>


     This matter is before the Court on *Defendant Gabriel Maynes' Motion for Summary Judgment on Counts I and II of Plaintiffs' Amended Complaint*. [Doc. 155] Plaintiffs filed a response [Doc. 163], and Defendant Maynes filed a reply [Doc. 165]. Having considered the motion, briefs, record, and relevant law, the Court will grant Maynes's motion for summary judgment on Counts I and II.

## BACKGROUND

The following is a statement of relevant facts, viewed in the light most favorable to Plaintiffs.

Around 11 p.m. on July 4, 2009, Plaintiff Gutierrez was driving on a dark street in Deming when she noticed a vehicle following her; this made her nervous, and she did not come to a complete stop at a stop sign. Defendant Sheriff's Deputy Maynes activated his flashing lights and began pursuit; until then Gutierrez did not realize that the car following her was a law enforcement vehicle. Out of fear, Gutierrez continued driving toward her mother's home a few blocks away—instead of stopping. She was driving over the speed limit.

Gutierrez pulled into the parking lot of her mother's apartment. As she got out of her truck, she saw Maynes get out of his car and reach for his gun. Gutierrez then ran toward her mother's apartment. Maynes ran after Gutierrez and, without warning, discharged his taser; one taser dart stuck into Gutierrez's back. Gutierrez banged on the door of her mother's apartment, yelling in an effort to get inside. Maynes caught up to her and began beating, hitting, kicking, and tasing her.

When Gutierrez's mother, Plaintiff Flores, opened the door, Maynes pushed through the door and threw Gutierrez to the floor inside. Maynes angrily pushed and threw furniture around before getting on top of Gutierrez and continuing to beat, kick, and tase her. Both at the door and inside the apartment, Gutierrez did not submit to being handcuffed and arrested, but acted to defend herself from Maynes.

Francisco Porras was also inside the apartment. Flores begged Maynes to stop beating and tasing Gutierrez. Maynes tased Flores on her leg.

2

Before Maynes was able to handcuff Gutierrez, other deputies arrived in response to Maynes's calls to dispatch for assistance.  After Maynes was able to complete the handcuffing, Gutierrez was taken outside and transported to the hospital to have the taser dart removed from her back.

One or more of the deputies searched Gutierrez's truck after she was arrested.

Plaintiff Gutierrez was charged in state court with two felonies and four misdemeanors: Aggravated fleeing, Battery on a peace officer, Failure to maintain traffic lane, Careless driving, Concealing identity, and DWI.  The DWI charge was dismissed at a preliminary hearing by a State of New Mexico Magistrate Court Judge for lack of probable cause.  On March 31, 2011, the state filed a nolle prosequi dismissing the remaining charges.

Almost three years after the incident, Plaintiffs filed a complaint in the Sixth Judicial District Court for the State of New Mexico.  [Doc. 1-1]  The case was removed to this Court on September 19, 2012.  [Doc. 1]  The Court gave Plaintiffs leave to file an amended complaint five and one-half months after removal to federal court.  [Doc. 51]  *See* Fed. R. Civ. P. 15(a).  Plaintiffs filed the First Amended Complaint ("FAC") on March 6, 2013.  [Doc. 52]

The FAC included seven counts and named a total of nine defendants.  In four prior rulings, the Court granted motions to dismiss Counts IV through VII, dismissed all claims against eight defendants, and dismissed official capacity claims against Maynes.  [Docs. 120, 141, 149, 154]  After those four rulings, the only claims remaining in the case were Counts I, II, and III against Deputy Maynes in his individual capacity.

On July 10, 2014, Maynes filed a motion for summary judgment on Count III (Excessive Force) ("MSJ #1").  On October 31, 2014, Maynes filed a motion for summary judgment on Counts I and II ("MSJ #2").  [Doc. 155]  On November 14, 2014, Plaintiffs filed a motion for

discovery regarding both MSJ #2 and MSJ #1. [Doc. 158] On May 1, 2015, the Court granted MSJ #1 and denied Plaintiffs' motion for discovery. [Doc. 161] Plaintiffs then filed a response to MSJ #2 [Doc. 163], and Maynes filed a reply [Doc. 165].

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could have an effect on the outcome of the suit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A defendant seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the defendants do not have the burden of persuasion at trial, they can satisfy their burden at the summary judgment stage by identifying a lack of evidence on an essential element of the plaintiff's claim. *Id.* at 671. If the defendants satisfy their burden, the burden shifts to the plaintiff. *Id.*

The plaintiff cannot rest on his pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*,

218 F.3d 1205, 1209 (10th Cir. 2000).  The plaintiff must "set forth specific facts" from which a rational trier of fact could find in the plaintiff's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits.  *Adler*, 144 F.3d at 671 (internal quotation marks omitted).  The plaintiff cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations.  *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 Fed. Appx. 887, 891 (10th Cir. 2010) (unpublished) (internal quotation marks omitted);[1] *see Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003).

To survive a summary judgment motion in which the defendant claims qualified immunity, however, the analysis is different.  The plaintiff must first carry the additional burden of satisfying "a strict two-part test."  *Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013). In considering whether the plaintiff has satisfied this test, the court still views the evidence in the light most favorable to the plaintiff.  *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (on reh'g *en banc*).  The plaintiff must show that the defendant's actions violated a constitutional right, and that this right was "clearly established" at the time of the conduct.  *Rojas*, 727 F.3d at 1003.  A right is clearly established if the "'contours of the right'" are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  A plaintiff can carry his burden of showing that a right is clearly established by identifying Supreme Court or Tenth Circuit caselaw on point, or by demonstrating that the weight of authority from other circuits shows the right to be clearly established.  *Id*.

The plaintiff need not identify "a *perfectly* on-point case" or caselaw with "precise factual correspondence," but does not carry his burden by pointing only to "'clearly established law at a high level of generality.'"  *Quinn v. Young,* 780 F.3d 998, 1005, 1013 (10th Cir. 2015) (quoting

---

[1]The Court cites this and other unpublished opinions for their persuasive value.  See 10th Cir. R. 32.1(A).

*Ashcroft v. al-Kidd*, 563 U.S. 731, ___, 131 S. Ct. 2074, 2084, 179 L. Ed. 2d 1149 (2011)).

"Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as

the right to be free from unreasonable searches and seizures." *City of San Francisco v. Sheehan*,

___ U.S. ___, 135 S. Ct. 1765, 1776, 191 L. Ed. 2d 856 (2015).  The clearly established right at

issue should be defined "'on the basis of the specific context of the case.'"  *Quinn*, 780 F.3d at

1005 (quoting *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014)).

"[A] plaintiff may not simply allege—and the district court likewise may not accept as

sufficient—the defendant's violation of an amorphously-defined Fourth Amendment right";

instead, the plaintiff must show "'a *substantial correspondence* between the conduct in question

and prior law allegedly establishing that the defendant's actions were clearly prohibited.'"  *Id.* at

1009 (quoting *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000)).

   "<u>If, and only if</u>, the plaintiff meets this two-part test does a defendant then bear the

traditional burden of the movant for summary judgment—showing that there are no genuine

issues of material fact and that he or she is entitled to judgment as a matter of law."  *Rojas*, 727

F.3d at 1003 (internal quotation marks omitted; emphasis added).  If the plaintiff fails to satisfy

either part of this test, the defendant is "entitled to" qualified immunity.  *Id.* at 1004; *see Smith v.

McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013).

   "Qualified immunity is designed to shield public officials from liability and ensure 'that

erroneous suits do not even go to trial.'"  *Albright*, 51 F.3d at 1534.  In addition, qualified

immunity is designed to prevent government officials from facing the other burdens of litigation.

*Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009).  The Supreme Court "has directed the lower federal

courts to apply qualified immunity broadly, to protect from civil liability for damages all officers

except 'the plainly incompetent or those who knowingly violate the law,'" so that officers "might

6

not be unduly 'inhibit[ed] … in performing their official duties.'"   *Wilson v. City of Lafayette*, 510 Fed. Appx. 775, 780 (10th Cir. 2013) (unpublished) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001)).   The qualified immunity standard allows  "'ample room for mistaken judgments,'" allowing accommodation for reasonable error.   *Applewhite v. U.S. Air Force*, 995 F.2d 997, 1000 (10th Cir. 1993) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

An investigative stop is reasonable if based on an observed traffic violation or a reasonable articulable suspicion that an offense has been committed.   *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc).   Reasonable suspicion is "a particularized and objective basis" for suspecting a person of criminal activity.   *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).   There is probable cause for an arrest if facts within the knowledge of an officer would lead a reasonable person to believe that an offense has been committed.   *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012).

If an officer has probable cause to believe that a person has committed even a very minor criminal offense in the officer's presence (e.g., a traffic offense like failure to wear a seatbelt), the officer may make a warrantless arrest without violating the Fourth Amendment.   *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222-23 (10th Cir. 2013) (stating that warrantless arrest for crime committed in officer's presence is reasonable under Federal Constitution, regardless of state restrictions); *Quinn*, 780 F.3d at 1006 (observing that Supreme Court allows officer "wide berth" regarding warrantless arrest).   Even a reasonable but mistaken belief that there is probable cause entitles an officer to qualified immunity.   *Morris*, 672 F.3d at 1194.   This is an objective standard; an officer's

"subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."

*Whren v. United States*, 517 U.S. 806, 813 (1996).

**DISCUSSION**

**I.  Count I:  Illegal Entry**

Count I of the First Amended Complaint ("FAC") asserts a claim under the Fourth Amendment that:  Maynes[2] illegally entered "the home of Plaintiffs Flores and Gutierrez"; entry was not justified by consent, a warrant, or exigent circumstances; and Maynes did not have probable cause to believe that a "serious or violent offense had been committed."  [Doc. 52, pp. 7-8]  Maynes claims qualified immunity.  First, MSJ #2 asserts that there was no constitutional violation, because Plaintiffs had no reasonable expectation of privacy in the apartment and, even if they did, the warrantless entry was justified on the basis of probable cause and exigent circumstances.  [Doc. 155, p. 6]  Second, MSJ #2 asserts that the relevant law was not clearly established at the time.  [Doc. 155, p. 6]

**A.  Determination of relevant facts**

Plaintiffs dispute many of Maynes's factual allegations.  The Court must accept Plaintiffs' version of events on disputed facts, and allow all reasonable inferences in favor of Plaintiffs.  *See Shero*, 510 F.3d at 1200.

In a prior Memorandum Opinion and Order, the Court concluded that the following facts are undisputed:  Gutierrez failed to stop at one stop sign; Maynes activated his flashing lights to stop Gutierrez;  Gutierrez saw those lights and knew a police officer was trying to stop her; Gutierrez refused to stop but drove a few blocks farther; Gutierrez drove at a speed slightly above the speed limit; after parking, Gutierrez got out of her truck and ran away from Maynes,

---

[2] The FAC asserts this claim against additional Defendant Deputies, but the Court previously granted their motions to dismiss Counts I and II against them.  [Doc. 120, pp. 11-21, 25-27]

toward an apartment building; Maynes deployed his taser, but only one probe stuck in Gutierrez's back; she continued to try to get away from Maynes by banging on an apartment door, trying to get inside; at the door, Maynes used his taser in stun drive; Gutierrez did not passively submit, but continued to resist—acting in "self defense"; once inside the apartment, Gutierrez still did not passively submit, but continued to try to crawl away from Maynes and to act in "self defense." [Doc. 161, pp. 23-28]  Having reviewed the pleadings, briefs, and evidence presented on MSJ #2, the Court concludes that these determinations of fact remain valid.

With regard to the entry into the apartment, Maynes states:  "When Flores opened the door … Deputy Maynes and Gutierrez fell inside the home."  [Doc. 156, p. 9; Doc. 165, p. 3] This statement fails to correctly view the facts in the light most favorable to Plaintiffs.  *See Shero*, 510 F.3d at 1200.  Gutierrez's affidavit alleges that Flores opened the door and "the officer slammed the door against the wall, pushed me through the doorway, entered and threw me to the ground." [Doc. 163-4, p. 3, ¶ 15]  Flores's affidavit alleges that Gutierrez "ran inside and fell down, and the police officer pushed the door open" and "angrily followed her inside." [Doc. 163-11, pp. 1-2, ¶¶ 4-5]  In deciding MSJ #2, the Court adopts Plaintiffs' version of these facts.

### B.  Constitutional Violation

To defeat the claim of qualified immunity, Plaintiffs must show that Maynes's actions violated a constitutional right, and that this right was "clearly established" at the time of the conduct.  *See Rojas*, 727 F.3d at 1003.

First, if Plaintiffs lacked a reasonable expectation of privacy in the apartment, they cannot claim that Maynes's warrantless entry violated their constitutional rights.  *See United*

*States v. Creighton*, 639 F.3d 1281, 1286 (10th Cir. 2011).[3]  Second, a warrantless entry into the home can be justified by one of the exceptions to the warrant requirement, including exigent circumstances.  *See Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984); *Mascorro v. Billings*, 656 F.3d 1198, 1205 (10th Cir. 2011).

### 1. Reasonable expectation of privacy in Francisco Porras's apartment

Maynes argues that neither Gutierrez nor Flores had a reasonable expectation of privacy in the apartment.  [Doc. 156, p. 7; Doc. 165, p. 6]  Plaintiffs' response asserts that the apartment at 1000 S. Zinc was the home of both Gutierrez and Flores.  [Doc. 163, p. 15]

A person invoking the protection of the Fourth Amendment has the burden of showing a subjective expectation of privacy which society is prepared to recognize as reasonable.  *United States v. Maestas*, 639 F.3d 1032, 1035 (10th Cir. 2011); *Creighton*, 639 F.3d at 1286.  This rule applies when a person claims illegal entry into a place.  *See Reeves v. Churchich*, 484 F.3d 1244, 1254 (10th Cir. 2007); *United States v. Henderson*, 190 Fed. Appx. 667, 674-75 (10th Cir. 2006) (unpublished).

The FAC does not allege that the apartment was Gutierrez's home.  Instead, the FAC describes it as "her mother's home" and "her mother's apartment."  [Doc. 52, p. 4, ¶¶ 19, 21]  In response to the argument in MSJ #2 that Gutierrez had no reasonable expectation of privacy in the apartment, Plaintiffs assert:  "Plaintiff Gutierrez identifies later in her affidavit her home address of 1000 S. Zinc Street, Apartment 2."  [Doc. 162, p. 15]  Plaintiffs cite Paragraph 9 of Gutierrez's affidavit to support this assertion, but Paragraph 9 does not support it.  Paragraph 9 states:  "Instead of stopping, I continued driving to my mother's apartment, located at 1000 S. Zinc Street, Apartment 2, which was only a few blocks away, out of fear."  [Doc. 163-4, p. 2, ¶

---

[3] The question of whether Plaintiffs can show violation of their own Fourth Amendment rights is not a matter of "standing," but is part of the substantive issue of whether Plaintiffs' Fourth Amendment rights were violated.  *See Creighton*, 639 F.3d at 1286 n.2.

9]  Plaintiffs' response also cites Maynes's testimony from the June 2010 state court suppression hearing that he assumed the apartment was Gutierrez's home.  [Doc. 163-9, p. 2 (transcript at pp. 10-11)]  The Court is not persuaded that an officer's assumption, unsupported by any suggestion that the officer had verified that assumption at the time, supports Plaintiffs' assertion.

As Maynes observes, there are numerous references in Gutierrez's affidavit to that address as "my mother's apartment."  [Doc. 163-4, pp. 2-5, ¶¶ 4, 9, 12, 13, 14, 29, 31]  The Abstract of Record shows a different residence for Gutierrez.  [Doc. 163-2]  Francisco Porras's affidavit states that he "was residing with Patsy Flores at 1000 S. Zinc, Apartment #2."  [Doc. 163-12, ¶ 2]  Porras's statement implies that Gutierrez was not also residing at that apartment.

Although not cited by Plaintiffs, there is one sentence in Gutierrez's affidavit suggesting that the apartment was her home:  "The events leading to my arrest began while I was driving home to my mother's apartment alone in the late evening of July 4, 2009, and noticed that I was being followed."  [Doc. 163-4, p. 2, ¶ 4]  In response to an explicit allegation that the apartment was not Gutierrez's home, however, one incidental suggestion is not enough to carry Plaintiffs' burden.  Plaintiffs had the burden to show a reasonable expectation of privacy.  Plaintiffs also had the burden to "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment," and to "set forth specific facts" from which a rational trier of fact could find in the plaintiff's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits." *Sealock*, 218 F.3d at 1209; *Adler*, 144 F.3d at 671 (internal quotation marks omitted).  The one incidental mention of "home" is on a par with an unsubstantiated conclusory allegation, which is insufficient to carry Plaintiffs' burden.  *See Rocky Mountain Rogues, Inc.*, 375 Fed. Appx. at 891.

The Court concludes that Plaintiffs have not carried their burden. When Maynes explicitly argued that Plaintiffs needed to allege specific facts to support their claim that Gutierrez had a reasonable expectation of privacy, Plaintiffs needed to do more. In reaching this conclusion, the Court is strongly influenced by the fact that it should have been easy for Gutierrez to support her assertion that the apartment was her own home; yet Gutierrez did not provide even her own affidavit definitively stating that the apartment was her home, or to support a reasonable expectation of privacy on any other basis. Based on the current record, a rational trier of fact could not find in Plaintiffs' favor on this point. The Court concludes that Gutierrez cannot dispute the circumstances of Maynes's entry into the apartment because Plaintiffs failed to designate specific facts sufficient for a rational factfinder to find that Gutierrez had a reasonable expectation of privacy in the apartment. *See Reeves*, 484 F.3d at 1254; *Henderson*, 190 Fed. Appx. at 674-75.

MSJ #2 also asserts that Flores lacked the reasonable expectation of privacy necessary to support her claim of illegal entry, suggesting that Flores was only an occasional visitor to the apartment. [Doc. 156, p. 7] But the Court concludes that Plaintiffs carried their burden to identify specific facts to show that Flores had a reasonable expectation of privacy, by providing Porras's and Flores's affidavits, which state that Flores resided at 1000 S. Zinc, Apartment #2. [Doc. 163-12, p. 1, ¶ 2; Doc. 163-11, p. 1, ¶ 3]

### 2. Exigent circumstances

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 477 (1971)); *see McInerney v. King*, 791 F.3d 1224, 1231 (10th Cir. 2015). Warrantless entry may, however, be justified under

one of the "carefully delineated" exceptions to the warrant requirement based on the presence of 'exigent circumstances.'" *Coolidge*, 403 U.S. at 474-75.   One exception is "hot pursuit."  *See Mascorro*, 656 F.3d at 1205.  Another exception is for "emergency aid."  *See McInerney*, 791 F.3d at 1231.  An officer has the burden of demonstrating exigent circumstances—an "especially heavy" burden when the officer enters a home.  *United States v. Najar*, 451 F.3d 710, 717 (10th Cir. 2006).

### (a)  Hot pursuit

Maynes argues that his warrantless entry into the home was justified because he was in hot pursuit of Gutierrez, after observing her commit several traffic violations and the felony of aggravated fleeing.  [Doc. 156, pp. 8-9]  Relying on *Mascorro* for the proposition that an officer with probable cause to arrest for a misdemeanor may not enter a home in hot pursuit, Plaintiffs argue that Maynes's entry into the home was illegal because no felony was involved.  *Mascorro v. Billings*, 656 F.3d 1198, 1207 (10th Cir. 2011).  [Doc. 162, pp. 10-14]

A warrantless arrest of a person in a public place upon probable cause does not violate the Fourth Amendment.  *United States v. Santana*, 427 U.S. 38, 42 (1976).  If that person seeks to avoid arrest by retreating into a home, an officer may enter to complete the arrest when in "hot pursuit."  *Id.*  "[A] suspect may not defeat an arrest which has been set in motion in a public place … by the expedient of escaping to a private place."  *Id.* at 43.  There must be "immediate or continuous pursuit" from the scene of a crime.  *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984); *Stanton v. Sims*, ___ U.S. ___, 134 S. Ct. 3, 6, 187 L. Ed. 2d 341 (2013) (per curiam).

The Tenth Circuit held in *Mascorro* that probable cause to arrest for a misdemeanor, by itself, did not justify warrantless entry into a home under the hot pursuit exception.  *Mascorro v. Billings*, 656 F.3d 1198, 1207 (10th Cir. 2011).  The Tenth Circuit observed that the suspect was

a minor with whom the officer was well acquainted, the minor had fled into the family home from which there was only one exit, there was no risk of destruction of evidence, and there were no officer or public safety concerns. *Id.* "There is nothing to indicate the sort of 'real immediate and serious consequences' of postponing action to obtain a warrant required for a showing of exigent circumstances." *Id.* at 1207. *Mascorro* did not hold that a felony must be involved, but that the circumstances must "involve a <u>serious offense</u> coupled with the existence of an immediate and pressing concern." *Id.* at 1209 (emphasis added). *Mascorro* cited with approval the opinion in *Bledsoe*, which held warrantless entry justified by a misdemeanor which was a "serious offense … just below the general definition of a felony." *Id.* at 1207; *Bledsoe v. Garcia*, 742 F.2d 1237, 1241 (10th Cir. 1984).

The first question under *Mascorro* is whether Maynes had probable cause to believe that Gutierrez had committed a felony or at least a "serious offense." The issue is whether the facts and circumstances within Maynes's knowledge, and of which he had "reasonably trustworthy information," were "sufficient to lead a prudent person to believe" that Gutierrez had committed or was committing such an offense. *Howards v. McLauglin*, 634 F.3d 1131, 1141 (10th Cir. 2011), *rev'd in part on other grounds sub nom. Reichle v. Howards*, ___ U.S. ___, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012). Under the posture of this case, the Court first views the facts in the light most favorable to Plaintiffs. *See Cavanaugh v. Woods Cross City*, 625 F.3d 661, 666 (10th Cir. 2010); *Howards*, 634 F.3d at 1141. The Court then views those facts from the officer's vantage point; this is an objective inquiry, under which Maynes's state of mind or subjective reasons are irrelevant. *See Cavanaugh*, 625 F.3d at 666.

Plaintiffs argue that "the intended arrest was for a nonviolent traffic misdemeanor" and that Gutierrez "was initially pursued for minor traffic violations." [Doc. 163, pp. 13-14] This

14

argument looks at the wrong time.  Although Maynes's pursuit began with his observation of misdemeanor traffic violations, by the time Maynes entered the apartment he had acquired facts showing probable cause to believe that Gutierrez committed a felony.   In a previous Memorandum Opinion and Order, the Court determined:   "Facts within Maynes's knowledge thus showed probable cause to believe that Gutierrez committed the felony of Aggravated Fleeing."  [Doc. 161, p. 28]  Plaintiffs' admission that Gutierrez refused to stop when signaled to do by Maynes's flashing lights gave Maynes probable cause to believe that Gutierrez had committed the misdemeanor of Resisting, Evading or Obstructing an Officer, contrary to NMSA 1978, § 30-22-1 (1981). [Doc. 163-4, p. 2, ¶¶ 6, 8-10]  This Court found the following additional undisputed facts:  Gutierrez drove for another few blocks although she knew that an officer, with lights activated, was signaling her to stop; Gutierrez ran one stop sign; and Gutierrez was speeding ("slightly," as she admitted) in a residential area, at about 11 p.m. on the Fourth of July. [Doc. 161, p. 28]

Viewing the facts in the light most favorable to Plaintiffs, these additional facts—which were within Maynes's knowledge—raise the suspected offense from a misdemeanor under § 30-22-1 to the felony of Aggravated Fleeing under NMSA 1978, § 30-22-1.1 (2003).  The New Mexico Supreme Court held that a person commits a misdemeanor under § 30-22-1 when she "resists, evades, or obstructs an officer by fleeing without willful and careless driving"; a person commits a felony under § 30-22-1.1 when she drives "willfully and carelessly."  *State v. Padilla*, 2008-NMSC-006, ¶ 14, 176 P.3d 299, 302-03 (emphasis added); *cf.* NMSA 1978, § 66-8-114 (1978) (offense of "careless driving" is committed by operating a vehicle "in a careless, inattentive or imprudent manner" without due regard for all attendant circumstances).  At the time Maynes entered the apartment, therefore, he had probable cause to believe that Gutierrez

had committed the felony of Aggravated Fleeing. *See State v. Misquez*, 2009 WL 6677937, *2-4 (N.M. Ct. App. 2009) (unpublished) (finding sufficient evidence to uphold conviction for Aggravated Fleeing when defendant failed to come to complete stop at stop signs in residential area and drove in wrong lane at some point; holding that § 30-22-1.1 does not require specific proof of endangerment of a person when there could have been people in the area, nor is high-speed chase required).

The Court concludes that Maynes had probable cause to believe that Gutierrez had committed a felony at the time when Maynes entered the home. There is no argument that Maynes was not engaged in "immediate or continuous pursuit" of Gutierrez. *See Welsh*, 466 U.S. at 753; *Stanton*, 134 S. Ct. at 6. The undisputed facts show that he was. Thus Maynes's warrantless entry into the home to complete the arrest was constitutional under the hot pursuit exception.

Alternatively, even if Maynes did not have probable cause to arrest for a felony, he was in pursuit of Gutierrez for several potentially dangerous traffic offenses and for resisting under § 30-22-1. The offense of resisting is a misdemeanor, carrying a maximum penalty of one year of imprisonment. *See* NMSA 1978, 31-19-1 (1984). *Mascorro* approved the warrantless entry in *Bledsoe* for a misdemeanor that also was "just below the general definition of a felony." *Mascorro*, 656 F.3d at 1207; *Bledsoe*, 742 F.2d at 1241. Viewing the facts in the light most favorable to Plaintiffs—but from the vantage point of Maynes—facts within Maynes's knowledge gave him reason to believe the circumstances showed sufficient exigency to justify warrantless entry, even if the offense involved only a series of misdemeanors. Gutierrez had repeatedly fled when she knew that a police officer was signaling her to stop. Maynes's knowledge and experience led him to believe that Gutierrez might have been intoxicated or

16

otherwise posed an increased danger to others if he allowed her to escape into the apartment, when he did not know to whom the apartment belonged and suspected Gutierrez might pose a danger to the unknown occupants.  [Doc. 156-1, ¶¶ 8-13, 32, 34, 38-40, 63, 71-72, 75]  These circumstances distinguish this case from *Mascorro*, in which the "intended arrest was for a traffic misdemeanor committed by a minor, with whom the officer was well acquainted," and the officer knew the minor was entering his own home.  *Mascorro*, 656 F.3d at 1207.

The Court concludes that the warrantless entry was justified under *Mascorro*, even if Maynes did not have probable cause to believe Gutierrez committed the felony of Aggravated Fleeing.

**(b)  Emergency aid**

A law enforcement officer "'may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'"  *Sheehan*, 135 S. Ct. at 1775 (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).  "The Fourth Amendment standard is reasonableness, and it is reasonable for police to move quickly if delay 'would gravely endanger their lives or the lives of others.'"  *Sheehan*, 135 S. Ct. at 1775 (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 298-299 (1967)).  The emergency aid exception requires that:  "(1) the law enforcement officers have objectively reasonable grounds to believe that there is an immediate need to protect their lives or others, and (2) the manner and scope of the search is reasonable."  *McInerney*, 791 F.3d at 1231 (internal quotation marks omitted).  The test is whether the circumstances, viewed objectively, supported a reasonable belief that there was an immediate need to protect the lives or safety of others.[4]  *United States v.*

---

[4] It is also required that the manner and scope of the search or entry be reasonable.  *Porter*, 594 F.3d at 1257. Viewing the facts in the light most favorable to Plaintiffs, Maynes pushed through the apartment door after it was opened by Flores.  The Court concludes that it was reasonable for Maynes to push open the apartment door, rather than letting Gutierrez get inside by herself.  The facts also show that Maynes "slammed the door against the wall,

*Porter*, 594 F.3d 1251, 1256-57 (10th Cir. 2010) (applying totality of the circumstances test). An officer's subjective motivation is irrelevant. *Id*. at 1256, 1258. "Reasonable belief does not require absolute certainty; the standard is more lenient than the probable cause standard." *Porter*, 594 F.3d at 1258. "Officers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." *Michigan v. Fisher*, 558 U.S. 45, 49 (2009). In *Fisher*, the Court noted that the only injury officers could confirm in *Brigham City* was a bloody lip. *Fisher*, 558 U.S. at 49.

Maynes argues that his warrantless entry into the home was justified under the emergency aid exception because he "faced the possibility that Gutierrez could harm him and the inhabitants inside," and that he "had mere seconds to decide whether to allow a fleeing felon— [whom] Deputy Maynes intended to arrest—to enter an unknown person's home for an unknown purpose." [Doc. 156, p. 9] Plaintiffs respond that "the facts of this case do not establish an objectively reasonable basis for believing anyone in the home needed immediate aid." [Doc. 163, p. 10]

Gutierrez was attempting to gain entry to an apartment and Maynes believed that she might inflict violence on the occupants. No evidence is identified to show that Gutierrez had keys to that apartment; she was banging on the door to gain entry. No evidence is identified to show that Maynes had any information at the time that Gutierrez resided at that apartment, knew the occupants, or had any other connection with the apartment. Maynes had observed Gutierrez driving carelessly, and had chased Gutierrez by car and on foot; she refused to stop. Maynes's experience gave him reason to suspect she was impaired in some way, and she was not

---

pushed [Gutierrez] through the doorway, entered and threw [Gutierrez] to the ground," and that Maynes "pushed the door open" and "angrily followed [Gutierrez] inside." [Doc. 163-4, p. 3, ¶ 15 (Gutierrez's affidavit); Doc. 163-11, pp. 1-2, ¶¶ 4-5 (Flores's affidavit)] The Court concludes that these additional allegations concern the issue of excessive force, which the Court has already resolved against Plaintiffs under Count III in the May 1, 2015 Memorandum Opinion and Order [Doc. 161].

submitting peacefully to his attempts to arrest her outside the apartment door.  Once she was inside, with the door closed, Maynes did not know what would happen and he would be unable to enter in time to protect the occupants if Gutierrez inflicted violence on them.

Under these circumstances, Maynes did not have the luxury of calmly deliberating on whether he should pull back and allow Gutierrez to escape into the apartment.  As in *Porter*, "events moved very quickly."  *Porter*, 594 F.3d at 1259.  "The Constitution is not blind to 'the fact that police officers are often forced to make split-second judgments.'"  *Sheehan*, 135 S. Ct. at 1775 (quoting *Plumhoff v. Rickard*, 572 U.S. ___, 134 S. Ct. 2012, 2020, 188 L. Ed. 2d 1056 (2014)).  "'People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process.'"  *Porter*, 594 F.3d at 1259 (quoting *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963)).

In ruling on qualified immunity, the Court must consider the facts "from the perspective of a reasonable officer on the scene" and avoid judging the officer's conduct with the "20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  What is critical is whether "the circumstances *at the time*," viewed objectively, as they would have appeared to prudent, cautious, and trained officers, justified the warrantless search or seizure.  *United States v. Creighton*, 639 F.3d 1281, 1288-91 (10th Cir. 2011) (emphasizing that assessment of exigent circumstances cannot be based on what became known after the fact).  "This is true even when, judged with the benefit of hindsight, the officers may have made "'some mistakes.'"  *Sheehan*, 135 S. Ct. at 1775 (quoting *Heien v. North Carolina*, 574 U.S. ___, 135 S. Ct. 530, 536, 190 L. Ed. 2d 475 (2014)).

The Court must consider all of the circumstances and view the facts in the light most favorable to Plaintiffs.  *See McInerney*, 791 F.3d at 1232, 1235.  The Court must, however, also

"consider the facts from the viewpoint of 'prudent, cautious, and trained officers.'" *Porter*, 594 F.3d at 1258 (quoting *United States v. Najar*, 451 F.3d 710, 718 (2006)).  If Maynes had known who was inside the apartment, he could not have reasonably believed that the occupants might be in need of protection from Gutierrez; however, no evidence has been identified that Maynes knew who occupied the apartment and the Court would err to "replace" the objective inquiry with a "hindsight determination that there was in fact no emergency." *Fisher*, 558 U.S. at 49.  A reasonable officer could have believed, based on her prior behavior, that Gutierrez might inflict some violence on the occupants, or take them hostage.  *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 600 F.3d 1185, 1191 (10th Cir. 2007) (holding that officer "who reasonably but mistakenly conclude[s] that probable cause is present [is] entitled to [qualified] immunity" (internal quotation marks omitted)).

The Court concludes, under the totality of the circumstances, that Maynes had an objectively reasonable belief that the occupants might be placed in immediate danger if he allowed Gutierrez to enter and close and lock the door.  Maynes's split-second decision to push open the door and enter the apartment was justified under the emergency aid exception.

### C.  Clearly established law

Even if Maynes had probable cause to suspect Gutierrez only of a non-serious misdemeanor—so that under *Mascorro* the hot pursuit exception did not apply, and there was a violation of a constitutional right—Plaintiffs still must carry their "heavy two-part burden" to show that this right was clearly established.  [Doc. 138, pp. 3-4]  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Albright*, 51 F.3d at 1534.  Maynes is entitled to qualified immunity unless he violated a right that was "clearly established <u>at the time</u> of the challenged conduct." *Sheehan*, 135 S. Ct. at 1774 (emphasis added).

After *Mascorro* was decided in 2011, a plaintiff could cite that case to argue it was clearly established in the Tenth Circuit that the hot pursuit exception requires probable cause for at least a "serious offense," if not a felony. *See Albright*, 51 F.3d at 1535 (plaintiff can carry burden of showing right is clearly established by identifying Tenth Circuit caselaw on point). But Plaintiffs had the burden to show that the law was clearly established at the time of Maynes's warrantless entry on July 4, 2009. *See Mascorro*, 656 F.3d at 1207-08.  The opinion in *Mascorro*, decided two years later, does not carry Plaintiffs' burden. *See Wilson v. Layne*, 526 U.S. 603, 617-18 (1999) (stating that officers cannot be expected to predict the future course of constitutional law).

Plaintiffs fail to recognize that July 4, 2009, is the critical time.  Plaintiffs cite much caselaw on general principles regarding protection of a home, but fail to cite any case other than *Mascorro* in support of their burden to identify sufficiently specific caselaw limiting the hot pursuit exception to a serious offense or felony. *See id*. at 1208 (emphasizing that the inquiry must not be conducted at "'a high level of generality,'" but must look for "'clear law (clear answers) that would apply to the situation at hand'" (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).  It was Plaintiffs' burden to show that the relevant constitutional right was clearly established in order to survive Maynes's summary judgment motion. *See Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013).  Although Plaintiffs fail to make any argument that the right was clearly established before 2011 when *Mascorro* was decided, the Court will nevertheless consider whether earlier cases relied on in *Mascorro* might satisfy Plaintiffs' burden.

In *Mascorro*, the Tenth Circuit relied on *Payton*, *Welsh*, and *Santana* in holding that the law was clearly established; however, in *Stanton*, the Supreme Court held that these cases did not show that this right was clearly established. *Stanton v. Sims*, ___ U.S. ___, 134 S. Ct. 3, 6-7, 187

L. Ed. 2d 341 (2013) (per curiam).  The Tenth Circuit also relied on its opinion in *Bledsoe*, but that case held that warrantless arrest for a misdemeanor could be justified, depending on the circumstances; in addition, *Bledsoe* did not involve hot pursuit.  Consideration of caselaw relied on in *Mascorro* thus leads this Court to conclude that it was not clearly established in the Tenth Circuit in 2009 that only a felony or other serious offense justified warrantless entry into a home in hot pursuit.

In *Stanton*, the Supreme Court affirmed the district court's grant of summary judgment to an officer who entered a fenced yard in pursuit of a suspect; the officer had probable cause to arrest for a misdemeanor.  *Stanton v. Sims*, ___ U.S. ___, 134 S. Ct. 3, 4-5, 187 L. Ed. 2d 341 (2013) (per curiam).  The Ninth Circuit held that the law was clearly established that the Fourth Amendment did not allow warrantless entry into a home or curtilage in hot pursuit of a misdemeanant; the Supreme Court reversed.   *Stanton* states that "federal and state courts nationwide are sharply divided on the question whether an officer with probable cause to arrest a suspect for a misdemeanor may enter a home [or curtilage] without a warrant while in hot pursuit of that suspect."  *Id*. at 5 (citing *Mascorro*, 656 F.3d at 1207, as holding entry not justified).  The Supreme Court concluded that the Ninth Circuit had read "far too broadly" the two cases on which it relied, *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984), and *United States v. Johnson*, 256 F.3d 895, 908 (2001) (en banc) (per curiam).  *Stanton*, 134 S. Ct. at 6.  The constitutional issue was not "beyond debate," and the officer was entitled to qualified immunity.  *Id*. at 7; *see Wilson*, 526 U.S. at 617-18 (observing that when there was a split in the circuits, so that judges disagree on the constitutional question, it would be "unfair to subject police to money damages for picking the losing side of the controversy").

*Welsh* held that warrantless entry into Welsh's home violated the Fourth Amendment, when an officer went to Welsh's home after learning that Welsh had earlier driven his car off the road and left the scene, presumably because he was drunk.  The *Welsh* Court rejected the suggestion that the hot pursuit exception applied, because the officer was not involved in "'immediate or continuous pursuit of [Welsh] from the scene of a crime.'"  *Stanton*, 134 S. Ct. at 6 (quoting *Welsh*, 466 U.S. at 753).  *Welsh* only noted that it was "important" that the officer had probable cause to believe that Welsh had committed "'only a minor offense'" (a nonjailable civil offense), and stated that under those circumstances "'application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned.'"  *Id*. (quoting *Welsh*, 466 U.S. at 753).  *Stanton* states that nothing in *Welsh* "establishes that the seriousness of the crime is equally important *in cases of hot pursuit*."  *Id*.  The *Stanton* Court further explained that *Welsh* was equivocal:  "But we did not lay down a categorical rule [in *Welsh*] for all cases involving minor offenses, saying only that a warrant is 'usually' required."  *Stanton*, 134 S. Ct. at 6.

The *Stanton* Court also distinguished *Johnson*, in which the "Ninth Circuit was clear that this case, like *Welsh*, did not involve hot pursuit," because the suspect had escaped from police thirty minutes earlier and his whereabouts were unknown.  *Stanton*, 134 S. Ct. at 6.  *Johnson* held that the entry required a warrant, in part because the suspect was only suspected of misdemeanors.  *Id*.  A footnote in *Johnson* stated that, if an officer is "truly" in hot pursuit of a suspected felon, such entry would usually not violate the Fourth Amendment, but a warrant would usually be required for a misdemeanor.  *Id*.; *see Johnson*, 256 F.3d at 908 n.6.

After distinguishing *Welsh* and *Johnson*, the *Stanton* Court further explained that both *Welsh* and *Johnson* cited *Santana* with approval—*Santana* being a case in which the Supreme Court approved warrantless entry while in hot pursuit.  *Stanton*, 134 S. Ct. at 6; *United States v.*

*Santana*, 427 U.S. 38, 42-43 (1976).  The *Stanton* Court stated that, although *Santana* involved a felony suspect, the *Santana* opinion did not expressly limit the holding based on that fact. *Stanton*, 134 S. Ct. at 6.

Having considered *Welsh*, *Santana*, and *Johnson*, the Supreme Court concluded in *Stanton* that these cases were insufficient to show that it was clearly established that warrantless entry into a home, while in hot pursuit of a suspected misdemeanant, violated the Fourth Amendment.  *Stanton*, 134 S. Ct. at 7.  Regardless of whether that constitutional rule was correct,[5] the Court held that the question was not "beyond debate," and Stanton was entitled to qualified immunity.  *Id*.

Nor do other cases relied on in *Mascorro* establish the specific constitutional right at issue.  *Payton* is cited for the general principle that warrantless entry into a home, even for a felony, is not allowed absent exigent circumstances.  *Mascorro*, 656 F.3d at 1206; *Payton v. New York*, 445 U.S. 573, 590 (1980)).  *Payton* does not concern the hot pursuit exception.  *Payton* held that an arrest warrant for a felony allows an officer to enter the suspect's dwelling, but did not address the issue of felony versus misdemeanor.  *Payton*, 445 U.S. at 602-03.  *Payton* is not sufficiently specific to provide a clear answer on the critical question in Plaintiffs' case.

*Mascorro* cites the Tenth Circuit opinion in *Bledsoe  v. Garcia*, 742 F.2d 1237, 1241 (10th Cir. 1984).  But *Bledsoe* upheld warrantless entry into a home to arrest a suspected misdemeanant, holding the entry justified by exigent circumstances; there was a disturbing reaction from the misdemeanant's parents, there was resistance to the officers' efforts, and there was a possibility of flight.  *Bledsoe*, 742 F.2d at 1238-41 (officers had a bench warrant for the misdemeanor of failure to appear and probable cause the suspect was A.W.O.L.).  The *Bledsoe*

---

[5] *Stanton* did not reach the issue of whether the warrantless entry violated the Fourth Amendment.  *Stanton*, 134 S. Ct. at 7.

Court acknowledged that the A.W.O.L. offense was only a misdemeanor, but characterized it as a "serious offense" which was "just below the general definition of a felony." *Mascorro*, 656 F.3d at 1207. *Bledsoe* thus held that warrantless entry could be justified for a misdemeanor.

An officer is entitled to qualified immunity "'unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' meaning that 'existing precedent … placed the statutory or constitutional question beyond debate.'" *Sheehan*, 135 S. Ct. at 1774 (quoting *Ashcroft v. al-Kidd*, 563 U.S. ___, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)) (citation omitted). Without "'fair and clear warning of what the Constitution requires,'" an officer is entitled to qualified immunity. *Sheehan*, 135 S. Ct. at 1778 (quoting *al-Kidd*, 131 S. Ct. at 2086-87 (Kennedy, J., concurring)). This is an "exacting standard" that "'gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.'" *Sheehan*, 135 S. Ct. at 1774 (quoting *al-Kidd*, 131 S. Ct. at 2085).

The Supreme Court's opinion in *Reichle* includes extensive discussion of when the law is clearly established. *Reichle v. Howards*, ___ U.S. ___, 132 S. Ct. 2088, 2092-95, 182 L. Ed. 2d 985 (2012). The Supreme Court determined that the law was not clearly established when the impact of a case from that Court on Tenth Circuit precedent was not clear. *Id*. at 2094-96. The Supreme Court observed that if the caselaw is not clear, so that a reasonable official could have interpreted it in a way that made the official's conduct constitutional, the official is entitled to qualified immunity. 132 S. Ct. at 2095. This conclusion follows even if the Supreme Court would not adopt that interpretation; the issue is whether "it was at least arguable" that the official's interpretation was correct. *Id*. at 2096.

The "salient question" is whether the state of the law on July 4, 2009 gave Maynes "fair warning" that entry into a home in hot pursuit of Gutierrez was unconstitutional, even if there were only probable cause to suspect Gutierrez of a misdemeanor that did not rise to the level of a "serious offense coupled with the existence of an immediate and pressing concern." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Mascorro*, 656 F.3d at 1209.  This Court concludes that the interpretation and reach of *Welsh*, *Santana*, and *Payton* was not clear, and Maynes could reasonably have concluded that these cases did not proscribe warrantless entry into a home when in hot pursuit of a suspected misdemeanant.  The Supreme Court itself, in *Stanton*, took this view of the cases.  And the Tenth Circuit case, *Bledsoe*, does not involve hot pursuit; in addition, the fact remains that *Bledsoe* upheld warrantless entry upon suspicion of misdemeanors.

Further, several months before *Mascorro*, the Tenth Circuit issued *Aragon*—an unpublished opinion holding that it was not clearly established in 2006 that the hot pursuit exception should be limited to fleeing felons:

> Mr. Aragon replies that the hot pursuit exception should be limited to fleeing felons. But whatever the merits of that argument, it wasn't clearly established law at the time of Mr. Aragon's arrest. In *Bledsoe v. Garcia*, 742 F.2d 1237 (10th Cir.1984), we held that exigency justified an officer's warrantless home entry to apprehend a suspect who was evading arrest, just as here, from a jailable misdemeanor. *Id.* at 1241. And recently, we reached a similar conclusion with respect to an individual evading arrest for traffic offenses. *See Sanchez*, 308 Fed.Appx. at 285. Thus, the rule Mr. Aragon advocates, whatever its merits, simply wasn't clearly established in case law as of 2006.

*Aragon v. City of Albuquerque*, 423 Fed. Appx. 790, 795 (10th Cir. 2011) (unpublished).  In reaching its holding, the *Aragon* Court discussed *Welsh* and *Santana*, and cited *Bledsoe* and *Sanchez* in support.   *Id.*; *Sanchez v. Ulibarri*, 308 Fed. Appx. 280 (10th Cir. 2009) (unpublished).[6]

---

[6] In the unpublished opinion in *Sanchez*, the Tenth Circuit rejected a claim of ineffective assistance when the defendant's attorney failed to challenge a warrantless arrest after pursuing a suspected misdemeanant into his home.

The relevant law may have been clearly established in the Tenth Circuit after *Mascorro*. But Plaintiffs failed to carry their burden to show that the relevant law was clearly established on July 4, 2009, and Maynes is therefore entitled to qualified immunity. *See Smith*, 707 F.3d at 1162. Plaintiffs' citation of *Mascorro* is insufficient to carry their burden, because *Mascorro* was not decided until 2011. And the cases relied on in *Mascorro* and decided before July 4, 2009, did not themselves provide the requisite fair notice to Maynes; both the Supreme Court in *Stanton* and the Tenth Circuit in *Aragon* determined that these cases did not provide a clear answer to the question of whether the hot pursuit exception allowed warrantless entry into a home to arrest for a misdemeanor.

The Court emphasizes that it is not relying on *Stanton* and *Aragon* to show that the relevant law was not clearly established. Instead, the Court relies on *Stanton* and *Aragon* to show that the cases relied on in *Mascorro* did not themselves show that the relevant law was clearly established in the Tenth Circuit before *Mascorro* was decided in 2011. Since the Supreme Court in *Stanton* and the Tenth Circuit in *Aragon* determined that *Welsh*, *Payton*, and *Santana* did not limit the hot pursuit exception to felonies or serious offenses, precedent existing in 2009 did not place the "constitutional question beyond debate" and did not provide "fair and clear warning of what the Constitution requires" to Maynes on July 4, 2009. *Sheehan*, 135 S. Ct. at 1774, 1778 (internal quotation marks omitted). *Stanton* and *Aragon* show that prior caselaw was not clear in 2009, and a reasonable officer could have interpreted it so that it was constitutional to make a warrantless entry into a home to arrest a misdemeanant. *See Reichle*, 132 S. Ct. at 2095. It "was at least arguable" that this interpretation was correct. *Id*. at 2096.

---

*Sanchez*, 308 Fed. Appx. at 284. Maynes relies on this case, but the *Mascorro* Court discounted *Sanchez* in a footnote as a habeas case merely addressing a limited issue. *Mascorro*, 656 F.3d at 1209 n.15.

Since Plaintiffs failed to identify caselaw showing the relevant constitutional right was clearly established in 2009, Maynes is entitled to qualified immunity.

### D.  Conclusion on Count I

The Court concludes that Gutierrez failed to show a reasonable expectation of privacy in Francisco Porras's home and cannot challenge the warrantless entry.  Alternatively, neither Gutierrez nor Flores has demonstrated a constitutional violation, because the warrantless entry was justified under both the hot pursuit exception and the emergency aid exception.  Finally, even if both Plaintiffs could challenge the entry and had shown a constitutional violation, Maynes is still entitled to qualified immunity because Plaintiffs have not shown clearly established law that the hot pursuit exception was not available in 2009 for a suspected misdemeanor.  *See Rojas*, 727 F.3d at 1003 (holding that if plaintiff fails to satisfy either part of the test, defendant is entitled to qualified immunity); *Smith*, 707 F.3d at 1162 (holding that defendant is entitled to qualified immunity if plaintiff fails to carry burden to identify caselaw showing the right is clearly established).

## II.  Count II:  Illegal Search and Seizure and False Arrest

Count II of the FAC, headed "Illegal Search and Seizure and False Arrest," includes some assertions and allegations relating to claims stated under other counts.  Not all of these issues were addressed in the current briefing on Count II.  After careful consideration of all of the parties' previous pleadings, however, the Court concludes that these additional claims were fully briefed and resolved in other rulings.  Plaintiffs' claims of excessive force and unreasonable use of the taser under Count II duplicate claims asserted under Count III.  After full briefing by both parties, these claims were resolved in a previous Memorandum Opinion and Order.  [Doc. 161,

pp. 16-38]  Plaintiffs' assertion that entry into the home was unjustified when pursuit was for a misdemeanor is asserted and resolved under Count I, above.

Additional claims made under Count II include:  (1) False arrest, or illegal arrest, "because New Mexico law does not allow Deputy Maynes to arrest her based on the fact that such offense is a non-jailable offense," and "escalat[ing] the stop into a full custodial arrest" [Doc. 52, pp. 9-10, ¶¶ 65-69, 71]; (2) Illegal arrest "not supported by probable cause because it was pretextual, and therefore a violation of her constitutional rights under New Mexico law" [Doc. 52, p. 10, ¶ 75]; (3) Warrantless arrest without probable cause [Doc. 52, p. 10, ¶ 72]; (4) Seizure without probable cause of Flores by tasing her [Doc. 52, p. 10, ¶ 73]; and (5) Warrantless search of Gutierrez's truck [Doc. 52, p. 10, ¶ 74].

### A.  False or illegal arrest

Count II is asserted under the Fourth Amendment and § 1983.  [Doc. 52, p. 1, ¶ 1; Doc. 52, p. 9 (Count II heading)]  The first two claims listed in the preceding paragraph are asserted under the New Mexico Constitution.  The Court has already held that claims under the New Mexico Constitution are not viable under § 1983.  [Doc. 120, p. 20]  The Court has already held that Plaintiffs admit facts showing that Maynes observed Gutierrez commit more than one criminal offense (including traffic violations), that Maynes had probable cause to arrest Gutierrez for a felony, and that warrantless arrest was therefore allowed under the Federal Constitution. [Doc. 120, pp. 16-17; Doc. 141, pp. 26-27; Doc. 161, pp. 21-25, 28-30]  *See Whren v. United States*, 517 U.S. 806, 813 (1996); *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012); *Howards v. McLauglin*, 634 F.3d 1131, 1141 (10th Cir. 2011), *rev'd on other grounds sub nom. Reichle v. Howards*, ___ U.S. ___, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012); *Courtney v. Oklahoma ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222-23 (10th Cir. 2013).

Although some of the prior rulings addressed motions brought by other Defendants, the Court concludes that the same analysis applies with respect to the current summary judgment motion brought by Maynes, MSJ #2.  The primary claim on each of the three bases identified in the preceding paragraph was that Maynes made an illegal arrest; the claims resolved on motions by other Defendants concerned that arrest by Maynes.  Plaintiffs thus have already had a full opportunity to brief all of these issues.  [Docs. 69, 71, 135]  The Court concludes that it has already resolved the first three issues listed in the preceding paragraph.

### B.  Seizure of Flores by tasing

The fourth issue listed—the claim that Maynes's tasing of Flores constituted a seizure without probable cause—is intertwined with the claim of excessive force against Flores, which is asserted under Count III.  The Court already res

olved Count III in a prior Memorandum Opinion and Order, holding that Plaintiffs failed to carry their burden in responding to Maynes's claim of qualified immunity.  [Doc. 161, pp. 37-38]

In deciding Count III, the Court held that Plaintiffs failed to carry their burden in responding to a claim of qualified immunity.  [Doc. 161, pp. 37-38]  *See Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013) (stating that plaintiff must show violation of a constitutional right, and that this right was clearly established at the time of the conduct).  If a plaintiff fails to carry either part of the two-part burden in response to a claim of qualified immunity, "the court must grant the defendant qualified immunity."  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  The Court determined that "Plaintiffs' response fails to include any legal authority to show that such a tasing constituted a seizure or a constitutional violation on any other basis, and that the right at issue was clearly established at the time."  [Doc. 161, pp. 37-38]  As in *Smith*, Plaintiffs' response did not even mention the terms "qualified immunity" or "clearly established."

*Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013).   The Court held that Maynes was entitled to summary judgment on Count III.   [Doc. 161, p. 38 (deciding MSJ #1)]

In response to MSJ #2 on the interrelated claim under Count II that Flores was illegally seized when Maynes tased her, Plaintiffs reargue the issue of a seizure.   [Doc. 163, pp. 16-20]   For the proposition that "the use of a taser on a person results in a seizure," Plaintiffs cite *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir. 2010).   But *Cavanaugh* does not support this proposition.   The opinion assumes that when he tased Ms. Cavanaugh, the officer was conducting an investigative detention or arrest.   *Id*. at 665 (stating that officer "was investigating a non-injurious assault" and officer had an "unexpressed determination to make an arrest").

*Cavanaugh* is further distinguished because Ms. Cavanaugh fell and was incapacitated; she was in fact restrained.   *Id*. at 663.   A seizure occurs when an officer restrains a citizen's liberty, either "by means of physical force or show of authority."   *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *see Florida v. Bostick*, 501 U.S. 429, 435 (1991) (holding that a person is seized within the meaning of the Fourth Amendment when "a reasonable person would believe that he or she is not 'free to leave'").   But a use of physical force or show of authority that does not in fact restrain a person is merely an attempted seizure, which does not implicate the Fourth Amendment.   *California v. Hodari D.*, 499 U.S. 621, 628-29 (1991); *Brooks v. Gaenzle*, 614 F.3d 1213, 1223-24 (10th Cir. 2010).   Plaintiffs identify no facts showing that Flores was restrained, detained, or arrested.   Plaintiffs' response merely asserts:  "Flores submitted to the use of force and Defendant Maynes' assertion of authority in her home when she was tased, by ceasing her pleas to him on behalf of her daughter."   [Doc. 163, p. 19]   This assertion is insufficient; it is also not supported by identification of any supporting evidence.

Plaintiffs' response also cites *Cortez v. McCauley*, 478 F.3d 1108, 1130-32 (10th Cir. 2007).  [Doc. 163, pp. 21-22]  But *Cortez* is inapposite.  Tina Cortez was not in the same situation as Flores.  The plaintiffs' allegations demonstrated excessive force during an investigative detention when Cortez was locked in a patrol car for more than an hour.  *Id*. at 1130-31.  *Cortez* does not involve the issue of whether tasing constitutes a seizure.  Although Plaintiffs were not required to identify "a *perfectly* on-point case" or caselaw with "precise factual correspondence," they cannot carry their burden by pointing only to "'clearly established law at a high level of generality.'"  *Quinn*, 780 F.3d at 1013 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, ___, 131 S. Ct. 2074, 2084, 179 L. Ed. 2d 1149 (2011)).  Plaintiffs fail to meet their burden, because they fail to show "'a *substantial correspondence* between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.'"  *Id*. at 1009 (quoting *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000)).

Plaintiffs again argue that Plaintiff Flores was subjected to excessive force.  [Doc. 163, pp. 20-22]  The Court denied Plaintiffs' previous request for leave to supplement their response to MSJ #1 on the excessive force issue under Count III.  [Doc. 161, pp. 12, 15; Doc. 158, pp. 3-4]  The Court has already ruled on this issue and granted Maynes summary judgment in its May 1, 2015 Memorandum Opinion and Order.  [Doc. 161, pp. 21-22, 37-38]

Plaintiffs' response is insufficient to survive the motion for summary judgment.  Plaintiffs fail to support their assertion that Flores was subjected to a seizure or "an illegal arrest without probable cause" when she was tased.  [Doc. 163, p. 20]  Plaintiffs also fail to show violation of a right that was clearly established by identifying Supreme Court or Tenth Circuit caselaw on

point.  Plaintiffs fail to carry either part of their burden, and Maynes is entitled to summary judgment on this claim.

### C.  Search of Gutierrez's truck

The FAC asserts a claim that Defendants illegally searched Gutierrez's truck after her arrest, without a warrant and without consent and without exigent circumstances.  [Doc. 52, p. 10, ¶ 74)  MSJ #2 alleges:  "Pursuant to the LCSO's policy, Deputy Garcia began an inventory search of Plaintiff Gutierrez's truck after calling a tow truck to impound the truck."  [Doc. 156, p. 5, ¶ 33]  Plaintiffs' response states that Plaintiffs do not dispute these allegations.  [Doc. 163, p. 6, ¶ 33]  As Maynes's response observes, Plaintiffs fail to assert any facts, or make any argument, that Maynes (the only Defendant remaining in the case) was involved in the search of the truck.  [Doc. 165, p. 2]

Since Plaintiffs fail to go beyond the pleadings and "set forth specific facts" from which a rational trier of fact could find in Plaintiffs' favor on this claim, and fail to dispute Maynes's factual allegations, Plaintiffs have not carried their burden to show that there is a genuine dispute as to any material fact.  *See* Fed. R. Civ. P. 56(a); *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671.

The Court concludes that Maynes is entitled to summary judgment to the extent that Count II asserts an illegal search of the truck.

## CONCLUSION

Pursuant to earlier rulings, the only claims remaining in the case were Counts I and II against Deputy Maynes in his individual capacity.  [Docs. 120, 141, 149, 154]  Pursuant to this Memorandum Opinion and Order granting Maynes summary judgment on Counts I and II, there are no claims remaining in the case.

**IT IS THEREFORE ORDERED THAT** *Defendant Gabriel Maynes' Motion for Summary Judgment on Counts I and II of Plaintiffs' Amended Complaint* [Doc. 155] is **GRANTED**.

**IT IS FURTHER ORDERED THAT** this case is **DISMISSED WITH PREJUDICE**.


_____

**UNITED STATES DISTRICT JUDGE**

34